**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ALAN E. SWERDLOW, SB# 130341
  E-Mail: Alan.Swerdlow@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for PLAINTIFF
CITIZENS INSURANCE COMPANY OF
AMERICA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CITIZENS INSURANCE COMPANY OF AMERICA,

           Plaintiff,

     vs.

CHIEF DIGITAL ADVISORS; CATHY PARKES d/b/a LEVEL UP RN; and ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C,

          Defendants.

CASE NO. '20 CV1075 MMAAGS

**COMPLAINT FOR DECLARATORY RELIEF**

Trial Date:     None Set

COMES NOW Plaintiff CITIZENS INSURANCE COMPANY OF AMERICA ("Plaintiff" or "CICA") and alleges as follows:

## **PARTIES**

1.    At all times relevant to the matters stated below, Citizens Insurance Company of America ("CICA") was and is a Michigan corporation with its principal place of business in that state.

2.    CICA is informed and believes, and based thereon alleges that Defendant Chief Digital Advisors, Inc. ("Defendant"), is a California limited liability company with its principal place of business in Carlsbad, California

3.    CICA is informed and believes, and based thereon alleges that Cathy

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Parkes, is an individual residing in Carlsbad, California.

2         4.      ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C, ("ATI") is a

3  Delaware Limited Liability Corporation with it's principal place of business in

4  Leawood, Kansas.  ATI is a Defendant herein solely so that ATI will be bound by

5  the declaraory judgment.

6  <div align="center">**JURISDICTION AND VENUE**</div>

7         5.     This Court has federal diversity jurisdiction over this action pursuant to

8  28 U.S.C. Section 1332(a), 1441, and 1446.  Specifically, this Court has federal

9  diversity jurisdiction pursuant to Section1332 because: (1) the amount in

10  controversy exceeds $75,000.00 exclusive of interest and costs; and (2) there is

11  complete diversity between CICA and Defendants.

12         6.     Venue is proper in this District under 28 U.S.C. Section 1391(a)(2)

13  because the events on which CICA's claim is based occurred in this District.

14  Moreover the Defendants are doing business and reside in this District.

15  <div align="center">**FACTUAL ALLEGATION**</div>

16         7.     On August 27, 2019, Assessment Technologies Institute, LLC ("ATI")

17  filed a complaint for Copyright Infringement, Trade Secret Misappropriation,

18  Breach of Contract, and Unfair Competition against Cathy Parkes, dba Level Up RN

19  ("Parkes") in the United States District Court for the District of Kansas, entitled

20  Assessment Technologies Institute, LLC v. Cathy Parkes dba Level Up Rn, case

21  number 2:19-cv-02514-JAR-KGG ("Underlying Action").  A true and correct copy

22  of the operative complaint is attached hereto as Exhibit A and incorporated by this

23  reference.

24         8.     ATI, a leading provider of copyright protected educational resources

25  and assessment materials used by close to 3,000 nursing schools nationwide, alleges

26  that Cathy Parkes became familiar with ATI's proprietary materials when she was in

27  nursing school, and began a business promoting and selling derivative versions of

28  ATI's copyrighted works to nursing school after graduating.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

9.      ATI alleges that Parkes built a business copying ATI's copyrighted works and providing students with answers to ATI's proprietary tests, which caused irreparable harm to ATI's business by severely undermining the effectiveness and usefulness of its proprietary learning and assessment materials that ATI licenses to nursing schools.

10.      CICA insured Chief Digital Advisors, Inc. ("Chief") under Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 from January 28, 2019 to January 28, 2020 ("the Policy").  A true and correct copy of the Policy is attached as Exhibit B.

11.      In connection with Chief's obtaining the Policy from Citizens, Chief stated its business was: "Mgt Consulting Services Firm focused on helping companies enter or accelerate e-Commerce revenues with emphasis on strategies, technologies, and methods for Direct to Consumer e-Commerce."

12.      There is no mention of Cathy Parkes dba Level Up RN on the CICA Businessowners Liability Insurance Application.

13.      The CICA policy states that an insured is defined as the following:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owners.

    b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1        officers or directors.

2        e.  Your stockholders are also insureds, but only with respect to their

3            liability as stockholders.

4        f.  A trust, you are an insured.  Your trustees are also insureds, but only

5            with respect to their duties as trustees.

6        14.    The CICA policy, Section II – Liability, A. Coverages, 1. Business

7 Liability, subsection (a) states that "we will pay those sums that the insured becomes

8 legally obligated to pay as damages because of "bodily injury" or "property

9 damage" or "personal and advertising injury" to which this insurance applies.  We

10 will have the right and duty to defend the insured against the any "suit" seeking

11 those damages.  However, we will have no duty to defend the insured against any

12 "suit" seeking damages for "bodily injury" or "property damage" or "personal and

13 advertising injury" to which this insurance does not apply.  We may, at our

14 discretion, investigate and "occurrence" and settle any claim or "suit" that may

15 result."

16       15.    The CICA policy, Section II – Liability, A. Coverages, 1. Business

17 Liability, subsection (b) states "This insurance applies to "bodily injury" and

18 "property damage" only if:

19        a.  The "bodily injury or "property damage" is caused by an "occurrence"

20            that takes in the "coverage territory";

21        b.  The "bodily injury" or "property damage" occurs during the policy

22            period.

23       16.    The CICA policy, Section II – Liability, A. Coverages, 2. Personal and

24 Advertising Injury states that coverage applies to "personal and advertising injury"

25 caused by an offense arising out of your business, but only if the offense was

26 committed in the "coverage territory" during the policy period.

27       17.    The CICA policy defines "occurrence" as "an ***accident***, including

28 continuous or repeated exposure to substantially the same general harmful

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

conditions." (emphasis added.)

18.     The CICA policy defines "property damage" as:

a.   "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

b.   Loss of use of tangible property that is not physically injured.  Al such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

19.     The CICA policy further states that "for the purposes of this insurance, electronic data is not tangible property.  As used in this definition, electronic data means information, facts or programs stores as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells data processing devices or any other media which are used with electronically controlled equipment.

20.     The CICA policy defines "personal and advertising injury" as "injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

//

21.  The CICA policy includes Business Liability Coverage Exclusions which states that this insurance does not apply to:

a.  Professional Services: "bodily injury," "property damage," "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction:

i.  By you; or

ii.  On your behalf; or

iii.  From whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

iv.  The CICA policy states that professional services include, but are not limited to: medical, surgical, dental, x-ray, or nursing services treatment, advice or instruction, any health or therapeutic service treatment, advice or instruction.

b.  Access or Disclosure of Confidential or Personal Information and Date Related Liability:

i.  Damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

22.  The CICA policy includes Personal and Advertising Injury Exclusions which states that this insurance does not apply to:

a.  Knowing violation of rights of another: "personal and advertising

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  injury" caused by or at the direction of the insured with the knowledge
2  that the act would violate the rights of another and would inflict
3  "personal and advertising injury."
4  //

5  b. Material Published Prior to Policy Period: "personal and advertising
6  injury" arising out of oral or written publication, in any manner, of
7  material whose first publication took place before the beginning of the
8  policy period.
9  c. Breach of Contract: "personal and advertising injury" arising out of a
10  breach of contract, except an implied contract to use another's
11  advertising idea in your "advertisement."
12  d. Infringement of Copyright, Patent, Trademark, or Trade Secret:
13  "personal and advertising injury" arising out of the infringement of
14  copyright, patent, trademark, trade secret or other intellectual property
15  rights.  Under this exclusion, such other intellectual property rights do
16  not include the use of another's advertising idea in your
17  "advertisement".  However, this exclusion does not apply to
18  infringement, in your "advertisement", of copyright, trade dress, or
19  slogan.

20  ## **FIRST CAUSE OF ACTION**

21  **(Declaratory Judgment – No Duty to Indemnify Defendant in the Alleged in**
22  **Underlying Action because No Occurrence Exists)**

23  23. CICA incorporates herein by reference, as though fully set forth, the
24  allegations contained in paragraph 1 through 23 above.

25  24. CICA Businessowners Liability Insurance Coverage Policy No. OB3
26  D815660 defines occurrence" as "an ***accident***, including continuous or repeated
27  exposure to substantially the same general harmful conditions."  (emphasis added.)

28  25. Pursuant to the allegations in the complaint for Copyright Infringement,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Trade Secret Misappropriation, Breach of Contract, and Unfair Competition filed by

2   ATI against Cathy Parkes, dba Level Up RN ("Parkes") in the United States District

3   Court for the District of Kansas, Cathy Parkes conduct is not "accidental" and does

4   not qualify as an "occurrence" under the CICA Businessowners Liability Insurance

5   Coverage Policy No. OB3 D815660.

6       26.     CICA contends that no potential duty to indemnify is triggered as to all

7   causes of actions in the Underlying Action, as these causes of action do not

8   potentially give rise to covered damages caused by an "occurrence" as require by

9   the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660

10   issued to Chief, whereas Chief denies this contention.

11      27.     A justiciable controversy exists between CICA on the one hand, and

12   Chief on the other hand, concerning CICA's obligation to indemnify Chief under the

13   Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with

14   respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

15      28.     CICA desires a judicial determination with respect to the right, duties,

16   and obligations of CICA as to the duty to indemnify Chief against the claims

17   brought against Cathy Parkes in the Underlying Action, on the basis that the

18   allegations alleged in the Underlying Action do not qualify as an "occurrence" as

19   defined by the CICA Businessowners Liability Insurance Coverage Policy No. OB3

20   D815660 00 issued to Chief.

21      29.     CICA has no adequate remedy at law to resolve the aforesaid

22   controversy.

23                          **SECOND CAUSE OF ACTION**

24   **(Declaratory Judgment –No Duty to Indemnify Defendant in the Alleged in**

25        **Underlying Action because No Property Damage was Alleged.)**

26      30.     CICA incorporates herein by reference, as though fully set forth, the

27   allegations contained in paragraph 1 through 28 above.

28      31.     The Underlying Action alleges purely economic/financial loss.  CICA

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1                                    8
COMPLAINT FOR DECLARATORY RELIEF

1   contends that this does not constitute "property damage" under the CICA

2   Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00,

3   whereas Chief denies this contention.

4   //

5         32.     The CICA Businessowners Liability Insurance Coverage Policy No.

6   OB3 D815660 00 defines "property damage" exclusively as physical damage or loss

7   of use to tangible property.

8         33.     CICA alleges that it owes no duty to indemnify Chief for the causes of

9   action alleged in the Underlying Action based on the CICA Businessowners

10   Liability Insurance Coverage Policy No. OB3 D815660 00 definition of "property

11   damage", which Chief denies this contention.

12         34.     A justiciable controversy exists between CICA on the one hand, and

13   Chief on the other hand, concerning CICA's obligation to indemnify Chief under the

14   Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with

15   respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

16         35.     CICA desires a judicial determination with respect to the right, duties,

17   and obligations of CICA as to the duty to indemnify Chief against the claims

18   brought against Cathy Parkes in the Underlying Action, on the basis that the damage

19   alleged in the Underlying Action do not qualify as "property damage" as defined by

20   the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660

21   00 issued to Chief.

22         36.     CICA has no adequate remedy at law to resolve the aforesaid

23   controversy.

24                         **THIRD CAUSE OF ACTION**

25   **(Declaratory Judgment – No Duty to Indemnify Defendant in the Alleged in**

26   **Underlying Action because Offenses Occurred Outside the CICA**

27   **Businessowners Liability Insurance Policy Period)**

28         37.     CICA incorporates herein by reference, as though fully set forth, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

allegations contained in paragraph 1 through 35 above.

38.     In the Underlying Action, ATI alleges that Cathy Parkes dba Level Up RN began selling study cards in May 2018.

//

39.     CICA Policy began providing coverage to Chief on January 28, 2019 pursuant to Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

40.     To the extent the allegations of the Underlying Action are outside the policy period, CICA contends that no potential duty to indemnify is triggered as to the claims brought in the Underlying Action, which Chief denies this contention.

41.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning CICA's obligation to indemnify Chief under the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

42.     CICA desires a judicial determination with respect to the right, duties, and obligations of CICA as to the duty to indemnify Chief against the claims brought against Cathy Parkes in the Underlying Action, on the basis that the offenses alleged in the Underlying Action occurred outside of the Policy Period of the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

43.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment – No Duty to Indemnify Defendant in the Alleged in Underlying Action because Defendant Does Not Qualify as an Insured under the CICA Businessowners Liability Insurance Policy.)**

44.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 42 above.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

45.     Chief Digital Advisors declared in the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 Application that its business was as a management consulting services firm helping companies with their e-commerce.  Chief did not disclose in its application that Cathy Parkes ran a separate business selling materials to assist with the passing Nursing Licensing.

46.     The Underlying Action does not name Chief Digital Advisors as a defendant and is solely directed at Cathy Parkes dba Level Up RN.

47.     CICA contends that no potential duty to indemnify is triggered as to all causes of actions in the Underlying Action, as Cathy Parkes does not qualify as an insured under the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 and is not entitled to coverage, which Chief denies this contention.

48.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning CICA's obligation to indemnify Chief under the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

49.     CICA desires a judicial determination with respect to the right, duties, and obligations of CICA as to the duty to indemnify Chief against the claims brought against Cathy Parkes in the Underlying Action, on the basis that the Cathy Parkes is not an insured under the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief, and/or is not owed coverage under the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

50.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

## **FIFTH CAUSE OF ACTION**

**(Declaratory Judgment – No Duty to Indemnify Defendant in the Alleged in Underlying Action for Personal Injury because Alleged Publication of**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**Materials Causing Personal Injury Occurred Before the Policy Period.)**

51.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 42 above.

52.     In the Underlying Action, ATI alleges that Cathy Parkes dba Level Up RN began inappropriately selling and publishing study cards in May 2018.

53.     CICA Policy began providing coverage to Chief on January 28, 2019 pursuant to Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

54.     To the extent the allegations of the Underlying Action are outside the policy period, CICA contends that no potential duty to indemnify is triggered as to the personal injury claims brought in the Underlying Action, which Chief denies this contention.

55.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning CICA's obligation to indemnify Chief under the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

56.     CICA desires a judicial determination with respect to the right, duties, and obligations of CICA as to the duty to indemnify Chief against the claims brought against Cathy Parkes in the Underlying Action, on the basis that the personal injury alleged in the Underlying Action was sustained outside of the Policy Period of the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

57.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

## SIXTH CAUSE OF ACTION

**(Declaratory Judgment – No Duty to Indemnify Defendant in the Alleged in Underlying Action because CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 Excludes Coverage.)**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

COMPLAINT FOR DECLARATORY RELIEF

58.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 42 above.

59.     Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 provides numerous exclusions to coverage based on specific circumstances.

60.     The allegations in the Underlying Action, as well all circumstances surrounding and relating to the Underlying Action, invoke the exclusions stated in Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

61.     CICA contends that no potential duty to indemnify is triggered as to all causes of actions in the Underlying Action, because the allegations in the Underlying Action, as well all circumstances surrounding and relating to the Underlying Action, invoke the exclusions stated in CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 and is not entitled to coverage, which Chief denies this contention.

62.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning CICA's obligation to indemnify Chief under the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

63.     CICA desires a judicial determination with respect to the right, duties, and obligations of CICA as to the duty to indemnify Chief against the claims brought against Cathy Parkes in the Underlying Action, on the basis that the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief excludes coverage for indemnification of the Underlying Action.

64.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

**SEVENTH CAUSE OF ACTION**

**(Declaratory Judgment – No Duty to Defend Because no Occurrence Exists in the Underlying Matter.)**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

13

COMPLAINT FOR DECLARATORY RELIEF

65.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 23 above.

66.     CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 defines occurrence" as "an ***accident***, including continuous or repeated exposure to substantially the same general harmful conditions."  (emphasis added.)

67.     Pursuant to the allegations in the complaint for Copyright Infringement, Trade Secret Misappropriation, Breach of Contract, and Unfair Competition filed by ATI against Cathy Parkes, dba Level Up RN ("Parkes") in the United States District Court for the District of Kansas, Cathy Parkes conduct is not "accidental" and does not qualify as an "occurrence" under the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660.

68.     CICA contends that the allegations in the Underlying Action do not potentially give rise to covered damages caused by an "occurrence" as require by the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 issued to Chief, whereas Chief denies this contention.

69.     CICA contends that no occurrence was alleged in the Underlying Action, as defined by Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00, which Chief denies this contention.

70.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning whether the allegations in the Underlying Action amount to an "occurrence" in the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

71.     CICA desires a judicial determination that the allegations in the Underlying Action do not qualify as an "occurrence" as defined by the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

72.     CICA alleges that because the Underlying Action does not allege facts that would qualify as an Occurrence under the CICA policies, there is no duty to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

14

COMPLAINT FOR DECLARATORY RELIEF

1   defend.  On information and belief, Chief denies this allegation.

2       73.    CICA has no adequate remedy at law to resolve the aforesaid

3   controversy.

4

5                   **EIGHTH CAUSE OF ACTION**

6   **(Declaratory Judgment - No Duty to Defend Because no Property Damage was**

7                   **Alleged in the Underlying Action.)**

8       74.    CICA incorporates herein by reference, as though fully set forth, the

9   allegations contained in paragraph 1 through 28 above.

10      75.    The Underlying Action alleges purely economic/financial loss.  CICA

11  contends that this does not constitute "property damage" under the CICA

12  Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00, and

13  therefore there is no duty to defend.  Chief denies this contention.

14      76.    The CICA Businessowners Liability Insurance Coverage Policy No.

15  OB3 D815660 00 defines "property damage" exclusively as physical damage or loss

16  of use to tangible property.

17      77.    CICA alleges that no property damage was alleged in the Underlying

18  Action based on the CICA Businessowners Liability Insurance Coverage Policy No.

19  OB3 D815660 00 definition of "property damage."

20      78.    CICA contends that no property damage was alleged in the Underlying

21  Action, as defined by Businessowners Liability Insurance Coverage Policy No. OB3

22  D815660 00, which Chief denies this contention.

23      79.    A justiciable controversy exists between CICA on the one hand, and

24  Chief on the other hand, concerning whether property damage was alleged in the

25  Underlying Action, based on the definition of property damage under the

26  Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

27      80.    CICA desires a judicial determination that the allegations in the

28  Underlying Action do not qualify as "property damage" as defined by the CICA

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued

2 to Chief.

3      81.    CICA alleges that because the Underlying Action does not allege facts

4 that would qualify as Property Damage under the CICA policies, there is no duty to

5 defend.  On information and belief, Chief denies this allegation.

6      82.    CICA has no adequate remedy at law to resolve the aforesaid

7 controversy.

8 <div align="center">**NINTH CAUSE OF ACTION**</div>

9 <div align="center">**(Declaratory Judgment – No Duty to Defend Because the Offenses Alleged in**</div>

10 <div align="center">**the Underlying Action Occurred Outside the CICA Businessowners Liability**</div>

11 <div align="center">**Insurance Policy Period.)**</div>

12      83.    CICA incorporates herein by reference, as though fully set forth, the

13 allegations contained in paragraph 1 through 35 above.

14      84.    In the Underlying Action, ATI alleges that Cathy Parkes dba Level Up

15 RN began selling study cards in May 2018.

16      85.    CICA Policy began providing coverage to Chief on January 28, 2019

17 pursuant to Businessowners Liability Insurance Coverage Policy No. OB3 D815660

18 00.

19      86.    CICA contends that the allegations alleged in the Underlying Action

20 occurred outside of the policy period of Businessowners Liability Insurance

21 Coverage Policy No. OB3 D815660 00, which Chief denies this contention.

22      87.    A justiciable controversy exists between CICA on the one hand, and

23 Chief on the other hand, as to whether the allegations in the Underlying Action

24 occurred during the policy period of Businessowners Liability Insurance Coverage

25 Policy No. OB3 D815660 00.

26      88.    CICA desires a judicial determination that the allegations alleged in the

27 Underlying Action occurred outside of the Policy Period of the Businessowners

28 Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

COMPLAINT FOR DECLARATORY RELIEF

89.     CICA alleges that because the Underlying Action does not allege facts that would qualify as Property Damage under the CICA policies, there is no duty to defend.  On information and belief, Chief denies this allegation.

90.     CICA alleges that because the Underlying Action does not allege facts that establish an Offense during the policy periods, there is no duty to defend.  On information and belief, Chief denies this allegation.

91.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

## TENTH CAUSE OF ACTION

**(Declaratory Judgment – No Duty to Defend Because Cathy Parkes Does Not Qualify as an Insured under the CICA Businessowners Liability Insurance Policy.)**

92.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 42 above.

93.     Chief Digital Advisors declared in the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 Application that its business was as a management consulting services firm helping companies with their e-commerce.  Chief did not disclose in its application that Cathy Parkes ran a separate business selling materials to assist with the passing Nursing Licensing.

94.     The Underlying Action does not name Chief Digital Advisors as a defendant and is solely directed at Cathy Parkes dba Level Up RN.

95.     CICA contends that the Defendant is not an insured under Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00, which Chief denies this contention.

96.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, as to whether the Defendant qualifies as an Insured under the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

97.     CICA desires a judicial determination as to whether the Defendant is an Insured under the CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

98.     CICA alleges that because Cathy Parkes does not qualify as an insured under the CICA policies, there is no duty to defend.  On information and belief, Chief denies this allegation.

99.     CICA has no adequate remedy at law to resolve the aforesaid controversy.

## ELEVENTH CAUSE OF ACTION

### (Declaratory Judgment – No Duty to Defend Because the Alleged Publication of Materials Causing Personal Injury Occurred Before the Policy Period.)

100.     CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 42 above.

101.     In the Underlying Action, ATI alleges that Cathy Parkes dba Level Up RN began inappropriately selling and publishing study cards in May 2018.

102.     CICA Policy began providing coverage to Chief on January 28, 2019 pursuant to Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

103.     CICA contends that the allegations of the Underlying Action are outside the policy period, which Chief denies this contention.

104.     A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning whether the allegations in the Underlying Action occurred within the policy period of Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

105.     CICA desires a judicial determination as to whether the personal injury allegations in the Underlying Action was sustained outside of the Policy Period of the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 issued to Chief.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

18

COMPLAINT FOR DECLARATORY RELIEF

106.   CICA alleges that because the Underlying Action alleges that the publication of materials pre-dates the CICA policies, there is no duty to defend.  On information and belief, Chief denies this allegation.

107.   CICA has no adequate remedy at law to resolve the aforesaid controversy.

## TWELFTH CAUSE OF ACTION

**(Declaratory Judgment – No Duty to Defend Because CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 Excludes Coverage.)**

108.   CICA incorporates herein by reference, as though fully set forth, the allegations contained in paragraph 1 through 106 above.

109.   Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 provides numerous exclusions to coverage based on specific circumstances.

110.   The allegations in the Underlying Action, as well all circumstances surrounding and relating to the Underlying Action, invoke the exclusions stated in Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.

111.   CICA contends that the allegations in the Underlying Action, as well all circumstances surrounding and relating to the Underlying Action, invoke the exclusions stated in CICA Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 , which Chief denies this contention.

112.   A justiciable controversy exists between CICA on the one hand, and Chief on the other hand, concerning whether Exclusions in the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 apply to the allegations alleged in the Underlying Action.

113.   CICA desires a judicial determination that the Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 exclusions applies to the allegations alleged in the Underlying Action.

114.   CICA alleges that because the Underlying Action alleges facts that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  would fall within the CICA policy exclusions, there is no duty to defend.  On

2  information and belief, Chief denies this allegation.

3      115.   CICA has no adequate remedy at law to resolve the aforesaid

4  controversy.

5                    **THIRTEENTH CAUSE OF ACTION**

6    **(Declaratory Judgment –No Duty to Provide *Cumis* or Independent Counsel.)**

7      116.   CICA incorporates herein by reference, as though fully set forth, the

8  allegations contained in paragraph 1 through 114  above.

9      117.   If duty to indemnify exists, there is no conflict of interest between

10 CICA and the Defendant to invoke a duty to provide independent counsel pursuant

11 to *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.* (1984)

12 162 Cal.App.3d 361.

13     118.   CICA contends that because there is no conflict of interest between

14 CICA and the Defendant, if a duty to defend is owed, CICA does not need to

15 provide *Cumis* counsel, which Chief denies this contention.

16     119.   A justiciable controversy exists between CICA on the one hand, and

17 Chief on the other hand, concerning CICA's obligation to indemnify Chief under the

18 Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00 with

19 respect to the Claims brought forth in the Underlying Action against Cathy Parkes.

20     120.   CICA desires a judicial determination with respect to the right, duties,

21 and obligations of CICA as to the duty to indemnify Chief against the claims

22 brought against Cathy Parkes in the Underlying Action, on the basis that the no

23 independent counsel is owed to the Defendant.

24     121.   CICA has no adequate remedy at law to resolve the aforesaid

25 controversy.

26                   **FOURTEENTH CAUSE OF ACTION**

27       **(Reimbursement of Defense Costs Not Owed from Defendant.)**

28     122.   CICA incorporates herein by reference, as though fully set forth, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1
                                         20
                          COMPLAINT FOR DECLARATORY RELIEF

1  allegations contained in paragraph 1 through 120  above.

2      123.   CICA has paid attorney's fees and costs for the defense of Chief in the

3  Underlying Action pursuant to a reservation of rights to recoup those payments if it

4  is found that there was no potential for coverage for the claims alleged in that

5  matter.

6      124.   Pursuant to *Buss v. Superior Court* (1997) 16 Cal.4th 35, 50-53, CIA is

7  entitled to reimbursement of defense fees and costs it has expended and will expend

8  in the defense of matters that were never potentially covered under the CICA

9  Businessowners Liability Insurance Coverage Policy No. OB3 D815660 00.  In the

10 present matter, CICA has expended ad will expend fees and costs defending Chief in

11 the Underlying Action.

12     125.   CICA requests a judgment declaring that it is entitled to reimbursement

13 of some or all of the defense fees and costs expended by CICA in the defense of the

14 Underlying Action.

## **PRAYER FOR RELIEF**

16 WHEREFORE, CICA prays for judgment against Chief as follows:

18 On the First Cause of Action for a declaration of this Court binding as to all

19 Defendants which directs that the CICA Businessowners Liability Insurance

20 Coverage Policy No. OB3 D815660 00 provides no duty to indemnify

21 Defendant because the allegations in the Underlying Action does not qualify

22 as an "occurrence".

24 On the Second Cause of Action for a declaration of this Court binding as to

25 all Defendants which directs that the CICA Businessowners Liability

26 Insurance Coverage Policy No. OB3 D815660 00 provides no duty to

27 indemnify Defendant because the damage alleged in the Underlying Action

28 do not qualify as "property damage".

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2    On the Third Cause of Action for a declaration of this Court binding as to all

3    Defendants which directs that the CICA Businessowners Liability Insurance

4    Coverage Policy No. OB3 D815660 00 provides no duty to indemnify

5    Defendant because the offenses alleged in the Underlying Action occurred

6    outside the Policy Period.

7

8    On the Fourth Cause of Action for a declaration of this Court binding as to all

9    Defendants which directs that the CICA Businessowners Liability Insurance

10   Coverage Policy No. OB3 D815660 00 provides no duty to indemnify

11   Defendant because the Defendant does not qualify as an insured.

12

13   On the Fifth Cause of Action for a declaration of this Court binding as to all

14   Defendants which directs that the CICA Businessowners Liability Insurance

15   Coverage Policy No. OB3 D815660 00 provides no duty to indemnify

16   Defendant because the Underlying Action alleges personal injury sustained

17   prior to the Police Period.

18

19   On the Sixth Cause of Action for a declaration of this Court binding as to all

20   Defendants which directs that the CICA Businessowners Liability Insurance

21   Coverage Policy No. OB3 D815660 00 provides no duty to indemnify

22   Defendant because the Underlying Action is excluded under a Policy

23   Exclusion.

24

25   On the Seventh Cause of Action for a declaration of this Court binding as to

26   all Defendants which directs that the Underlying Action did not allege an

27   "occurrence" as  and thus that CICA has no duty to defend the Underling

28   Action.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

22

On the Eighth Cause of Action for a declaration of this Court binding as to all Defendants which directs that the Underlying Action did not allege "property damage" and thus that CICA has no duty to defend the Underling Action.

On the Ninth Cause of Action for a declaration of this Court binding as to all Defendants which directs that the offenses alleged in the Underlying Action occurred outside of the policy period of CICA and thus that CICA has no duty to defend the Underling Action.

On the Tenth Cause of Action for a declaration of this Court binding as to all Defendants which directs that the Cathy Parkes  does not qualify as an Insured under CICA policies and thus that CICA has no duty to defend the Underling Action.

On the Eleventh Cause of Action for a Declaration of this Court binding as to all Defendants that declares that CICA has no duty to defend the Underling Action because  the alleged publications of materials causing personal injury in the Underlying Action occurred before the CICA policy period

On the Twelfth Cause of Action for a Declaration of this Court that CICA has no duty to defend the Underlying Action because the exclusions apply to allegations in the Underlying Action.

On the Thirteenth Cause of Action for a Declaration of this Court binding as to all Defendants which directs that the CICA has no duty to provide *Cumis* or independent counsel and for reimbursement of amounts paid to defend without obligation which exceeds $75,000.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2       For costs of suit incurred herein, including attorneys' fees and costs.

3

4       For such other relief as the Court may deem just and proper.

5

6  DATED: June 10, 2020      LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8

9              By: _____

10                 Alan E. Swerdlow

11                 Attorneys for PLAINTIFF CITIZENS
INSURANCE COMPANY OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4816-3244-2815.1

24

COMPLAINT FOR DECLARATORY RELIEF

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C.<br><br>Plaintiff,<br><br>v.<br><br>CATHY PARKES d/b/a LEVEL UP RN<br>Serve:<br>2852 Camino Serbal, Carlsbad, California 92009<br><br>Defendant. | Case No. _____ |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, AND UNFAIR COMPETITION

Plaintiff Assessment Technologies Institute, L.L.C. ("Plaintiff" or "ATI") for its

Complaint against Defendant Cathy Parkes dba Level Up RN ("Defendant" or "Parkes" or

"Level Up RN") states as follows:

### INTRODUCTION

1.　　ATI is a leading provider of copyright-protected educational resources and

assessment materials used by close to 3,000 nursing schools nationwide.  Nursing schools license

ATI's proprietary educational content to use in their nursing program curriculum and also use

ATI's proprietary tests to evaluate their students' understanding of information and skills that are

essential in the nursing profession.

2.　　Defendant Cathy Parkes became familiar with ATI's proprietary materials when

1

she was in nursing school and, after finishing nursing school, she decided to start a business promoting and selling derivative versions (study cards and videos) of ATI's copyrighted works to nursing students.  To be clear, ATI would have no objection if Parkes – or anyone else – wanted to teach nursing students how to be better students or nurses.  But that is distinctly not what Parkes has been doing since starting her business, which she initially named, simply, "Pass The ATI."  While Parkes publicly claims to be helping students more effectively use ATI's materials and study for ATI's exams, instead, Parkes has built a business copying ATI's copyrighted works and providing students with answers to ATI's proprietary tests.  These same ATI tests are relied on by nursing programs to make critically important decisions about each student – whether the student has learned the requisite nursing concepts and information they will need to successfully practice as a nurse, whether the student has mastered knowledge sufficient to graduate from the nursing program, whether the student is prepared to sit for the NCLEX (the National Council Licensure Examination for the licensing of nurses in the United States) and, ultimately, whether the student is prepared to become a practicing nurse.  In other words, Parkes is improperly making unauthorized use of ATI's copyrighted exams and review materials to teach students enough of the answers on the ATI exams so that students will score well and trick their nursing schools into believing that they have the requisite knowledge to graduate and sit for the NCLEX.

3.     Parkes' conduct irreparably harms ATI's business by severely undermining the effectiveness and usefulness of its proprietary learning and assessment materials that ATI licenses to nursing schools.  In addition, it harms the schools themselves, because it makes it more likely that they will graduate students without the requisite knowledge to pass the NCLEX and progress in their careers, which, among other things, could threaten the school's license to

ACTIVE/100540296

operate its nursing program.  And of course, Parkes' infringing activity harms the students she alleges to help by depriving them of the comprehensive education and knowledge they need to pass the NCLEX and obtain licensing to practice as nurses.

4.      In short, Parkes has built her business using ATI's copyrighted works.  ATI brings this lawsuit to put an immediate end to Parkes' unlawful, and harmful, activities.

## THE PARTIES

5.      ATI is a Delaware limited liability corporation with its principal place of business in Leawood, Kansas.

6.      Upon information and belief, Parkes is an individual residing at  2852 Camino Serbal, Carlsbad, California 92009.  Parkes does business as "Level Up RN" (formerly, "Pass The ATI") and is the creator, operator, and owner of the websites www.LevelUpRN.com and www.PassTheATI.com.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over ATI's claims relating to the Copyright Act (17 U.S.C. § 101 *et seq*.) and the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq*.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents, and trademarks).  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because ATI is a Delaware and Kansas company, Parkes resides in California, and the amount in controversy exceeds $75,000.  This Court has supplemental subject matter jurisdiction over ATI's remaining state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

8.      This Court has personal jurisdiction over Parkes.  Parkes has repeatedly interacted

with ATI's platform and transacted substantial business with ATI by, among other things, purchasing ATI's copyright-protected works from ATI.  In addition, Parkes expressly agreed to ATI's Terms and Conditions when she registered for an ATI account which provide that "[e]xclusive jurisdiction for any claim arising out of this Agreement will be in the courts of the State of Kansas, U.S.A."

9.       Venue is proper in this District based on Parkes' express agreement to the exclusive venue provision in ATI's Terms and Conditions.

## FACTUAL ALLEGATIONS

### Background on ATI

10.       ATI has been in business since 1998 and is a leading  provider in the nursing education field of entrance examination services, comprehensive online test preparation services, as well as one of the top providers of related assessment, remediation and review services to nursing schools and students in the United States.  ATI provides services to over 2,750 of the approximately 4,000 nursing schools in the United States, and customer satisfaction rates throughout all levels is extremely high as demonstrated by a 95%+ client retention annually.  By virtue of the foregoing, the ATI name and brand have come to be widely known as synonymous with the highest quality testing, preparation, assessment, remediation, and review services for nursing schools and their students.

11.       ATI develops and owns numerous educational resources (online and print) that are used by nursing schools and their students in teaching and studying a wide range of nursing-related subjects, including but not limited to resources such as review materials, textbooks, videos, study guides, practice tests to assess a student's understanding of specific nursing topics, and various other related study materials (collectively, "ATI Products").  In addition, ATI

develops and owns assessments administered by nursing schools in a secure, proctored setting to help the nursing schools evaluate their students' mastery of nursing concepts and to assess students' overall readiness to sit for the NCLEX[1] and practice in the nursing profession ("ATI Proctored Exams"). Generally, the ATI Products are tailored around nine topics that are tested on the ATI Proctored Exams:

1. Fundamentals for Nursing;

2. Nursing Leadership and Management;

3. Nutrition for Nursing;

4. RN Adult Medical Surgical Nursing;

5. RN Community Health Nursing;

6. RN Maternal Newborn Nursing;

7. RN Mental Health Nursing;

8. RN Nursing Care of Children; and

9. RN Pharmacology for Nursing (collectively, the "ATI Proctored Exam Topics").

12.     Thousands of nursing schools contract with ATI for use of ATI Products and ATI Proctored Exams with their nursing students every year. These schools license the ATI Proctored Exams and Products directly from ATI, and nursing students can also purchase ATI Products directly from ATI.

---

[1] The NCLEX is a nationwide examination for the licensing of nurses in the United States and Canada, developed and owned by the National Council of State Boards of Nursing ("NCSBN"). ATI does not use any NCLEX test items in ATI Proctored Exams. Students are not eligible to sit for the NCLEX unless and until their nursing program provides approval, indicating that each such student is prepared and ready to take the NCLEX exam.

13.     ATI's nursing school clients use ATI Proctored Exams to assess their students' nursing skill knowledge and readiness to sit for the NCLEX.  The ATI Proctored Exams test nursing students on critical subject areas that are essential to the nursing profession and are covered on the NCLEX.  In order to sufficiently educate students on these topics prior to the ATI Proctored Exams, throughout the program, students have access to ATI Products that provide substantive, in-depth instruction and review on a variety of subject matters, and also have access to ATI's practice assessments that can be used to gauge a student's understanding of certain topics and identify areas needing remediation.

14.     The integrity of the ATI Proctored Exams is vital not only to ATI's business and client relationships, but also to the viability of the nursing schools that use ATI Proctored Exams and ATI Products to support their curriculum.  Nursing schools are licensed to operate by state boards of nursing, and part of the licensure process includes a review of the school's NCLEX pass rates.  ATI Products and ATI Proctored Exams are widely used by nursing programs to help ensure satisfactory NCLEX pass rates.  If NCLEX pass rates decline and too many of a school's graduated students fail the NCLEX, the nursing school could lose its license to operate.

### The Proprietary ATI Materials

15.     ATI goes to great lengths to protect its intellectual property and trade secrets relating to the ATI Proctored Exams and Products.  ATI invests millions of dollars employing test developers, nurse consultants, psychometricians, and other professionals in its Kansas headquarters who work on the development of the ATI Proctored Exams and Products.

The ATI Proctored Exams

16.     The ATI Proctored Exams are original works of authorship created by ATI through intensive collaboration of ATI educational, nursing, and test development experts to

ensure that relevant topics and sub-topics are accurately, adequately, and proportionately tested in a unique and non-biased manner.  The confidentiality of the ATI Proctored Exams is rigorously protected by ATI as highly confidential material.  This protection ensures that ATI maintains its competitive edge and substantially reduces the ability of students to cheat on the ATI Proctored Exams.  In fact, ATI has an ATI Test Security Team that is devoted primarily to protecting and preserving the confidentiality and integrity of ATI Proctored Exams.

17.     Questions on the ATI Proctored Exams undergo exhaustive psychometric evaluation and analysis to ensure their accuracy, fairness, validity, quality, and reliability.

18.     The creation of each ATI Proctored Exam is a costly and time-intensive undertaking which results in a valuable finished product that is obtainable only through ATI's rigorous design, development, and testing processes.

19.     ATI obtains copyright protection for each of the ATI Proctored Exams utilizing the U.S. Copyright Office's secure procedure for registration of "nonmarketed test(s) administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration" ("Secure Test Procedures") set forth in 37 C.F.R. § 220.20.

20.     The Copyright Office's Secure Test Procedures allows ATI to register copyrights in its exams while maintaining their security and confidentiality. By utilizing these procedures, ATI need not file any examination question.

21.     This procedure allows ATI to satisfy the Copyright Office's deposit requirement by submitting a copy of each of the ATI Proctored Exams with all content redacted to a sufficient degree to prevent anyone from discerning the actual content of the exam.

22.     ATI owns, among others, the following valid and subsisting U.S. copyright

7

registrations for the ATI Proctored Exams:

| Copyright Name | U.S. Copyright No. |
|---|---|
| RN Comprehensive Predictor 2013 Form E | TXu1990789 |
| RN Adult Medical Surgical 2013 Form C | TX7955962 |
| RN Community Health 2013 B | TX8044947 |
| RN Fundamentals P 2013 Form C | TX7948684 |
| RN Maternal Newborn 2013 Form A | TX7950001 |
| RN Pharmacology 2013 Form A | TX7950112 |
| RN Nursing Care of Children 2013 Form A | TX7950117 |
| RN Leadership 2013 B | TX8037645 |
| RN Mental Health 2013 B | TX8044953 |
| RN Comprehensive Predictor 2010 Form C | TXu1834166 |
| RN Nutrition for Nursing 2010 Form A | TXu1826713 |

23.     True and correct copies of the copyright registrations for the above-referenced ATI Proctored Exams are attached hereto as **Exhibit 1**.

24.     The copyright-protected ATI Proctored Exams are administered to students by ATI's nursing school clients in secure testing locations, and under the close supervision of a trained proctor pursuant to the ATI Proctor Process Guide(s).  The vast majority of ATI's clients provide school-supplied computers for testing and the few that have a "Bring Your Own Device" policy are required by ATI to follow strict security protocol both prior to initiating and during the proctored exam, including the requirement that there be multiple proctors present, all computers must be shut down and restarted at the same time, and the proctors must monitor all screens before starting the exam to ensure no programs other than the ATI Proctored Exam are running simultaneously.  ATI's exam questions are only in the possession of nursing students when they are sitting for actual proctored examinations.

25.     Prior to administering or taking an ATI Proctored Exam, proctors and students agree to maintain the confidentiality of the ATI Proctored Exams.

26.     Students taking the ATI Proctored Exams must click the "I Agree" box next to the following terms that are conspicuously displayed on a screen prior to beginning an ATI

8

Proctored Exam:



27.     Proctors administering the ATI Proctored Exams are trained by ATI through

ATI's Proctor Certification Course in necessary proctor duties to ensure the security of the test

environment and ATI Proctored Exams.  In addition, each proctor must agree to the following

terms before administering each ATI Proctored Exam:



28.     Proctors are instructed to read the ATI-provided proctor script to test-takers prior

to initiating an ATI Proctored Exam. The proctor script reviews the rules of what is prohibited

during test administration.  In addition, each proctor must sign a "Proctor Oath" which delineates

agreement on the obligations of each proctor.

29.     Students are unable to retain any copies of ATI Proctored Exams and ATI

ACTIVE/100540296

maintains internal security procedures to ensure the tests are not distributed except to authorized clients for the administration of the test by an authorized proctor to authorized student test-takers.  These measures include, but are not limited to, ATI:  (i) requiring that proctors remain present during the entire test administration and only students who have shown identification and authorization to test are permitted to sit for the exam; (ii) establishing and maintaining a strict and unwavering prohibition on any disclosure of ATI Proctored Exams except for the sole purpose of official test administration by an authorized proctor during a proctored session; (iii) employing tight restrictions and internal controls that prevent even ATI employees from accessing ATI Proctored Exams, except for the select few who require access for purposes of test development, test security, and copyright filing; (iv) implementing technical functionality that detects when any test-taker clicks outside the browser during the test administration; (v) maintaining ongoing monitoring by ATI for suspicious test activity and test result anomalies, which are promptly investigated, addressed, and resolved with each applicable ATI nursing school client; (vi) maintaining ongoing review and monitoring of social media and Internet resources for possible unauthorized use or disclosure of exam content; and (vii) taking swift and aggressive legal action in the form of cease and desist demands, DMCA take down notices, and, where necessary and appropriate, involvement of law enforcement.[2]

<div align="center">Other ATI Products</div>

30.     Similar to the ATI Proctored Exams, ATI test preparation resources, including specifically practice exams ("ATI Practice Exams") and review modules ("ATI Review

---

[2] Following an investigation by the Federal Bureau of Investigation, in or around September 2012 in the Southern District of New York, an individual was arrested, taken into custody, and charged with crimes related to the illegal selling of ATI test materials.

Modules"), are created through intensive collaboration among ATI employees, nurse consultants, and other professionals to prepare materials that, in ATI's unique judgement, are essential to the skilled and proficient practice of nursing. The ATI Review Modules (instructional content) and ATI Practice Exams (assessments) cover a wide range of content and topics, including but not limited to subject matter covered on ATI Proctored Exams. By using the ATI Review Modules and ATI Practice Exams, students learn about a variety of nursing subjects and can best prepare for ATI Proctored Exams, and ultimately the NCLEX.

31.     The ATI Review Modules and ATI Practice Exams are original works of authorship by ATI. They are the result of ATI's creative selection, coordination, and arrangement of relevant nursing subject matter topics and specific information that is compiled by ATI into unique, comprehensive study tools for nursing students.

32.     ATI owns, among others, the following valid and subsisting U.S. copyright registrations for ATI Review Modules:

| Copyright Name | U.S. Copyright No. |
|---|---|
| Fundamentals for Nursing, Edition 9.0, Content Mastery Series Review Module | TX8427860 |
| Nursing Leadership and Management, Edition 7.0, Content Mastery Series Review Module | TX8427881 |
| Nutrition for Nursing, Edition 6.0, Content Mastery Series Review Module | TX8427923 |
| RN Adult Medical Surgical Nursing, Edition 10.0, Content Mastery Series Review Module | TX8427854 |
| RN Community Health Nursing, Edition 7.0, Content Mastery Series Review | TX8427918 |
| RN Maternal Newborn Nursing, Edition 10.0, Content Mastery Series Review Module | TX8427929 |
| RN Mental Health Nursing, Edition 10.0, Content Mastery Series Review Module | TX8427927 |
| RN Nursing Care of Children, Edition 10.0, Content Mastery Series Review Module | TX8427924 |
| RN Pharmacology for Nursing, Edition 7.0, Content Mastery Series Review Module | TX8427926 |

11

33.   True and correct copies of the copyright registrations for the above-referenced ATI Review Modules are attached hereto as **Exhibit 2**.

34.   ATI also owns valid and subsisting U.S. copyright registrations for ATI Practice Exams, including the following:

| Copyright Name | U.S. Copyright No. |
|---|---|
| RN Adult Medical Surgical Online Practice 2013 Form A | TXu1890135 |
| RN Adult Medical Surgical Online Practice 2013 Form B | TXu1890189 |
| RN Capstone Content Review Adult Medical Surgical 1 2013 | TX7955986 |
| RN Capstone Content Review Adult Medical Surgical 2 2013 | TX7955971 |
| RN Capstone Content Review Fundamentals 2013 | TX7955997 |
| RN Capstone Content Review Leadership and Community Health 2013 | TX7956027 |
| RN Capstone Content Review Maternal Newborn and Women's Health 2013 | TX7955917 |
| RN Capstone Content Review Mental Health 2013 | TX7955926 |
| RN Capstone Content Review Nursing Care of Children 2013 | TX7956101 |
| RN Capstone Content Review Pharmacology 1 2013 | TX7956090 |
| RN Capstone Content Review Pharmacology 2 2013 | TX7956036 |
| RN Community Health Online Practice 2013 Form A | TXu1889366 |
| RN Community Health Online Practice 2013 Form B | TXu1890162 |
| RN Comprehensive Online Practice 2013 Form A | TXu1890154 |
| RN Comprehensive Online Practice 2013 Form B | TXu1890129 |
| RN Fundamentals Online Practice 2013 Form A | TXu1889339 |
| RN Fundamentals Online Practice 2013 Form B | TXu1890182 |
| RN Leadership Online Practice 2013 Form A | TXu1890150 |
| RN Leadership Online Practice Form 2013 B | TXu1890174 |
| RN Maternal Newborn Online Practice 2013 Form A | TXu1890127 |
| RN Maternal Newborn Online Practice 2013 Form B | TXu1890190 |
| RN Mental Health Online Practice 2013 Form A | TXu1890148 |
| RN Mental Health Online Practice 2013 Form B | TXu1889347 |
| RN Nursing Care of Children Online Practice 2013 Form A | TXu1889332 |
| RN Nursing Care of Children Online Practice 2013 Form B | TXu1889336 |
| RN Nutrition Online Practice 2013 Form A | TXu1890160 |
| RN Nutrition Online Practice 2013 Form B | TXu1889329 |
| RN Pharmacology Online Practice 2013 Form A | TXu1889342 |
| RN Pharmacology Online Practice 2013 Form B | TXu1889341 |
| RN VATI Fundamentals 2013 | TX07950079 |
| Targeted Medical-Surgical 2013: Cardiovascular | TX8037604 |
| Targeted Medical-Surgical 2013: Endocrine | TX8037632 |
| Targeted Medical-Surgical 2013: Fluid, Electrolyte, and Acid-Base | TX8037609 |
| Targeted Medical-Surgical 2013: Gastrointestinal | TX8037625 |

12

| Copyright Name | U.S. Copyright No. |
| --- | --- |
| Targeted Medical-Surgical 2013: Immune | TX8037628 |
| Targeted Medical-Surgical 2013: Neurosensory and Musculoskeletal | TX8037613 |
| Targeted Medical-Surgical 2013: Perioperative | TX8037578 |
| Targeted Medical-Surgical 2013: Renal and Urinary | TX8037599 |
| Targeted Medical-Surgical 2013: Respiratory | TX8037601 |

35.     True and correct copies of the copyright registrations for the above-referenced

ATI Practice Exams are attached hereto as **Exhibit 3**.

**Parkes' Infringement of ATI Registered Copyrights, Misappropriation of ATI's Trade**

**Secrets, and Breach of ATI's Terms and Conditions**

36.     Upon information and belief, Parkes attended California State University, San

Marcos ("CSUSM") from January 2013 through December 2015.  Parkes attended CSUSM's

Accelerated Bachelor Program.

37.     During that time, CSUSM licensed ATI Proctored Exams and ATI Products for

use in connection with its nursing program.

Parkes Accepts ATI's Terms and Conditions and Accesses ATI's Copyrighted Works

38.     Parkes created an ATI account (and expressly agreed to ATI's Terms and

Conditions) in or around January 2013.

39.     Before creating an account with ATI, students are required to review and

affirmatively accept ATI's Terms and Conditions.  The first paragraph of ATI's Terms and

Conditions states the following:

> THE TERMS AND CONDITIONS SET OUT BELOW ARE A LEGAL
> AGREEMENT ("AGREEMENT") BETWEEN YOU AND ASSESSMENT
> TECHNOLOGIES INSTITUTE, LLC ("ATI), AND GOVERN YOUR USE OF
> ATI PRODUCTS AND SERVICES AND RELATED MATERIALS, WHETHER
> DELIVERED BY SHIPMENT OR ACCESSED ONLINE, INCLUDING, BUT
> NOT LIMITED TO, ATI CURRICULUM, BOOKS AND EBOOKS, COURSE
> CONTENT, INSTRUCTIONAL AND TEST PREPARATORY MATERIALS,
> SURVEYS AND QUESTIONNAIRES, VIDEOS, TUTORIALS, TESTING AND
> ASSESSMENT   MATERIALS,   AND   RELATED   ATI   RESOURCES

(COLLECTIVELY REFERRED TO HEREIN AS "ATI PRODUCTS") MADE AVAILABLE TO YOU BY ATI, INCLUDING BUT NOT LIMITED TO, THROUGH ATI'S ONLINE HOSTED PLATFORM AND RELATED CUSTOMER SERVICES ("ATI SERVICES"). YOU MUST AGREE TO THESE TERMS BEFORE ESTABLISHING AN ACCOUNT WITH ATI AND BEFORE YOU ACCESS ATI PRODUCTS. TO AGREE TO THESE TERMS, CLICK "I AGREE." IF YOU DO NOT AGREE TO THESE TERMS, DO NOT CLICK "I AGREE." IF YOU DO NOT CLICK "I AGREE", YOU WILL NOT BE ABLE TO REGISTER FOR ATI PRODUCTS USE AND YOU SHOULD NOT ACCESS ATI PRODUCTS.

40.    The ATI Terms and Conditions provide, among other things, that:

- "By establishing an Account, you certify and represent that any exam, test, assessment, or other interactive tool offered through ATI Products will be completed and utilized only by you."

- "You agree to use ATI Products and ATI Services only as permitted under this Agreement."

- "You agree that, except for data stored on ATI Products which comprises your student record to which you are entitled access under applicable law, you will not disclose any portion of ATI Products to any other person or entity, as ATI Products contains the confidential and proprietary material of ATI and doing so would result in serious financial harm to ATI, for which you may be held personally liable. Any violation of these terms may subject you to civil and criminal penalties, prosecution, monetary damages, and the immediate termination of your ability to use ATI Products and ATI Services."

- "You understand and agree that ATI Products and ATI Services constitute intellectual property and proprietary material that is owned by ATI or its licensors and is protected under intellectual property laws in the United States and other countries, which includes, but is not limited to, copyright."

- "***You agree not to copy, modify, rent, lease, loan, sublicense, sell, distribute, disassemble, decompile, reverse engineer, or create any derivative works of or based on the ATI Products or ATI Services***"

- "You agree to use ATI Products and ATI Services only as permitted under this Agreement. Any violation of these terms may subject you to civil and criminal penalties, prosecution, monetary damages, and the immediate termination of your ability to use ATI Products and ATI Services."

- "Upon termination of your school's or institutions ATI Products license, or your individual license if you have directly paid ATI, you shall cease all use of ATI Products and ATI Services"

14

- "ATI reserves the right to update and modify the terms of this Agreement without advance notice to you and such changes will be effective immediately when posted on this site and will govern your continued use of ATI Products and ATI Services"

41.    Users can only get access to ATI Products by agreeing to these terms.  The users must click "Yes, I Agree" in the following box:



Yes, I Agree.  I have read and understand the ATI Terms and Conditions, and agree to be bound by all of the terms, conditions and policies described therein, including, but not limited to, the following specific consents:

42.    Parkes expressly agreed to ATI's Terms and Conditions in or around January 2013 when she created her ATI account and clicked the "Yes, I Agree" box.  Parkes again expressly agreed to ATI's Terms and Conditions in August 2016, when ATI required all existing account holders to review and agree to its updated terms and conditions in order to continue accessing their ATI accounts.

43.    Parkes accessed the ATI Practice Exams and ATI Review Modules through her ATI account while she was a nursing student at CSUSM.  After Parkes graduated from CSUSM in or around December 2015, she continued accessing the ATI Practice Exams and ATI Review Modules for approximately three and a half years (through as recent as March 2019) through ATI's online platform.  In May 2019, ATI terminated Parkes' ATI access rights after discovering her widespread and intentional infringement of ATI's intellectual property and her violations of ATI's Terms and Conditions through her business formerly known as "Pass the ATI" (which she subsequently renamed "Level Up RN").

<u>"Pass the ATI"</u>

44.     At some point after graduating from nursing school, Parkes embarked on a for-profit mission to provide students with answers to questions on the ATI Proctored Exams through her "Pass the ATI" business.  On information and belief, Parkes is the owner of the domain PassTheATI.com that was created on November 21, 2017.  ATI is further informed and believes that, in or around November 2017, Parkes also created a YouTube account titled "Pass the ATI" and operated several other social media accounts, including on Instagram and Facebook, which also operated under the name "Pass the ATI."

45.     Through her Pass the ATI YouTube account and PassTheATI.com, Parkes began uploading video tutorials ("Parkes Videos" or "Videos") designed specifically to help ATI's clients' students pass the ATI Proctored Exams.  Parkes reviews ATI Review Modules in her Videos, following and reciting the same format and order of topics, and she also repeatedly tells students what information will be tested on the ATI Proctored Exams, thus encouraging students to learn only what would be tested on the applicable ATI Proctored Exam.

46.     On or about May 2018, Parkes also began selling study cards ("Parkes Study Cards" or "Study Cards").  Parkes created these materials using ATI's copyrighted Review Modules,  including the exact topics and order of content presented in ATI's Review Modules and Practice Exams.

47.     Parkes offered for sale and sold the Parkes Study Cards on PassTheATI.com and touted the availability of "over 200+" Parkes Videos on her site that were intended specifically to instruct nursing students how to "Pass the ATI" exams.  Per the PassTheAti.com home page on August 26, 2018, Parkes also offered users an email subscription service to "[r]eceive exclusive access to updates, study tips, and ideas to help you pass the ATI."  The Parkes Study Cards and

Videos were also advertised through her additional Pass the ATI social media platforms.

48.    As shown in the screen shots below, the Parkes Study Cards and Videos were

tailored to the ATI Proctored Exam Topics:

*"Pass the ATI" Home Page (August 26, 2018)*



*"Pass the ATI" Home Page (August 26, 2018)*



49.    The Parkes Study Cards and Videos available through PassTheATI.com and

ACTIVE/100540296

Parkes' "Pass the ATI" YouTube page contained content that is identical to, or, at a minimum, substantially similar to, the copyrighted ATI Review Modules and Practice Exams.  For example, ATI's RN Pharmacology for Nursing Review Module focuses on 140 medications and Parkes' "Pharmacology Cards for Nursing Students" Study Cards address the same 140 medications. This medication list is not a list of medicines that all nursing students must universally know, but rather, is a list of medications that ATI uniquely developed through the expertise, research, and consultation of ATI personnel.  It is no coincidence that Parkes' list of medications is precisely the same as the list that ATI uniquely developed.  This is just one of many examples of Parkes' blatant infringement of ATI's copyrights.

50.     On October 12, 2018, shortly after learning of Parkes' infringing activities, ATI sent Parkes a letter notifying her that her "Pass the ATI" trade name infringed ATI's federal trademark rights and demanding that she cease any and all use of the ATI's trademarks.

51.     After receiving the above notice of infringement from ATI, Parkes re-branded her business from "Pass the ATI" to "Level Up RN" without terminating or meaningfully changing any of her content.  Parkes also continued accessing ATI's copyrighted works so she could continue to copy them.

<div align="center">"Level Up RN"</div>

52.     On or around October 13, 2018, Parkes created the domain LevelUpRN.com and continued operating her unlawful business under the name "Level Up RN."  Users who were purchasing and/or accessing the infringing Parkes Study Cards and Videos on www.PassTheATI.com are now simply re-directed from that domain to www.LevelUpRN.com.

53.     Parkes continues to sell the infringing Study Cards on LevelUpRN.com and host the infringing Videos on LevelUpRN.com and her Level Up RN YouTube channel.

ACTIVE/100540296

54.     The Study Cards and Videos that are sold and/or accessible on the various Level Up RN platforms illegally copy ATI's creative selection, coordination, and arrangement of relevant nursing subject matter topics and specific subject matter information within the ATI Review Modules and Practice Exams.

55.     First, Parkes' Study Cards cover the same nine topics – no more, and no less – that are covered in the ATI Review Modules, ATI Practice Exams, and ATI Proctored Exams. The following chart depicts the ATI Proctored Exam Topics side-by-side with the subject matter topics covered in Parkes' Study Cards:



| ATI Proctored Exam Topics | Parkes Study Card Topics |
| --- | --- |
| Fundamentals for Nursing | Nursing Fundaments Study Cards |
| Nursing Leadership and Management | Nursing Leadership Flash Cards |
| Nutrition for Nursing | Nutrition for Nursing Study Cards |
| RN Adult Medical Surgical Nursing | Medical Surgical Nursing Study Cards (Vol 1&2) |
| RN Community Health Nursing | Community Health Nursing Cards |
| RN Maternal Newborn Nursing | Maternal Newborn Nursing Study Cards |
| RN Mental Health Nursing | Mental Health Nursing Study Cards |
| RN Nursing Care of Children | Pediatric Nursing Flash Cards |
| RN Pharmacology for Nursing | Pharmacology Cards for Nursing Students |

56.     Second, Parkes Study Cards are organized in exactly the same manner as the ATI Review Modules.  For example, the following graphic shows how Parkes' copied the organizational structure of ATI's copyright-protected RN Maternal Newborn Nursing Review Module for her Maternal Newborn Nursing Study Cards:



57.     Finally, the selection and organization of topics and information (including the order of topics) within the specific chapters of the Parkes Study Cards are copied directly from the ATI Review Modules.  For example, attached as **Exhibit 4** is a chart showing Parkes' copying of the selection and organization of topics and information from ATI's RN Maternal Newborn Nursing Review Module in her Maternal Newborn Nursing Study Cards.

58.     The Parkes Videos also cover exactly the same nine topics – again, no more, and no less – that are covered in the ATI Review Modules, ATI Practice Exams and ATI Proctored Exams.  The following chart depicts the ATI Proctored Exam Topics side-by-side with the subject matter topics covered in the Parkes Videos:

20



59.   The Parkes Videos on the Level Up RN YouTube channel are organized by Parkes and made available to consumers via playlists:



60.   The playlists contain multiple videos that cover more specific topics related to each subject matter.  Parkes' organization of her playlists also is copied directly from the ATI Review Modules.  For example, attached as **Exhibit 5** is a chart showing Parkes' copying of the selection and organization of the material in ATI's RN Maternal Newborn Nursing Review Module in her Maternal Newborn (OB) Nursing video playlist.

61. Parkes admits that her Videos are based entirely on the infringing Parkes Study Cards. In several of her videos, Parkes states that the "videos will offer better alignment with [her] study cards" and that she "will be following along [in the video] with [her] Study Cards." Parkes uses her Videos to lure students and then uses her Video platform on YouTube to market and promote the sale of her Study Cards:

Level Up RN
Published on Jun 26, 2019

Cathy Parkes RN, covers Nursing Pharmacology - Introduction. The Nursing Pharmacology video tutorial series is intended to help RN and PN nursing students study for nursing school exams, including the ATI, HESI and NCLEX.

Please offer comments or suggestions on how these videos can be improved! Also, please feel free to share these videos with your classmates :)

Cathy's Nursing Pharmacology Flashcards are available at http://bit.ly/pharmacards

GET MORE RESOURCES, TIPS AND STUDY AIDS!
https://www.leveluprn.com/

SHOP MY STUDY CARDS
All of My Study Cards:
http://bit.ly/allstudycards

Comprehensive Pack of Study Cards:
http://bit.ly/comprehensivecards

Pharmacology Study Cards:
http://bit.ly/pharmacards

Medical Surgical Study Cards:
http://bit.ly/medsurgcards

Pediatrics Study Cards:
http://bit.ly/pedscards

Maternal Newborn (OB) Study Cards:
http://bit.ly/maternalcards

Mental Health Study Cards:
http://bit.ly/mentalhealthnursingcards

Nursing Fundamentals Study Cards:
http://bit.ly/fundacards

Nursing Leadership Study Cards:
http://bit.ly/leadershipcards

Nutrition Study Cards:
http://bit.ly/nutricards

Community Health Study Cards:
http://bit.ly/commcards

CATHY'S PICKS ON AMAZON
My favorite products available on Amazon to help you advance your career.
https://www.amazon.com/shop/cathyparkes

HI I'M CATHY PARKES
I'm here to help you Level Up! During my time at CSUSM's Accelerated Bachelor's of Nursing program, I helped my fellow classmates who were struggling with the exam, pass and graduate. After receiving my BSN I went on to become an RN at Scripps Encinitas Hospital. As more and more students reached out to me for help, I decided to start this channel to help people across the world. LEVEL UP.

STAY CONNECTED
Facebook: https://fb.me/LevelUpRN
Instagram: https://www.instagram.com/leveluprn/



62.     Parkes also holds up copies of the infringing Study Cards in many of the Videos. Below are examples of Parkes' reproduction of copies of the infringing Study Cards in various Videos:



63.     In addition to infringing the ATI Registered Copyrights, Parkes' Videos also use ATI's trade secrets, specifically, the proprietary questions and answers from the ATI Proctored Exams.  For example, in certain Videos, Parkes offers suggestions and hints to viewers indicating certain information that viewers "need to" or "should" know before taking the ATI Proctored Exams.  In previous versions of her Videos, Parkes made more blatant statements about the questions and answers in the ATI Proctored Exams.  Following her receipt of cease and desist correspondence from ATI, Parkes made purely cosmetic changes while still signaling to her viewers the questions and answers on the ATI Proctored Exams.  The following are just a few examples:

| Original Video<br>(via Pass the ATI) | New Video<br>(via Level Up RN) |
|---|---|
| "I will be going over the ATI pharmacology book chapter by chapter and sharing the key points that you need to know for your exam" | "I will go over the key concepts and the key medications you need to know to be successful with your pharmacology exam." |
| "If you're in a super big time crunch for your pharmacology exam then I would really focus on the bolded text on the back of my cards and really make sure you know that information." | "If you are in a bind as far as time then definitely pay attention to the bolded items on the cards because those are going to be the most important things you need to know." |
| "So that's a super important number to remember." | "That's important to know" |
| "So just know those classifications because I have seen questions on ATI about this." | "That's going to be an important thing to know." |

64.     Notwithstanding these cosmetic changes, Parkes' viewers know when Parkes is hinting about a test answer.  Parkes Study Cards do the same, by focusing specifically on ATI test answers.

65.     Parkes' transition from "Pass the ATI" to "Level Up RN" in response to infringement notices from ATI was merely a false commitment to cease her infringing and unlawful conduct.

66.     On May 10, 2019, ATI sent a second infringement notice demanding that Parkes remove her infringing content.  Parkes responded by agreeing to remove all of her infringing materials and said she would repost her Videos without use of materials that would infringe ATI's intellectual property rights.  On June 27, 2019, Parkes uploaded a video to her YouTube channel titled "Important Channel Update – Where Did The Videos Go?"[3]  In this video, Parkes

---

[3] *See* https://www.youtube.com/watch?v=dhskgTWxBr4.

informs her 48.6K+ subscribers that "[she] will be making some changes to [her] YouTube channel and to [her] website" as her "new content will no longer be focused on tests or content for specific companies" and "as part of this transition [she] will be removing [her] old videos that were more narrowly focused" and "remaking all of [her] videos." However, the homepage for Level Up RN clearly states that the materials are provided specifically for the ATI Proctored Exams:



67.     On or about the time of Parkes' June 27, 2019 notice, Parkes removed all of her Videos, but almost immediately began reposting them, one by one. The only difference between her original and newly posted Videos is that, in her new Videos, Parkes no longer holds up the ATI Review Modules (though she still appears to reference and read from either ATI's Review Modules or her Study Cards, which copy ATI's Review Modules) and she removed most (not all) direct references to ATI.  Notwithstanding her cosmetic changes, students understand that the new Videos are substantively the same as the old Videos.  The following are some examples of student comments posted on the Level Up RN YouTube channel after Parkes temporarily removed her Videos:

- "Thanks for your old videos Cathy, they were super amazing. I see you've already uploaded lots of new videos, same content but different arrangement. I really appreciate all you're doing for us, cause you didn't have to plus you made them free. Thanks"

- "Don't ask her to put the old videos back up. You all should understand and read between the lines. She cannot put the old videos back up as they are 'narrowly focused' content, i.e. ATI probably sent a cease and desist or worse...just my

opinion. I'm sure her new content will be helpful too!"

- "ATI probably issued a cease and desist..those vids were pure gold."

- "ATI definitely contacted her and got her to take them down ugh RIP to my ATI test scores. Someone else wanna take her place as far as ATI studying goes?"

- "I dont think this really means anything, she had to make this vid probably for legal purposes. I'm assuming she's still giving hints like she was before on what to study for, she's probably just not allowed to say it?"

68.     The Level Up RN YouTube channel also contains videos by Parkes titled "Intro to Cathy Parkes and how to pass the ATI nursing exam!" and "How to use study cards to pass the ATI or other nursing exam":



69.     Parkes' motivation behind her infringing Study Cards and Videos from her Level Up RN business is stated clearly in the description of her introduction video:  "Need help passing the ATI exam in Nursing School?  I am here for you!  This is an introduction video, where I share my background and the objectives of my YouTube channel.  It is my goal to help Nursing

ACTIVE/100540296

students around the world pass the ATI exam."

70.     In June 2019, in response to a student's concern regarding whether Parkes' "new"

Videos still track directly with ATI materials, Parkes confirmed that they do:



**Magy Mahmoud** 2 months ago
I've noticed you're doing this book without including the titles of the chapters in the name of the video. is this still related to ATI Maternal Newborn 10.0 or are you breaking it down your own way?

👍 2   👎   REPLY

Hide replies ∧

 **Level Up RN** 2 months ago
The videos should absolutely help you with your ATI Maternal Newborn test, as well as helping you to prepare for NCLEX... I have included the subject matter in the title and thumbnail, so if you want to follow along with your book, it should be pretty easy.

👍   👎   REPLY

71.     In sum, the infringing Study Cards and Videos made available through Parkes'

Level Up RN business are substantively the same as the earlier infringing Study Cards and

Videos made available through her "Pass the ATI" business, and Parkes' clear intent behind her

Level Up RN business remains to encourage students to short-cut their studies and learn only

what Parkes tells them will be tested in the ATI Proctored Exams, which are used by their

schools to assess their knowledge and readiness to graduate and take the NCLEX.

72.     Parkes is generating substantial revenue from her infringement of ATI's

intellectual property rights.  Specifically, Parkes sells the infringing Study Cards directly through

her website for prices between $19 and $236, including in individual sets, bundles, and full sets.

Parkes also advertises the infringing Study Cards through the Level Up RN YouTube channel

(which has 48.6K+ subscribers and 833K+ views of the Videos), her Instagram account (which

has 13K+ followers), and her Facebook account (which has 15K+ followers), as well as through

targeted search advertisements on web pages relating to nursing.  Further, the infringing videos uploaded to the Level Up RN YouTube channel – which have collectively been viewed 100K+ times – generate revenue for Parkes through advertisements based on the number of views.

73.    ATI does not authorize, and has never authorized, Parkes' use of ATI's copyrighted works or its trade secrets in her infringing Study Cards and Videos.  To the contrary, ATI has provided Parkes explicit notice of her infringing activity on multiple occasions and has repeatedly demanded that she cease all such activity.

## FIRST CLAIM FOR RELIEF

### Breach of ATI's Terms and Conditions

74.    ATI incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75.    Use of ATI's products and services is governed by and subject to ATI's Terms and Conditions and all ATI users must agree to ATI's Terms and Conditions before establishing an account or accessing ATI Proctored Exams and ATI Products.

76.    ATI's Terms and Conditions are "governed by the laws of the State of Kansas, U.S.A., without giving effect to its conflict of law provision."

77.    In January 2013, Parkes created a user account with ATI and agreed to ATI's Terms and Conditions.  ATI's Terms and Conditions constitutes a "legal agreement [] between [Parkes] and [ATI] and govern[s] [Parkes'] use of ATI products and services and related materials."

78.    In August 2016, Parkes expressly agreed, again, to ATI's Terms and Conditions. ATI's Terms and Conditions provide that, "[a]ny violation of these terms may subject you to civil and criminal penalties, prosecution, monetary damages."

28

79.     ATI's Terms and Conditions are a binding and valid contract, supported by adequate consideration.

80.     ATI fully performed its obligations under the ATI Terms and Conditions.

81.     Parkes breached the ATI Terms and Conditions by, among other things, copying and distributing ATI's copyrighted works through her infringing Study Cards and Videos without ATI's consent or authorization.

82.     Parkes' conduct has damaged ATI, and caused and continues to cause irreparable and incalculable harm and injury to ATI.

83.     ATI is entitled to a preliminary and permanent injunction prohibiting further violations of the ATI Terms and Conditions, since ATI will continue to suffer immediate and irreparable harm if Parkes' conduct is not enjoined.

84.     ATI also is entitled to damages, reasonable costs, and attorneys' fees in an amount to be proven.

WHEREFORE, ATI prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

### Copyright Infringement, 17 U.S.C. § 101, *et seq.*

85.     ATI incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

86.     ATI owns valid and subsisting U.S. copyright registrations protecting the ATI Review Modules, ATI Practice Exams and ATI Proctored Exams.

87.     ATI licenses its copyrighted materials throughout the United States to nursing schools and other entities involved in nursing education.

88.     Parkes has had access to, and has accessed, the ATI Review Modules, ATI

Practice Exams, and ATI Proctored Exams.

89.     ATI has not authorized Parkes to use, copy, display, distribute, reproduce, or manipulate the ATI Proctored Exams, ATI Practice Exams, and/or ATI Review Modules in any way.

90.     Parkes, doing business as "Pass the ATI" and "Level Up RN," has directly infringed ATI's Registered Copyrights by reproducing, distributing, displaying, and creating derivative works from ATI Proctored Exams, ATI Practice Exams, and/or ATI Review Modules with actual notice of ATI's copyright claims.

91.     Without the permission or consent of ATI, Parkes distributes and offers for sale Study Cards that infringe ATI's copyrights.

92.     Without the permission or consent of ATI, Parkes produces and publishes hundreds of infringing Videos on her ad-sponsored YouTube channel "Level Up RN" and on her websites PassTheATI.com and LevelUpRN.com.

93.     Parkes' copyright infringement is willful and intentional.  As detailed above, Parkes was notified in writing on several occasions that she was infringing ATI's Registered Copyrights.  Following these notices, Parkes continued to access and copy ATI's copyrighted works.  On June 27, 2019, Parkes acknowledged her wrongdoing by posting a short video to her YouTube channel titled, "Important Channel Update – Where Did The Videos Go?", in which she informs her 48.6K+ subscribers that "[she] will be making some changes to [her] YouTube channel and to [her] website" as her "new content will no longer be focused on tests or content for specific companies" and "as part of this transition [she] will be removing [her] old videos that were more narrowly focused" and "remaking all of [her] videos."  However, Parkes' changes to her Study Cards and Videos were merely cosmetic.  Parkes has continued her infringing conduct.

94.     Parkes has benefitted and continues to directly benefit financially from her infringement of ATI's Registered Copyrights, as described above.

95.     ATI has suffered and continues to suffer actual harm and reputational harm, and has incurred significant damages as a direct and proximate result of Parkes' direct infringement. ATI's business is built on its clients' confidence in the credibility of ATI Proctored Exams and ATI Products that nursing schools use to help ensure that their students are prepared for graduation and the NCLEX and will, ultimately, become proficient and successful nurses. By undermining the use of ATI Review Modules for nursing education and the validity of ATI Proctored Exams to evaluate student competency, Parkes is increasing the likelihood that students will fail the NCLEX, to the detriment of their schools' reputation and potential licensed status. This inevitable result will, thereby, threaten the usefulness and integrity of ATI's resources in the field of nursing education and severely damage ATI's relationship and business with its nursing school clients. To date, ATI has already received multiple communications from clients expressing serious concerns about Parkes' Videos and Study Cards in relation to ATI resources.

96.     As a result of Parkes' infringement, ATI is entitled to actual damages pursuant to 17 U.S.C. § 504(b) or, alternatively, statutory damages for willful copyright infringement pursuant to 17 U.S.C. § 504(c)(2), in an amount not yet known but believed to be in excess of $75,000.

97.     Parkes' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, ATI great and irreparable injury that cannot fully be compensated or measured in money. Pursuant to 17 U.S.C. § 502 and 503, ATI is entitled to injunctive relief (i) prohibiting Parkes from further infringing ATI's copyrights and (ii) ordering Parkes to destroy

all physical copies of the infringing materials and to permanently delete all electronic copies of the infringing materials from her websites, social media platforms, and YouTube channel and from any computers, smartphones, tablets, or other devices within her control.

WHEREFORE, ATI prays for judgment as set forth below.

## THIRD CLAIM FOR RELIEF

### Violation of Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. § 60-3320, *et seq.*

98.     ATI incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

99.     ATI owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.  The ATI Proctored Exams constitute trade secrets under the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. § 60-3320, *et seq.*

100.    ATI has expended considerable resources to creating and developing the ATI Proctored Exams.  The creation of an ATI Proctored Exam is an expensive and labor-intensive process, which results in a valuable finished product that is obtainable only through rigorous testing and analysis.

101.    The ATI Proctored Exams derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person or company who could obtain economic value from the disclosure or use of the information.

102.    Parkes misappropriated ATI's trade secrets in violation of Kan. Stat. Ann. § 60-3320, *et seq.* by improperly using the questions and answers in ATI Proctored Exams in her Videos without ATI's authorization or consent.

103.    By improperly accessing and copying ATI's trade secrets, Parkes has damaged ATI monetarily and will continue to do so if she is not stopped.

104.    Parkes' misappropriation is willful.  Parkes engaged in her misappropriation in violation of ATI's rights, despite knowing that the ATI Proctored Exams are proprietary and confidential.

105.    As a result of Parkes' unauthorized access and use of ATI's trade secrets, ATI has been and will continue to be injured irreparably and otherwise, and if Parkes' conduct is not stopped, ATI will continue to suffer severe reputational and competitive harm, irreparable injury, and significant damages in an amount to be proven.

106.    ATI is entitled to injunctive relief pursuant to Kan. Stat. Ann. § 60-3321 to prevent any further actual or threatened misappropriation of its trade secrets.

107.    ATI is entitled to damages, including compensatory damages, unjust enrichment damages and royalties, pursuant to Kan. Stat. Ann. § 60-3322(a), for actual loss and unjust enrichment caused by Parkes' misappropriation of ATI's trade secrets.

108.    ATI is entitled to exemplary damages pursuant to Kan. Stat. Ann. § 60-3322(b) for Parkes' willful and malicious misappropriation of ATI's trade secrets.  ATI is also entitled to recovery of its attorneys' fees pursuant to Kan. Stat. Ann. § 60-3323.

WHEREFORE, ATI prays for judgment as set forth below.

### FOURTH CLAIM FOR RELIEF

**Violation of The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.***

109.    ATI incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

110.    ATI owns and possesses certain trade secret information, as alleged above, including ATI's proprietary and confidential testing materials, the ATI Proctored Exams.

111.    ATI's trade secrets relate to ATI's products and services used in, or intended for

use in, interstate or foreign commerce.  As alleged above, ATI licenses and sells its ATI Proctored Exams to nursing schools throughout the United States and the confidential trade secrets misappropriated by Parkes directly relate to the ATI Proctored Exams.

112.   ATI has expended considerable resources to creating and developing its proprietary examination materials.  The creation of an ATI Proctored Exam is an expensive and labor-intensive process, which results in a valuable finished product that is obtainable only through rigorous testing and analysis.

113.   ATI's trade secret materials derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person or company who could obtain economic value from the disclosure or use of the information.

114.   Parkes misappropriated ATI's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, by improperly using the questions and answers in the ATI Proctored Exams in her Videos and Study Cards without ATI's authorization or consent.

115.   By improperly accessing and copying ATI's trade secrets, Parkes has damaged ATI monetarily and will continue to do so if she is not stopped.

116.   Parkes's misappropriation is willful.  Parkes engaged in her misconduct in violation of ATI's rights, despite knowing that the ATI Proctored Exams are proprietary and confidential.

117.   As a result of Parkes' unauthorized access and use of ATI's trade secrets, ATI has been and will continue to be injured irreparably and otherwise (including but not limited as detailed in paragraph 95), and if Parkes' conduct is not stopped, ATI will continue to suffer severe reputational and competitive harm, irreparable injury, and significant damages in an amount to be proven.

34

118.    In addition to damages, ATI is entitled to preliminary and permanent injunctive relief to protect its confidential, proprietary, and trade secret information and to protect its other legitimate business interests.  ATI's business operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief.

119.    ATI is entitled to an injunction pursuant to 18 U.S.C. § 1836(b)(3)(A) to prevent any further actual or threatened misappropriation of its trade secrets.

120.    ATI is entitled to damages, including compensatory damages, unjust enrichment damages and royalties, pursuant to 18 U.S.C. § 1836(b)(3)(B), for actual loss and unjust enrichment caused by the misappropriation of its trade secrets.

121.    ATI is entitled to exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) for Parkes' willful and malicious misappropriation of its trade secrets.  ATI is also entitled to recovery of its attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

WHEREFORE, ATI prays for judgment as set forth below.

### FIFTH CLAIM FOR RELIEF

### Unfair Competition under Kansas Common Law

122.    ATI hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

123.    Parkes was permitted to access ATI's copyright-protected and proprietary and confidential content pursuant to her agreement to comply with ATI's Terms and Conditions, including the confidentiality provision prohibiting disclosure of "any portion of ATI Products to any other person or entity, as ATI Products contains the confidential and proprietary material of ATI."  Parkes further acknowledged that her access to ATI's copyright-protected and proprietary and confidential content was conditioned on her agreement "not to copy, modify, rent, lease,

loan, sublicense, sell, distribute, disassemble, decompile, reverse engineer, or create any derivative works of or based on the ATI Products or ATI Services."

124.    Parkes accessed ATI's copyright-protected and proprietary and confidential content and reproduced, distributed, displayed, and created derivative works of that protected content without ATI's authorization and in direct violation of her confidentiality and other obligations under ATI's Terms and Conditions.

125.    Parkes also markets and advertises her infringing Study Cards and YouTube Videos using slogans such as "prepare for passing the ATI test" and "help you pass the ATI," which infringes on ATI's goodwill.  Further, Parkes' infringing Videos posted on her YouTube channel and her marketing and sales of infringing Study Cards containing copies and/or unauthorized derivative works of ATI's Registered Copyrights are likely to cause confusion, mistake, or deception as to Parkes' affiliation, connection, or association with ATI, or as to the origin, sponsorship, or approval by ATI of Parkes' infringing works.

126.    Parkes' actions constitute unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices.

127.    As a direct and proximate result of Parkes' unlawful and unfair conduct, ATI has suffered and will continue to suffer irreparable harm unless enjoined by this Court.

WHEREFORE, ATI prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ATI respectfully prays that the Court enter judgment against Defendant Cathy Parkes as follows:

A.    An award of damages in an amount to be proven at trial;

B.      An award equal to Parkes' profits on the sale of her infringing Study Cards and streaming of her infringing YouTube Videos;

C.      Alternatively, and at ATI's election, an award of statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c), such award being equal to the maximum amount allowed under the statute for willful infringement;

D.      That any damages attributable to Parkes' copyright infringement be trebled as a result of her willful infringement;

E.      An award of compensatory and unjust enrichment damages pursuant to 18 U.S.C. § 1836(b)(3)(B) and Kan. Stat. Ann. § 60-3322(a), for the actual loss and unjust enrichment caused by Parkes' misappropriation of ATI's trade secrets;

F.      Reasonable royalties for Parkes' misuse of ATI's trade secrets;

G.      Exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and Kan. Stat. Ann. § 60-3322(b) for Parkes' willful and malicious misappropriation of ATI's trade secrets;

H.      That ATI be awarded its reasonable attorneys' fees in accordance with 17 U.S.C. § 505, 18 U.S.C. § 1836(b)(3)(D), and Kan. Stat. Ann. § 60-3323;

I.      That Parkes be preliminarily and permanently enjoined from any further infringement of ATI's copyrights,  misappropriation of ATI's trade secrets, breach of the ATI Terms and Conditions, and unfair competition;

J.      An order requiring Parkes to (1) destroy any inventory of infringing Study Cards presently in her possession (or hereafter acquired through customer returns) and copies of infringing Videos, (2) provide to ATI an itemized accounting of all of the foregoing, and (3) destroy any electronic files in her possession that contain ATI's copyrighted works; and

ACTIVE/100540296

K.     An award of ATI's costs and all other and further relief as ATI may show it is
entitled to receive or which the Court may determine to be just and equitable under the
circumstances.

## DESIGNATION OF PLACE OF TRIAL

ATI requests that Kansas City, Kansas, be designated as the place of trial in the
above captioned matter.

Dated: August 27, 2019                           Respectfully submitted,

                                                 By: */s/ Robin K. Carlson*
                                                     Timothy J. Feathers (KS Bar No. 13567)
                                                     *Timothy.feathers@stinson.com*
                                                     Robin K. Carlson (KS Bar No. 21625)
                                                     *Robin.carlson@stinson.com*
                                                     Monique M. McElwee (KS Bar No. 25353)
                                                     *Monique.mcelwee@stinson.com*
                                                     **STINSON LLP**
                                                     1201 Walnut Street, Suite 2900
                                                     Kansas City, MO 64106-2150
                                                     Tel.:  816-691-2754
                                                     Fax:  816-412-1134

                                                     Attorneys for Plaintiff
                                                     ASSESSMENT TECHNOLOGIES INSTITUTE,
                                                     L.L.C.

38

# EXHIBIT B



02/10/2020

CHEW, TERRENCE D
THE HANOVER INSURANCE GROUP
ROSEVILLE, CA OFFICE
MAIL STOP 328


RE: CERTIFIED COPY OF THE POLICY


TO:  WHOM IT MAY CONCERN

I am authorized by Citizens/Hanover Insurance Company to certify the
attached copy as a true and correct copy of the company's record on the
policy.


Policy Number:    OB3 D815660 00

Policy Issued To:  CHIEF DIGITAL ADVISORS


Date Span:        01/28/2019 TO 01/28/2020



Please contact certreqwor@hanover.com with any questions.



Sincerely,

*Robin Menezes*

Robin Menezes
Commercial Lines



440 Lincoln Street ■ Worcester, MA 01653   Phone | 508 - 853 - 7200   Fax | 508 - 853 - 6332
The Hanover Insurance Company  |  Citizens Insurance Company of America

w w w . H a n o v e r . c o m

65



# BUSINESSOWNERS DECLARATION
## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

**Agent**

619-574-6220
INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE  DR
SAN DIEGO, CA  92122

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  LIMITED LIAB. CORPORATION

**Mortgagee/Loss Payable:**

**Business of the Named  Insured:**

OFFICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION  SCHEDULE

**Described Premises:**

NO. 001 001    2852 CAMINO SERBAL, CARLSBAD, CA  92009

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | **Loc No**  001 | **Bldg No** 001 | **Loc No** | **Bldg No** | **Loc No** | **Bldg No** |
| **Deductible Amount** | $          1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business Personal Property Valuation** | $          5,000  RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None /  24 hours  / 48 hours / 72 hours**  48 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You, each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual period. Please refer to **SECTION II - LIABILITY, D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 1,000,000 | Per Occurrence | $ 2,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $        5,000 | Each Person | | |
| Damage to Premises Rented to You | $      300,000 | All Perils | | |

Date Issued:  01/29/2019          ORIGINAL/INSURED          Payment Type:  DIRECT BILL



## BUSINESSOWNERS DECLARATION
### BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
| --- | --- | --- | --- | --- |
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA 92009

**Agent**

619-574-6220
INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA 92122

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:** General Liability Broadening Endorsement
**General Liability Class:** 85191
**Description:** CONSULTANTS - BUSINESS/MANAGEMENT
**Liability Exposure:** $24,000      PAYROLL

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

```
TOTAL  BOP  COVERAGE  PREMIUM:                    $500.00
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) $  25.00
     OTHER THAN FIRE FOLLOWING              $  10.00
     FIRE FOLLOWING                         $  15.00
TOTAL UMBRELLA COVERAGE PREMIUM:           NOT COVERED
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) NOT COVERED
DEPOSIT PREMIUM:                            $500
TOTAL POLICY PREMIUM IS:                    $500.00
```

**Countersigned this_____Day of _____**                    _____

**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued: 01/29/2019          ORIGINAL/INSURED          Payment Type: DIRECT BILL

391-1002 0816                                                                    Page 2 of 2



# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

**Agent**

619-574-6220

INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA  92122

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  01/29/2019

ORIGINAL/INSURED



# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA 92009

**Agent**

619-574-6220
INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA 92122

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 01/29/2019

ORIGINAL/INSURED



# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in  the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**

CHIEF DIGITAL  ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

**Agent**

619-574-6220
INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA  92122

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form   391-1018  (7-02)
Date Issued:  01/29/2019

ORIGINAL/INSURED



# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

Named Insured and Address

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

Agent

619-574-6220
INSU OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA  92122

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
| AUTOMATIC FIRE ALARM | | | | NO | | |
| CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $25,000 | N/A | $25,000 |
| TIME-ELEMENT | | | 24 HOURS | $25,000 | N/A | $25,000 |

Form  391-1018A (9-04)
Date Issued:  01/29/2019

ORIGINAL/INSURED



# BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS DECLARATIONS

33

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OB3-D815660-00 | 01/28/2019 | 01/28/2020 | CITIZENS INSURANCE COMPANY OF AMERICA | 100108700 |

**Named Insured and Address**
CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

**Agent**
619-574-6220
INSU OFFICE OF AMERICA  INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO, CA  92122

## Forms and Endorsements  Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1388 | 08/16 | DELUXE GOLD BROADENING |
| 401-1127 | 01/15 | TERRORISM ACCEPTANCE OF  COVG |
| 391-1114 | 01/15 | CAP ON LOSSES FROM  TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE  DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| 391-1902 | 07/17 | CALIFORNIA CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES  EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA  LIAB |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND  ADV |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO  TRIA |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD  COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |
| 391-1862 | 01/15 | CA CHANGES - DATA  BREACH |

Form  391-1016 (7-99

Date Issued:  01/29/2019

ORIGINAL/INSURED



# CYBER DECLARATIONS

<table>
<tr><td>

**CLAIMS-MADE WARNING**

THIS COVERAGE PART INCLUDES COVERAGES WRITTEN ON A CLAIMS-MADE BASIS SUBJECT TO ITS TERMS. CLAIMS-MADE COVERAGE APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.
</td></tr>
</table>

<table>
<tr><td>

**"DEFENSE EXPENSES" WITHIN LIMITS AND DEDUCTIBLE**

THE LIMITS OF LIABILITY WILL BE REDUCED AND CAN BE COMPLETELY EXHAUSTED BY THE PAYMENT OF COVERED "DEFENSE EXPENSES". IN THE EVENT THAT THE LIMIT OF LIABILITY IS EXHAUSTED, THE "INSURER" SHALL NOT BE LIABLE FOR "DEFENSE EXPENSES", JUDGMENTS OR SETTLEMENTS IN EXCESS OF THE APPLICABLE LIMIT. INSURING AGREEMENTS A. AND B. ARE SUBJECT TO DEDUCTIBLE AMOUNTS STATED IN THE DECLARATIONS. AMOUNTS INCURRED FOR "DEFENSE EXPENSES" ARE SUBJECT TO THE APPLICABLE DEDUCTIBLE.
</td></tr>
</table>

| Policy Number | Coverage is provided by: |
|---|---|
| OB3-D815660-00 | CITIZENS INSURANCE COMPANY OF AMERICA |

**Item 1: NAMED INSURED:**

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD, CA  92009

**Item 2. POLICY PERIOD**

Inception Date: 01/28/2019                    Expiration Date: 01/28/2020

(12:01 AM standard time at the address shown in **Item 1.** )

**Item 3. AGGREGATE LIMIT OF LIABILITY FOR THIS COVERAGE PART**

| Maximum Aggregate Limit of Liability | $     25,000 |
|---|---|

391-1802 01 15          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 2

73



| Item 4. INSURING AGREEMENTS | | | |
| --- | --- | --- | --- |
| **Prior and Pending Proceedings Date:** | 12/24/2018 | | |
| **Retroactive Date:** | 12/24/2018 | | |
| | | | |

| Insuring Agreement | Limits of Liability | Deductible | Premium |
| --- | --- | --- | --- |
| **A.**  Privacy and Security Liability | $  25,000 | $  5,000 | $  23 |
| **B.**  Cyber Media Liability | $  25,000 | $  5,000 | $  23 |

| Item 5. PREMIUM FOR COVERAGE PART | $   46 |
| --- | --- |

**Item 6. FORMS OR ENDORSEMENTS ATTACHED AT ISSUE:**

| Form Number | Edition | Name |
| --- | --- | --- |
| 391-1801 | 01/15 | CYBER LIABILITY COVERAGE PART |

**391-1802 01 15**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 2 of 2**

74



OB3 D815660        1001087

# Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

### Collection of Information

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com         .

### Disclosure of Information

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### Safeguards to Protect Your Personal Information

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### Internal Access to Information

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### Consumer Reports

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

### Access to Information

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

**231-0862 12 14**                                                                                  **Page 1 of 2**

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com .

Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

## Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com .

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.



OB3 D815660          1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AVENUES BUSINESSOWNERS DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.   COVERAGES

| A.   Scheduled Coverages | Limit | Page |
|---|---|---|
| 1.   Advertising Expense to Regain Customers | $2,500 | 3 |
| 2.   Backup or Overflow of a Sewer, Drain or Sump | Included | 3 |
| 3.   Brands and Labels | Included | 3 |
| 4.   Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| 5.   Business Income and Extra Expense - Dependent Properties | $100,000 | 4 |
| 6.   Transit Business Income and Extra Expense | $50,000 | 4 |
| 7.   Business Income from Websites | $50,000 / 7 days | 5 |
| 8.   Computer and Funds Transfer Fraud | $10,000 | 5 |
| 9.   Consequential Loss to Stock | Included | 5 |
| 10. Contract Penalties | $25,000 | 5 |
| 11. Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 5 |
| 12. Electronic Vandalism | $25,000 | 6 |
| 13. Employee Theft Including ERISA Compliance | $25,000 | 6 |
| 14. Expediting Expenses | $25,000 | 6 |
| 15. Extended Business Income | 90 days | 6 |

391-1388 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 17

77

| | | |
|---|---|---|
| **16.** Fine Arts | $50,000 | 7 |
| **17.** Fire Protection Equipment Recharge | Included | 7 |
| **18.** Forgery or Alteration | $50,000 | 7 |
| **19.** Hired Auto - Physical Damage | $50,000 | 7 |
| **20.** International Air Shipments | $10,000 | 8 |
| **21.** Interruption of Computer Operations | $25,000 | 8 |
| **22.** Inventory and Loss Appraisal | $25,000 | 9 |
| **23.** Key Replacement and Lock Repair | $2,500 | 9 |
| **24.** Lessor's Lease Cancellation | $10,000 | 9 |
| **25.** Lessor's Tenant Move Expenses | $10,000 / 60 days | 9 |
| **26.** Marring and Scratching | Included | 10 |
| **27.** Money and Securities | $10,000 | 10 |
| **28.** Money Orders and Counterfeit Money | $25,000 | 10 |
| **29.** Newly Acquired or Constructed Property - Business Income and Extra Expense | $500,000 | 10 |
| **30.** Ordinance or Law - Demolition and Increased Cost of Construction | $25,000 | 10 |
| **31.** Ordinance or Law - Increased Period of Restoration | $10,000 | 10 |
| **32.** Ordinance or Law (Tenant's Improvement Extension) | $25,000 | 11 |
| **33.** Outdoor Property | $25,000 | 11 |
| **34.** Personal Effects | $50,000 | 11 |
| **35.** Portable Electronic Devices Coverage Worldwide | $25,000 | 11 |
| **36.** Precious Metal Theft Payment Changes | $25,000 | 12 |
| **37.** Preservation of Property - Expense | $25,000 | 12 |
| **38.** Personal Property in Transit | $50,000 | 13 |
| **39.** Personal Property of Others - Replacement Cost Provision | Included | 13 |
| **40.** Sales Representative Samples | $25,000 | 13 |
| **41.** Soft Costs | $10,000 | 13 |
| **42.** Spoilage | $25,000 | 13 |
| **43.** Temporary Relocation of Property | $50,000 | 14 |
| **44.** Tenant Signs | $20,000 | 15 |
| **45.** Unauthorized Business Credit Card Use | $10,000 | 15 |
| **46.** Underground Water Seepage | $100,000 | 15 |
| **47.** Utility Services - Direct Damage<br>Utility Services - Business Income | $25,000<br>$25,000 | 16 |
| **48.** Worldwide Property Off Premises | $50,000 | 16 |

| **B.** **Blanket Coverages** | **Limit $250,000** | **Page** |
|---|---|---|
| **1.** Accounts Receivable | Included | 16 |
| **2.** Computer Equipment | Included | 16 |
| **3.** Debris Removal | Included | 17 |
| **4.** Property of Others | Included | 17 |
| **5.** Valuable Papers and Records (Other Than Electronic Data) | Included | 17 |

The Hanover Insurance Group™

OB3 D815660      1001087

The Blanket Limit of Insurance shown above applies to all Coverages shown in paragraph **B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II.  DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III.  COVERED PROPERTY

### A.  Scheduled Coverages

**1.  Advertising Expense to Regain Customers**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising Expense to Regain Customers**

**(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

**(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

**(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

**2.  Backup or Overflow of a Sewer, Drain or Sump**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Backup or Overflow of a Sewer, Drain or Sump**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related

equipment. The term drain includes a roof drain and its related fixtures.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

**(3)** Payment under this Additional Coverage is included within the applicable Limit of Insurance for Covered Property at a premises described in the Declarations. This Additional Coverage does not increase the Limits of Insurance.

**(4)  Special Sewer Backup Exclusion**

We will not pay for:

**(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

**(b)** Failure to keep a sump pump or its related equipment in proper working condition; or

**(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**3.  Brands and Labels**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

**(a)** Pay expenses you incur to:

**(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

**(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

**(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

**4. Contingent Transit Business Income and Extra Expense**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties**

The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "period of restoration" for the "dependent property" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.

**6. Transit Business Income and Extra Expense**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Transit Business Income and Extra Expense**

**(1)** We will pay the actual loss of Business Income you sustain and necessary and reasonable Extra Expense you incur caused by direct physical loss of or direct physical damage to Covered Property while "in transit" caused by or resulting from a Covered Cause of Loss.

**(2)** **SECTION I - PROPERTY, B. Exclusions,** paragraphs **1.b Earth Movement** and **1.g Water** do not apply to this Additional Coverage:

**(3)** The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.



OB3 D815660       1001087

**7. Business Income from Websites**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**8. Computer and Funds Transfer Fraud**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**9. Consequential Loss to Stock**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage by a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

**10. Contract Penalties**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**11. Denial of Access to Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

391-1388 08 16       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 5 of 17

81

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

   **(a)** 30 consecutive days after coverage begins; or

   **(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

**12. Electronic Vandalism**

**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**13. Employee Theft including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA,** paragraph **(6)**, is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $25,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**14. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

   **(a)** Make temporary repairs;

   **(b)** Expedite permanent repair or replacement of damaged property; or

   **(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**15. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value,** paragraph **(ii)** and **(b) Extended Business Income - Rental**

391-1388 08 16    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 6 of 17

82

The **Hanover** Insurance Group.

OB3 D815660      1001087

**Value,** paragraph **(ii)** are replaced by the following:

**(a) Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 90 consecutive days after the date determined in **(2)(a)(i)** above.

**(b) Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 90 consecutive days after the date determined in **(2)(b)(i)** above.

**16. Fine Arts**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. Fine Arts**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**17. Fire Protection Equipment Recharge**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. Fire Protection Equipment Recharge**, paragraph **(3)** is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**18. Forgery or Alteration**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or**

**Alteration**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**19. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a) Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b) Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for

391-1388 08 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 7 of 17

83

use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a) 1.d. Nuclear Hazard**;

**(b) 1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles, paragraph 5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**20. International Air Shipments**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**International Air Shipments**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others that you ship to apply to that property; while being shipped by air:

**(a)** Anywhere within the Coverage Territory to or from a location outside of the coverage territory; or

**(b)** Between locations outside of the coverage territory;

**(2)** This coverage extension only applies to the shipment of your property which originates and terminates at a location specified in the air waybill.

**(3)** The most we will pay for loss or damage under this Extension in any one occurrence is $10,000.

**(4) Special International Air Shipments Exclusion**

This Extension does not apply to:

Business Personal Property if there is other insurance in force covering the same loss.

**21. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:



OB3 D815660        1001087

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $25,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**22. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $25,000.

**23. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $2,500. The Deductible does not apply to this Extension.

**24. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5) Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**25. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

391-1388 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 9 of 17

85

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**26. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Property "in transit".

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**27. Money and Securities**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities**, paragraph **(5)(b)** is replaced by the following:

**(b)** $10,000 or the amount shown in the Additional Property Coverage Schedule Outside the Premises for "money" and "securities" while at any other location listed in **(1)** above and while in the coverage territory.

**28. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**29. Newly Acquired or Constructed Property - Business Income and Extra Expense**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraph **(3) Business Income and Extra Expense** is replaced by the following:

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premises.

**30. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $25,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each building, is $25,000, or the amount shown in the Additional Property Coverage Schedule.

**31. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5.**

391-1388 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 10 of 17

86



OB3 D815660        1001087

**Additional Coverages, I. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment,** paragraph **(c):**

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $10,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $10,000.

**32. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law,** paragraph **(4) Coverage:**

**(1)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a Limit of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(2)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment,** paragraph **(c):**

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $25,000.

**33. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property,** paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $1,000 for any one tree, shrub or plant.

**34. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**35. Portable Electronic Devices Coverage Worldwide**

391-1388 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 11 of 17

87

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your or your "employees'" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

**(b)** The following are not included under this Additional Coverage:

**(i)** Continuing normal operating expenses incurred, including "payroll expense";

**(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**36. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones. This limit does not apply to jewelry and watches worth $250 or less per item.

**(3)** $25,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**37. Preservation of Property - Expense**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Preservation of Property - Expense**

**(1)** If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay your expenses to move or store the Covered Property.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**The Hanover Insurance Group.**

OB3 D815660      1001087

**(3)** The most we will pay under this Additional Coverage is $25,000.

This Additional Coverage is an additional amount of insurance.

**38. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit,** paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**39. Personal Property of Others - Replacement Cost Provision**

**SECTION I - PROPERTY, E. Property Loss Conditions 5. Loss Payment,** paragraph **d.(3)(b)** is deleted.

**40. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**41. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**:

**Soft Costs**

**(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that is listed in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property,** paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction

has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**42. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Spoilage**

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property:**

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered:**

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3. Covered Causes of Loss**

Subject to the exclusions described in item **E.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of

391-1388 08 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 13 of 17**

refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

**e.** **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

**(1)** **b.,** Earth Movement;

**(2)** **c.,** Governmental Action;

**(3)** **d.,** Nuclear Hazard;

**(4)** **f.,** War and Military Action; and

**(5)** **g.,** Water.

**(6)** For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2:**

We will not pay for loss or damage caused by or resulting from:

**a.** The disconnection of any refrigerating, cooling or

humidity control system from the source of power.

**b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**c.** The inability of an electrical utility company or other power source to provide sufficient power due to:

**(1)** Lack of fuel; or

**(2)** Governmental order.

**d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**f.** **Conditions**

For purposes of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.** is replaced by the following:

**d.** We will determine the value of Covered Property as follows:

**(1)** For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

**(2)** For other "perishable goods", at actual cash value.

**g.** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**43.** **Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Temporary Relocation of Property**

**(1)** We will pay for loss of or damage to Covered Property from a Covered

90



OB3 D815660        1001087

Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**(3)** The most we will pay under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**44. Tenant Signs**

**SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for loss or damage in any one occurrence is $20,000 regardless of the number of locations or buildings involved.

**45. Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss including legal expenses, under this Additional Coverage is $10,000 per occurrence.

**46. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floor or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings in any building or other structure.

**THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

**(2)** **SECTION I - PROPERTY, B. Exclusions**, paragraphs **g. Water (4)** is deleted.

**(3)** The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

**(4)** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

**(a)** Each building, including personal property therein;

**(b)** Personal property in each building if no coverage is provided on the containing building; and

**(c)** Personal property in the open.

The aggregate amount of this deductible in any one occurrence shall not exceed $5,000.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

**(5)** **Special Underground Water Seepage Exclusions**

**(a)** The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

**(b)** To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this

Additional Coverage, that part of the **Water** Exclusion does not apply.

**(c)** This Additional Coverage does not apply to loss or damage resulting from your failure to:

**(i)** Keep a sump pump or its related equipment in proper working condition; or

**(ii)** Perform the routine maintenance or repair necessary to keep asewer or drain free from obstructions.

**47. Utility Services**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $25,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $25,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**48.     Worldwide Property Off  Premises**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 6. Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.

**B. Blanket Coverages**

**1. Accounts Receivable**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

**2. Computer Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

**(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or



OB3 D815660          1001087

the amount shown in the Additional Property Coverage Schedule.

The most we will pay for property listed in paragraphs **(1)** and **(2)** above in any one occurrence for such property that you newly acquire is $100,000.

With respect to newly acquired property under this Additional Coverage, coverage will end when any of the following occurs:

**(a)** The policy expires;

**(b)** 180 days after you acquire the property listed in **(1)(a - d);**

**(c)** You report values to us.

The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**3.** **Debris Removal**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4)**, is replaced by the following:

**(1)** We will pay up to the blanket limit of insurance for debris removal expense, for each insured location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

**4.** **Property of Others**

**(a)** You may extend the Blanket Coverage Limit of Insurance to apply to property of others that is in your care, custody or control, including the cost of labor, materials or services furnished or arranged by you on personal property of others.

**(b)** The most we will pay under this provision is subject to the Blanket Coverage Limit of Insurance.

**5.** **Valuable Papers and Records (Other Than Electronic Data)**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable Papers and Records (Other Than Electronic Data)**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of locations Involved the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN  UNCHANGED

391-1388 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 17 of 17

93



OB3 D815660     1001087

THIS NOTICE IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT, AS AMENDED. THIS  NOTICE DOES  NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS  OF THE POLICY SHALL APPLY.

## NOTICE - ACCEPTANCE OF TERRORISM COVERAGE AND DISCLOSURE OF PREMIUM

### Schedule

| Disclosure of Premium: | |
| --- | --- |
| Total Terrorism Premium | $  25.00 |
| Fire Following Premium | $  15.00 |
| Other than Fire Following Premium | $  10.00 |

Coverage for "acts of terrorism," as defined in Section 102(1) of the Terrorism Risk Insurance Act ("Act") is included in your policy. You are hereby notified that under the Act, as amended in 2015, the definition of "act of terrorism" is:

> Any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General  of the  United  States, to be an  act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or  outside the  United States in the case of certain air carriers or vessels or the premises  of a  United  States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or  affect  the conduct of the United States government by  coercion.

**Disclosure of Federal Participation in Payment of Terrorism  Losses**

The United States government through the Department of the Treasury may pay a share of terrorism losses insured under the federal program under a formula set forth  in  the  Act.  Under  this  formula,  the United States government generally reimburses the following percentage of covered terrorism loss which exceeds the statutorily established deductible paid by the insurance company providing the coverage: 85%  through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1,  2020.

**Cap on Insurer Participation in Payment of Terrorism  Losses**

The Act contains a $100 billion cap that limits the reimbursement by the United States government as well as insurers' liability for losses resulting from certified acts of terrorism. If the aggregate of insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance  Act  exceed  $100 billion in  a calendar year and we have  met our  insurer  deductible under the Act, we  will  not be liable for  the  payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**401-1127 01 15**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 1 of 1**

94



OB3 D815660        1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**391-1114 01 15**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 1 of 1**

95

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability** paragraph **B. Exclusions** of the Businessowners Coverage Form **391-1003:**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS LIABILITY SPECIAL BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

| SUMMARY OF COVERAGES | Limits | Page |
|---|---|---|
| 1.   Additional Insured by Contract, Agreement or  Permit | Included | 1 |
| 2.   Additional Insured - Broad Form  Vendors | Included | 2 |
| 3.   Alienated Premises | Included | 3 |
| 4. Broad Form Property Damage - Borrowed Equipment,  Customers Goods and Use of  Elevators | Included | 3 |
| 5.   Incidental Malpractice (Employed Nurses, EMT's and  Paramedics) | Included | 3 |
| 6.   Personal and Advertising Injury - Broad  Form | Included | 4 |
| 7.   Product Recall Expense | Included | 4 |
| Product Recall Expense Each Occurrence  Limit | $25,000 Occurrence | 5 |
| Product Recall Expense Aggregate  Limit | $50,000 Aggregate | 5 |
| Product Recall  Deductible | $500 | 5 |
| 8.   Unintentional Failure to Disclose Hazards | Included | 6 |
| 9.   Unintentional Failure to Notify | Included | 6 |

This endorsement amends coverages provided under the Businessowners Coverage Form through new coverages and broader coverage grants. This coverage is subject to the provisions applicable to the Businessowners Coverage Form, except as provided  below.

The following changes are made to **SECTION II - LIABILITY:**

1. **Additional Insured by Contract, Agreement or Permit**

   The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

   **Additional Insured by Contract, Agreement or Permit**

   a.   Any person or organization with whom you agreed in a written contract, written agreement or permit to add such person or organization as an additional insured on your policy is an additional insured only with respect to liability for "bodily      injury", "property damage", or "personal and advertising injury" caused, in whole or  in part, by your acts or omissions, or the acts or omissions of those acting on your behalf, but only with respect to:

   (1)   "Your work" for the additional insured(s) designated in the contract, agreement or permit;

   (2)   Premises you own, rent,   lease   or occupy; or

   (3)   Your maintenance, operation or use of equipment leased to you.

   b.   The insurance afforded to such additional insured described above:

   (1)   Only applies to the extent permitted by law; and

   (2)   Will not be broader than the insurance which you are required by the contract, agreement or permit to provide for such additional insured.

   (3)   Applies on a primary basis if that is required by the written contract, written agreement or permit.

   (4)   Will not be broader than coverage provided to any other insured.

   (5)   Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto.



**c.** This provision does not apply:

**(1)** Unless the written contract or written agreement was executed or permit was issued prior to the "bodily injury", "property damage", or "personal injury and advertising injury".

**(2)** To any person or organization included as an additional insured by another endorsement issued by us and made part of this Coverage Part.

**(3)** To any lessor of equipment:

**(a)** After the equipment lease expires; or

**(b)** If the "bodily injury", "property damage", "personal and advertising injury" arises out of sole negligence of the lessor.

**(4)** To any:

**(a)** Owners or other interests from whom land has been leased if the "occurrence" takes place or the offense is committed after the lease for the land expires; or

**(b)** Managers or lessors of premises if:

**(i)** The "occurrence" takes place or the offense is committed after you cease to be a tenant in that premises; or

**(ii)** The "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

**(5)** To "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the rendering of or failure to render any professional services by or for you.

**d.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance** :

The most we will pay on behalf of the additional insured for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract, agreement or permit described in Paragraph **a.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations

**e.** All other insuring agreements, exclusions, and conditions of the policy apply.

**2.** **Additional Insured - Broad Form Vendors**

The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

**Additional Insured - Broad Form Vendors**

**a.** Any person or organization that is a vendor with whom you agreed in a written contract or written agreement to include as an additional insured under this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

**b.** The insurance afforded to such vendor described above:

**(1)** Only applies to the extent permitted by law;

**(2)** Will not be broader than the insurance which you are required by the contract or agreement to provide for such vendor;

**(3)** Will not be broader than coverage provided to any other insured; and

**(4)** Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto

**c.** With respect to insurance afforded to such vendors, the following additional exclusions apply:

The insurance afforded to the vendor does not apply to:

**(1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(2)** Any express warranty unauthorized by you;

391-1006 08 16          Includes copyrighted materials of Insurance Services Offices, Inc., with its permission.          Page 2 of 6

98

**(3)** Any physical or chemical change in the product made intentionally by the vendor;

**(4)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

**(5)** Any failure to make such inspection, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

**(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

**(8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

  **(a)** The exceptions contained within the exclusion in subparagraphs **(4)** or **(6)** above; or

  **(b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(9)** "Bodily injury" or "property damage" arising out of an "occurrence" that took place before you have signed the contract or agreement with the vendor.

**(10)** To any person or organization included as an insured by another endorsement issued by us and made part of this Coverage Part.

**(11)** Any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**d.** With respect to the insurance afforded to these vendors, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance**:

The most we will pay on behalf of the vendor for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract or agreement described in Paragraph **a.;** or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**3. Alienated Premises**

**SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage k. Damage to Property,** paragraph **(2)** is replaced by the following:

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises and occurred from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

**4. Broad Form Property Damage - Borrowed Equipment, Customers Goods, Use of Elevators**

**a.** The following is added to **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage, k. Damage to Property**:

Paragraph **(4)** does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

Paragraph **(3), (4)** and **(6)** do not apply to "property damage" to "customers goods" while on your premises nor to the use of elevators.

**b.** For the purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**1.** "Customers goods" means property of your customer on your premises for the purpose of being:

  **a.** Worked on; or

  **b.** Used in your manufacturing process.

**c.** The insurance afforded under this provision is excess over any other valid and collectible property insurance (including deductible) available to the insured whether primary, excess, contingent or on any other basis.

**5. Incidental Malpractice - Employed Nurses, EMT's and Paramedics**

**SECTION II - LIABILITY, C. Who Is An Insured,** paragraph **2.a.(1)(d)** does not apply to a nurse,

391-1006 08 16          Includes copyrighted materials of Insurance Services Offices, Inc., with its permission.          Page 3 of 6

99



OB3 D815660      1001087

emergency medical technician or paramedic employed by you if you are not engaged in the business or occupation of providing medical, paramedical, surgical, dental, x-ray or nursing services.

6. **Personal Injury - Broad Form**

   **a.** **SECTION II - LIABILITY, B. Exclusions, 2. Additional Exclusions Applicable only to "Personal and Advertising Injury",** paragraph **e.** is deleted.

   **b.** **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions, 14.** "Personal and advertising injury", paragraph **b.** is replaced by the following:

   **b.** Malicious prosecution or abuse of process.

   **c.** The following is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions,** Definition **14.** "Personal and advertising injury":

   "Discrimination" (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such "discrimination" is:

   **(1)** Not done intentionally by or at the direction of:

   **(a)** The insured;

   **(b)** Any officer of the corporation, director, stockholder, partner or member of the insured; and

   **(2)** Not directly or indirectly related to an "employee", not to the employment, prospective employment or termination of any person or persons by an insured.

   **d.** For purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

   **1.** "Discrimination" means the unlawful treatment of individuals based upon race, color, ethnic origin, gender, religion, age, or sexual preference. "Discrimination" does not include the unlawful treatment of individuals based upon developmental, physical, cognitive, mental, sensory or emotional impairment or any combination of these.

   **e.** This coverage does not apply if liability coverage for "personal and advertising injury" is excluded either by the provisions of the Coverage Form or any endorsement thereto.

7. **Product Recall Expense**

   **a.** **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage,**

**o. Recall of Products, Work or Impaired Property** is replaced by the following:

   **o. Recall of Products, Work or Impaired Property**

   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   **(1)** "Your product";

   **(2)** "Your work"; or

   **(3)** "Impaired property";

   If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, but this exclusion does not apply to "product recall expenses" that you incur for the "covered recall" of "your product".

   However, the exception to the exclusion does not apply to "product recall expenses" resulting from:

   **(4)** Failure of any products to accomplish their intended purpose;

   **(5)** Breach of warranties of fitness, quality, durability or performance;

   **(6)** Loss of customer approval, or any cost incurred to regain customer approval;

   **(7)** Redistribution or replacement of "your product" which has been recalled by like products or substitutes;

   **(8)** Caprice or whim of the insured;

   **(9)** A condition likely to cause loss of which any insured knew or had reason to know at the inception of this insurance;

   **(10)** Asbestos, including loss, damage or clean up resulting from asbestos or asbestos containing materials; or

   **(11)** Recall of "your products" that have no known or suspected defect solely because a known or suspected defect in another of "your products" has been found.

   **b.** The following is added to **SECTION II - LIABILITY, C. Who Is An Insured,** paragraph **3.b.:**

   "Product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.

**c.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance**:

**Product Recall Expense Limits of Insurance**

**a.** The Limits of Insurance shown in the SUMMARY OF COVERAGES of this endorsement and the rules stated below fix the most that we will pay under this Product Recall Expense Coverage regardless of the number of:

   **(1)** Insureds;

   **(2)** "Covered Recalls" initiated; or

   **(3)** Number of "your products" withdrawn**.**

**b.** The Product Recall Expense Aggregate Limit is the most that we will reimburse you for the sum of all "product recall expenses" incurred for all "covered recalls" initiated during the policy period.

**c.** The Product Recall Each Occurrence Limit is the most we will pay in connection with any one defect or deficiency.

**d.** All "product recall expenses" in connection with substantially the same general harmful condition will be deemed to arise out of the same defect or deficiency and considered one "occurrence".

**e.** Any amount reimbursed for "product recall expenses" in connection with any one "occurrence" will reduce the amount of the Product Recall Expense Aggregate Limit available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**f.** If the Product Recall Expense Aggregate Limit has been reduced by reimbursement of "product recall expenses" to an amount that is less than the Product Recall Expense Each Occurrence Limit, the remaining Aggregate Limit is the most that will be available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**g. Product Recall Deductible**

   We will only pay for the amount of "product recall expenses" which are in excess of the $500 Product Recall Deductible. The Product Recall Deductible applies separately to each "covered recall". The limits of insurance will not be reduced by the amount of this deductible.

   We may, or will if required by law, pay all or any part of any deductible amount, if applicable.  Upon notice of our payment of a deductible amount, you  shall promptly reimburse us for the part of the deductible amount we paid.

The Product Recall Expense Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purposes of determining the Limits of Insurance.

**d.** The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expense General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit**:

You must see to it that the following  are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

**(1)** Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled. Include a description of "your product" and the reason for the withdrawal or recall;

**(2)** Cease any further release, shipment, consignment or any other method of distribution of like or similar products until it has been determined that  all such products are free from defects that could be a cause of loss under this insurance.

**e.** For the purpose of this endorsement, the following definitions are added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions**:

**1.** "Covered recall" means a recall made necessary because you or a government body has determined that a known or suspected defect, deficiency, inadequacy, or dangerous condition in "your product" has resulted or will result in "bodily injury" or "property damage".

**2.** "Product recall expense(s)" means:

   **a.** Necessary and reasonable expenses for:

     **(1)** Communications, including radio or television announcements or printed advertisements including stationary, envelopes and postage;

**The Hanover**
**Insurance Group**

OB3 D815660        1001087

**(2)** Shipping the recalled products from any purchaser, distributor or user to the place or places designated by you;

**(3)** Remuneration paid to your regular "employees" for necessary overtime;

**(4)** Hiring additional persons, other than your regular "employees";

**(5)** Expenses incurred by "employees" including transportation and accommodations;

**(6)** Expenses to rent additional warehouse or storage space;

**(7)** Disposal of "your product", but only to the extent that specific methods of destruction other than those employed for trash discarding or disposal are required to avoid "bodily injury" or "property damage" as a result of such disposal,

you incur exclusively for the purpose of recalling "your product"; and

**b.** Your lost profit resulting from such "covered recall".

**f.** This Product Recall Expense Coverage does not apply:

**(1)** If the "products - completed operations hazard" is excluded from coverage under this Coverage Part including any endorsement thereto; or

**(2)** To "product recall expense" arising out of any of "your products" that are otherwise excluded from coverage under this Coverage Part including endorsements thereto.

**8.    Unintentional Failure to Disclose Hazards**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions:**

**Representations**

We will not disclaim coverage under this Coverage Part if you fail to disclose all hazards existing as of the inception date of the policy provided such failure is not intentional.

**9.    Unintentional Failure to Notify**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit:**

Your rights afforded under this Coverage Part shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**391-1006 08 16**        Includes copyrighted materials of Insurance Services Offices, Inc., with its permission.        **Page 6 of 6**

102



OB3 D815660        1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## A. SECTION I - PROPERTY

1. With respect to an "open policy", the following is added to any provision which uses the term actual cash value:

   **a.** In the event of a total loss to a building or structure, actual cash value is calculated as the Limit of Insurance applicable to that building or structure or the fair market value of the building or structure, whichever is less.

   **b.** In the event of a partial loss to a building or structure, actual cash value is calculated as **b.(1)** or **b.(2)**, whichever is less:

      **(1)** The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation of the components of the building or structure that are normally subjected to repair or replacement during its useful life. Physical depreciation is based upon the condition of the property at the time of loss;

      **(2)** The Limit of Insurance applicable to the property.

   **c.** In the event of a partial or total loss to Covered Property other than a building or structure, actual cash value is calculated as **c.(1)** or **c.(2)**, whichever is less:

      **(1)** The amount it would cost to repair or replace the property less a fair and reasonable deduction for physical depreciation, based on the condition of the property at the time of loss;

      **(2)** The Limit of Insurance applicable to the property.

   **d.** An "open policy" is a policy under which the value of Covered Property is not fixed at policy inception, but is determined at the time of loss in accordance with policy provisions on valuation.

2. **SECTION I - PROPERTY, E. Property Loss Conditions, 2. Appraisal** is replaced by the following:

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written request for an appraisal of the loss. If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(1)(a)** is deleted.

4. **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(1)(b)** and **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(5)** are replaced by the following:

   **(b)** We will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced. Prior to such repair or replacement, we will pay the actual cash value of the lost or damaged property as described in paragraph **A.1.** of this Endorsement. If the actual cash value does not exhaust the applicable Limit of Insurance, we will then pay the difference between the actual cash value and the replacement cost, provided that the repair or replacement is completed:

**(i)** Within 12 months after we pay the actual cash value; or

**(ii)** Within 24 months after we pay the actual cash value if the loss or damage relates to a state of emergency as described in Section 8558 of the Government Code;

unless we extend the time period for good cause.

Nothing in this Paragraph **(d)** constitutes a waiver of our right to deny the claim for any valid reason or to restrict payment in cases of suspected fraud.

**(5)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost in accordance with the terms set forth in Paragraph **(d)** above.

**(b)** A proportion of your original cost if the property is not repaired or replaced. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(d)** Nothing if you have no lease.

**B. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**1. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation,** paragraphs **2.** and **3.** are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this Policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this Policy by mailing or delivering to the first Named Insured at the mailing address shown in the Policy

and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this Policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this Policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this Policy only upon the occurrence, after the effective date of the Policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this Policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

Includes copyrighted materials of Insurance Services Office, Inc. with its permission.
Copyright 2016 The Hanover Insurance Group, Inc. All Rights Reserved.

The Hanover Insurance Group™

OB3 D815660    1001087

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the Policy.

**b.** We will mail or deliver advance written notice of cancellation stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the Policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**2.** The following provision is added to **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation:**

**Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit. If such coverage has been in effect for 60 days or less and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except that we may not cancel this Policy solely because:

**a.** Corrosive soil conditions exist on the premises; or

**b.** The first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this Policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**3.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), C. Concealment, Misrepresentation Or Fraud** is replaced by the following with respect to loss or damage caused by fire:

**C. Concealment, Misrepresentation or Fraud**

We do not provide coverage to the insured who, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Policy;

**2.** The Covered Property;

**3.** That insured's interest in the Covered Property; or

**4.** A claim under this Policy.

**4.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), C. Concealment, Misrepresentation Or Fraud** is replaced by the following with respect to loss or damage caused by a Covered Cause of Loss other than fire:

**C. Concealment, Misrepresentation or Fraud**

This Policy is void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Policy;

**2.** The Covered Property;

**3.** An insured's interest in the Covered Property; or

**4.** A claim under this Policy.

**5. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), H. Other Insurance, 1. SECTION I - PROPERTY** is replaced by the following:

**1. SECTION I - PROPERTY**

If there is other insurance covering the same loss or damage, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance bears to the Limits of Insurance of all insurance covering on the same basis.

We will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY**.

**6.** The following is added to **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY):**

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **2.** and **3.** below, if we elect not to renew this Policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the Policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit.

We may elect not to renew such coverage for any reason, except that we will not refuse to renew such coverage solely because:

**a.** The first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this Policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**b.** The first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake

The Hanover Insurance Group™

OB3 D815660        1001087

Authority that included an earthquake policy premium surcharge.

**c.** Corrosive soil conditions exist on the premises.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the Policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the Policy, to obtain that coverage.

**d.** If the Policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the Policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **1.**, to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

Includes copyrighted materials of Insurance Services Office, Inc. with its permission.
Copyright 2016 The Hanover Insurance Group, Inc. All Rights Reserved.

THIS ENDORSMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or  alleged:

1. Inhaling, ingesting or prolonged physical exposure by any person to asbestos or asbestos fibers or goods or products containing  asbestos;

2. Use of asbestos in constructing or manufacturing any good, product or  structure;

3. Intentional or accidental removal including encapsulation, dispersal, sealing or disposal of asbestos or asbestos fibers from any good, product or structure;

4. Manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5. Product manufactured, sold, handled or distributed by or on behalf of the insured which contain asbestos; or

6. Acts or omissions of the insured in connection with the general supervision of any job involving the removal, enclosure, encapsulation, dispersal, sealing or disposal of asbestos, asbestos fibers or products containing  asbestos.

General supervision includes the rendering of or failure to render any  instructions, recommendations, warnings or  advice.

Includes copyrighted material of Insurance Services Office, Inc.  1997,2001



OB3 D815660      1001087

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions - Applicable To Business Liability Coverage** in **Section II - Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

        Copyright, Insurance Services Office, Inc., 2009



OB3 D815660        1001087

# NOTICE

If a claim is filed on the insured property, information on the claim may be given to the Property Insurance Loss Register (PILR) for use by insurance companies in investigating that claim as well as other claims for loss on the property. Information which may be given to PILR includes name, age and sex, current and previous addresses, loss location, insurance policy information, cause of loss, type of property, and identification of others who have an interest in the property or who are  involved in the  claimed loss.   Such information may be  collected by an insurer or an adjuster from you, your spouse, others who have an interest in the property, those who are involved in the claimed loss, and fire department personnel. Information on you may be given by PILR to insurance companies which subscribe to its services. On request, PILR will tell you whether it has information on you, will let you see and copy such information (in person or by mail), and will give you the nature and substance of such information by telephone. PILR may charge a reasonable fee for copies of information provided. If you think information on you is incomplete or inaccurate, you may request PILR to make corrections. PILR will then investigate and: (1) give your correction to subscribers who previously received such information; or (2) inform you that it refuses to make your correction and give you its reasons. If PILR refuses to make your correction, you can have a statement of the reasons for your disagreement placed in PILR; and all subscribers who received or will receive information on you will also receive a copy of the statement. Information on your claim will normally be stored by PILR for five   years.

Inquiries to PILR should be  addressed:

Property Insurance Loss  Register
700 New Brunswick  Avenue
Rahway, New Jersey  07065

231-0475 (6-89)



OB3 D815660      1001087

# BUSINESSOWNERS COVERAGE FORM

## Table of Contents

**SECTION I - PROPERTY**                                                            **Page Number**

**A. Coverage** ................................................................................................................... 4

  **1. Covered Property** ................................................................................... 4

  **2. Property Not Covered** ............................................................................ 5

  **3. Covered Causes of Loss** ...................................................................... 6

  **4. Limitations** ............................................................................................. 6

  **5. Additional Coverages** ........................................................................... 7

    Business Income ........................................................................................ 10

    Business Income from Dependent Properties............................................. 17

    Civil Authority ............................................................................................. 13

    Collapse ...................................................................................................... 8

    Commercial Tools and Small Equipment...................................................... 27

    Computer Equipment.................................................................................... 20

    Computer and Funds Transfer Fraud........................................................... 34

    Debris Removal .......................................................................................... 7

    Deferred Payments...................................................................................... 31

    Electronic Vandalism................................................................................... 31

    Employee Theft including ERISA Compliance............................................. 18

    Equipment Breakdown................................................................................. 22

    Extra Expense............................................................................................. 12

    Fine Arts...................................................................................................... 28

    Fire Department Service Charge.................................................................. 8

    Fire Protection Equipment Recharge........................................................... 18

    Forgery or Alteration................................................................................... 13

    Glass Expenses.......................................................................................... 18

    Installation................................................................................................... 27

    Interruption of Computer Operations........................................................... 32

    Leasehold Interest (Tenants only)............................................................... 29

    Limited Coverage for Fungi, Wet Rot, or Dry Rot........................................ 33

    Money and Securities.................................................................................. 21

    Money Orders and Counterfeit Money.......................................................... 13

    Ordinance or Law........................................................................................ 14

    Preservation of Property.............................................................................. 8

    Pollutant Clean-Up and Removal................................................................ 12

    Rewards - Arson, Theft and Vandalism........................................................ 20

    Sales Representative Samples..................................................................... 29

    Tenant Building Insurance - When Your Lease Requires You to Provide Insurance.................... 34

    Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance. 34

    Tenant Signs (Tenants Only)........................................................................ 22

    Theft of Telephonic Services........................................................................ 34

    Unauthorized Business Credit Card Use....................................................... 30

    Utility Services ............................................................................................ 30

    Water Damage, Other Liquids, Powder or Molten Material Damage........................ 10

**391-1003 08 16**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 81**

111

6. Coverage Extensions................................................................................................... 35
    Accounts Receivable............................................................................................ 37
    Business Personal Property Temporarily in Portable Storage Units........................... 39
    Appurtenant Structures....................................................................................... 38
    Inventory and Loss Appraisal............................................................................... 39
    Key Replacement and Lock Repair......................................................................... 38
    Newly Acquired or Constructed Property................................................................ 35
    Outdoor Property............................................................................................... 36
    Paved Surfaces................................................................................................. 39
    Personal Effects................................................................................................ 36
    Personal Property Off Premises............................................................................ 36
    Personal Property In Transit................................................................................ 38
    Valuable Papers and Records (Other Than Electronic Data)...................................... 36
    Underground Pipes............................................................................................ 40
B. Exclusions...................................................................................................................... 40
C. Limits of Insurance......................................................................................................... 45
D. Deductibles................................................................................................................... 46
E. Property Loss Conditions................................................................................................. 47
    1. Abandonment............................................................................................... 47
    2. Appraisal.................................................................................................... 47
    3. Duties in the Event of Loss or Damage............................................................. 47
    4. Legal Action Against Us................................................................................. 48
    5. Loss Payment.............................................................................................. 48
    6. Recovered Property....................................................................................... 50
    7. Vacancy..................................................................................................... 50
    8. Pair, Sets or Parts....................................................................................... 51
F. Property General Conditions............................................................................................. 51
    1. Control of Property....................................................................................... 51
    2. Mortgageholders.......................................................................................... 51
    3. No Benefit to Bailee...................................................................................... 52
    4. Policy Period, Coverage Territory..................................................................... 52
    5. Protective Devices........................................................................................ 52
    6. Increase in Hazard........................................................................................ 52
G. Property Definitions........................................................................................................ 52

SECTION II - LIABILITY
A. Coverages..................................................................................................................... 59
    1. Business Liability.......................................................................................... 59
    2. Medical Expenses......................................................................................... 61
B. Exclusions..................................................................................................................... 62
    1. Applicable to Business Liability Coverage.......................................................... 62
    2. Additional Exclusions Applicable only to Personal and Advertising Injury .................68
    3. Additional Exclusions Applicable to Medical Expenses Coverage Only..................... 69
    4. Additional Exclusions Applicable to Both Business Liability Coverage and Medical Expenses
       Coverage - Nuclear Energy Liability Exclus.i.o..n............................................. 70
C. Who is an Insured........................................................................................................... 71
D. Liability and Medical Expenses Limits of Insurance.............................................................. 72

**The Hanover Insurance Group™**

OB3 D815660          1001087

**E. Liability and Medical Expenses General  Conditions** ................................................................................ 73

    1. Bankruptcy ................................................................................................................................. 73

    2. Duties in the Event of Occurrence, Offense, Claim or  Suit .......................................................... 73

    3. Legal Action  Against Us ............................................................................................................ 73

    4. Separation of  Insureds .............................................................................................................. 73

**F. Liability and Medical Expenses  Definitions** ............................................................................................ 74


**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY  AND SECTION II - LIABILITY)**

**A. Cancellation** ........................................................................................................................................... 77

**B. Changes** ................................................................................................................................................ 78

**C. Concealment, Misrepresentation or  Fraud** .......................................................................................... 78

**D. Examination of Your Books and  Records** ............................................................................................ 78

**E. Inspections and  Surveys** ..................................................................................................................... 78

**F. Insurance Under Two or More  Coverages** ........................................................................................... 78

**G. Liberalization** ........................................................................................................................................ 79

**H. Other  Insurance** ................................................................................................................................... 79

**I. Premiums** ................................................................................................................................................ 80

**J. Premium  Audit** ....................................................................................................................................... 80

**K. Transfer of Rights of Recovery Against Others to  Us** ......................................................................... 80

**L. Transfer of Your Rights and Duties Under This  Policy** ....................................................................... 81

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In **SECTION II - LIABILITY**, the word "insured" means any person or organization qualifying as such under paragraph **C. Who is an Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraph **G. Property Definitions** in **SECTION I - PROPERTY** and paragraph **F. Liability and Medical Expenses Definitions** in **SECTION II - LIABILITY**.

## SECTION I - PROPERTY

### A. Coverage

**1. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described in paragraph **a.** below, Business Personal Property as described in paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described in **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as the landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire protection equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures;

**(7)** Signs, whether or not they are attached to covered buildings or structures;

**(8)** Interior and Exterior Building glass if you are a building owner;

**(9)** Fences and retaining walls located on or within 1,000 feet of a covered building or structure, whether or not attached to buildings or structures, except for retaining walls that are used, in whole or in part, to contain water.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the building or structures or within 1,000 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, including the cost of labor, materials or services furnished or arranged by you on personal property of others, except as otherwise provided in **SECTION I -**



OB3 D815660      1001087

PROPERTY, E. Property Loss Condition, 5. Loss Payment paragraph **d.**, subparagraph **(3)(b)**;

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove.

**(4)** Leased personal property for which you have a written contractual responsibility to insure, unless otherwise provided in paragraph **(2)** above;

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control;

**(6)** Physical damage sustained to a building leased to you caused by or resulting from "theft" or attempted "theft", burglary or robbery of your Business Personal Property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** Contractor's equipment, which is used or operated principally away from the premises described in the Declarations, or parts and equipment, whether attached or unattached to contractor's equipment, unless such parts and equipment is held for sale by you, or sold by you but not delivered unless specifically endorsed and scheduled, or as provided for in **SECTION I - PROPERTY, B. Additional Coverages, v. Commercial Tools and Small Equipment**;

**c.** "Money" or "securities" except as provided in the:

**(1)** Money and Securities Additional Coverage; or

**(2)** Employee Theft Additional Coverage;

**d.** Contraband or property in the course of illegal transportation or trade;

**e.** Land, whether or not resurfaced with stone, gravel or similar layer (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof), except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, l. Paved Surfaces**;

**f.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, c. Outdoor Property**;

**g.** Watercraft (including motors, equipment and accessories);

**h.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this Coverage Form;

**i.** "Computer equipment", which is permanently installed or designed to be permanently installed in any aircraft, watercraft, mortortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer equipment" while held as "stock";

**j.** "Electronic Data", except as provided under the Computer Equipment and Electronic Vandalism Additional Coverages. This paragraph does not apply to your "stock" of prepackaged "software" or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**k.** Animals, unless owned by others and boarded by you, or held for sale by you, or sold but not delivered, and only while inside of buildings;

**l.** The cost of excavations, grading, backfilling, or filling;

**m.** Bulkheads, pilings, piers, wharves or docks;

**n.** Retaining walls that are used, in whole or in part, to contain water.

**o.** "Computer Equipment", except as provided for under the:

**(1)** Computer Equipment Additional Coverage;

**(2)** Equipment Breakdown Additional Coverage; or

**(3)** Electronic Vandalism Additional Coverage.

**p.** Commercial tools and small equipment except as provided in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or for contractor's equipment specifically endorsed and scheduled. This does not apply to your commercial tools and small equipment permanently installed or exclusively used at the described premises;

**q.** Employee tools and small equipment except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or when added by separate endorsement;

**r.** Bridges (unless the bridge is made a part of a covered Building), roadways, walks, patios or other paved surfaces, except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, l. Paved Surfaces**;

**s.** Underground pipes, flues or drains except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, m. Underground Pipes**; and

**t.** Personal Property while airborne or waterborne.

**3. Covered Causes of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in **SECTION I - PROPERTY, B. Exclusions**; or

**b.** Limited in **SECTION I - PROPERTY, A. Coverages, 4. Limitations**

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities**.

**(2)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(3)** The interior of any building or structure, or to personal property

in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(4)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by any of the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.



OB3 D815660        1001087

**5.   Additional Coverages**

**a.   Debris Removal**

**(1)** Subject to paragraphs **(2)**, **(3)** and **(4)** below, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this Coverage Form, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Form;

**(c)** Remove any property that is Property Not Covered except as provided under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in paragraph **(4)** below, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss of or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss of or damage to the Covered Property that has sustained loss or damage.

Therefore, if paragraphs **(a)** and/or **(b)** above apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)   Examples**

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable ($50,000 - $500) | $ 49,500 |
| Debris Removal Expense | $ 10,000 |

Debris Removal Expense

Payable $ 10,000
($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of paragraph **(3)** above.

**Example #2**

Limit of Insurance $ 90,000

Amount of Deductible $ 500

Amount of Loss $ 80,000

Amount of Loss Payable $ 79,500
($80,000 - $500)

Debris Removal Expense $ 40,000

Debris Removal Expense Payable

    Basic Amount $ 10,500

    Additional Amount $ 25,000

The basic amount payable for debris removal expense under the terms of paragraph **(3)** above is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000 (capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of paragraph **(4)** above, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because (from paragraph **(3) (a)**) the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under paragraph **(4)** above. Thus the total payable for debris removal expense in this example is $35,500; $4,500 of the

debris removal expense is not covered.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 90 days after the property is first moved.

This Additional Coverage does not increase the applicable Limit of Insurance.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 for service at each premises described in the Declarations, unless a higher Limit of Insurance is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department services charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** below.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss of or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property



OB3 D815660      1001087

insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to any insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to any insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation; or

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

    **(i)** A cause of loss listed in paragraphs **(a)** or **(b)** above of this Additional Coverage;

    **(ii)** One or more of the "specified causes of loss";

    **(iii)** Breakage of building glass;

    **(iv)** Weight of people or personal property; or

    **(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage - Collapse does not apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard Fixtures;

**(d)** Outdoor swimming pools;

**(e)** Beach or diving platforms or appurtenances;

**(f)** Retaining walls; and

**(g)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form and the property is Covered Property under this Coverage Form.

**(5)** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The abrupt collapse of personal property was caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in paragraph **(4)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage - Collapse will not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**(8)** The term Covered Cause of Loss includes the Additional Coverage -

Collapse as described and limited in paragraphs **(1), (2), (3), (4), (5), (6)** and **(7)** above.

**e.  Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)**  Results in discharge of any substance from an automatic fire protection system; or

**(2)**  Is directly caused by freezing.

**f.  Business Income**

When Business Income Coverage is provided under this policy:

**(1)  Business Income**

**(a)**  We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to a described premises shown in

the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)**  The portion of the building which you rent, lease or occupy;

**(ii)**  The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)**  Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(b)**  We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within the designated, consecutive number of months found on the Declarations Page beginning immediately after the date of direct physical loss or damage. For purposes of this insurance, all recoverable loss ceases when the "period of restoration" ends.

**(c)  Business Income** means the:

**(i)**  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(ii)**  Continuing normal operating expenses incurred, including "payroll expenses". However, if your business is not generating any income because you are primarily in research or development or have not yet brought your product to market, your continuing normal operating expenses, including "payroll expenses", will not be offset by the Net Loss; and

**(iii)**  "Rental Value".



OB3 D815660        1001087

For manufacturing risks, Net Income includes the net sales value of production.

**(2) Extended Business Income**

If no Business Income Coverage is provided under this Coverage Form, then there is no Extended Business Income Coverage afforded under this Coverage Form.

**(a) Extended Business Income - Other Than Rental Value**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced (to the extent necessary to resume "operations") and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(a) Extended Business Income - Other Than Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(b) Extended Business Income - Rental Value**

If the necessary "suspension" of your "operations" produces a "rental value" loss payable under this Coverage Form, we will pay for the actual loss of "rental value" you incur during the period that:

**(i)** Begins the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(ii)** Ends the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "rental value" that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(b) Extended Business Income - Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of "rental value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "rental value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(iii)** We will reduce the amount of your:

Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged

property (including merchandise or "stock") at the described premises or elsewhere.

**(iv)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**g. Extra Expense**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the "suspension" of business and

to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the "suspension" of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, f. Business Income**.

With regard to paragraph **(i)** above, we will pay only for those expenses necessary to expedite the repair or replacement of the property. Under this provision we will not pay for any portion of the ordinary and expected cost to actually repair or replace property.

**(3)** We will only pay for Extra Expense that occurs within 12 consecutive months beginning immediately after the date of direct physical loss or damage.

**(4)** We will reduce the amount of your Extra Expense loss payment to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(5)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**h. Pollutant Clean-Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the



OB3 D815660        1001087

described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i.   Civil Authority**

When Business Income Coverage is provided under this Coverage Form:

**(1)** When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**(2)** Civil Authority Coverage for Business Income will begin 72 hours after the time of the

first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(a)** Four consecutive weeks after the date of that action; or

**(b)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**(3)** The definitions of Business Income and Extra Expense contained in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income;** and **g. Extra Expense** also apply to this Additional Coverage.

**j.   Money Orders and Counterfeit Money**

**(1)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**(b)** "Counterfeit money" that is acquired during the regular course of business.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** The most we will pay for any loss under this Additional Coverage is $5,000.

**k.   Forgery or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any:

**(a)** Check, draft, promissory note, bill of exchange or similar written promises of payment in "money" that you or your agent has issued, or that was issued

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 13 of 81

123

by someone who impersonates you or your agent; and

**(b)** Credit, debit or charge slips or documents, including signatures or the entry of a Personal Identification Number (PIN) into a "payment processing device" required with the use of any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promises of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(4)** For purposes of this Additional Coverage, check includes a substitute check as defined by the United States Congress in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(5)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**I.** **Ordinance or Law**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** **Application of Coverages:**

The coverages provided under this Additional Coverage applies only if paragraphs **(a)** and **(b)** below, are satisfied and are then subject to the qualifications found in **(c)** below.

**(a)** The ordinance or law:

**(i)** Regulates the demolition, construction or repair of buildings, or establishes

zoning or land use requirements at the described premise;

**(ii)** Is in force at the time of loss; and

**(iii)** Was not in force at the time the involved construction was completed.

But coverage under this Additional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

**(b)** The building sustains direct physical damage:

**(i)** That is covered under this Coverage Form and as a result of such damage, you are required to comply with the ordinance or law; or

**(ii)** That is covered under this Coverage Form and direct physical damage that is not covered under this Coverage Form and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**(iii)** But if the damage is not covered under this Coverage Form and such damage is the subject of the ordinance or law, then there is no coverage under this Additional Coverage even if building has also sustained covered direct physical damage.

**(c)** In the situation described in **(2)** **Application of Coverages,** paragraph **(b),** subparagraph **(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of coverages for Coverage for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage. Instead, we will pay a proportion of such loss, meaning the proportion that

391-1003 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 14 of 81

124



OB3 D815660        1001087

the covered direct physical damage bears to the total direct physical damage. Paragraph **(7)** of this coverage provides an example of this procedure.

However, if the covered direct physical damage alone would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of the loss otherwise payable under the terms of Coverages for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage under this Additional Coverage.

**(3)** We will not pay under this Additional Coverage for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(4) Coverage**

**(a) Coverage for Loss to the Undamaged Portion of the Building**

With respect to the building that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building. Coverage for Loss to the Undamaged Portion of the Building is included within the Limit of Insurance shown in the

Declarations as applicable to the covered building. Coverage for Loss to the Undamaged Portion of the Building does not increase the Limit of Insurance.

**(b) Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of the undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

**SECTION I - PROPERTY**, **E. Property Loss Conditions**, **5. Loss Payment**, paragraph **d.** does not apply to Demolition Cost Coverage.

**(c) Increased Cost of Construction**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(i)** Repair or reconstruct damaged portions of that building; and/or

**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**SECTION I - PROPERTY**, **E. Property Loss Conditions**, **5. Loss Payment**, paragraph **d.** does not apply to the Increased Cost of Construction Coverage.

**(5) Loss Payment**

**(a)** Loss Payment provisions **(b), (c), (d)** and **(e)** below are subject to the apportionment procedure set forth in above **Application of Coverages,** paragraph **(2)(c)**.

**(b)** When there is a loss in value of an undamaged portion of the building to which Coverage for Loss to the Undamaged Portion of the Building applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(i)** If the property is repaired or replaced on the same or another premise, we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(ii)** If the property is not repaired or replaced. We will not pay more than the lesser of:

**1)** The actual cash value of the building at the time of loss; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(c)** The most we will pay for the total of all covered losses for Demolition Cost Coverage and Increased Cost of Construction is the Limit of Insurance shown in paragraph **(d)** below. Subject to this combined Limit of Insurance, the following loss payment provisions apply:

**(i)** For Demolition Cost Coverage, we will not pay for more than the amount

you actually spend to demolish and clear the site of the described premises.

**(ii)** Loss payment under Increased Cost of Construction Coverage will be determined as follows:

**1)** We will not pay for the increased cost of construction until the property is actually repaired or replaced at the same or another premises; and

**2)** Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(iii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction Coverage is the lesser of:

**1)** The increased cost of construction at the same premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(iv)** If the ordinance or law requires relocation to another premise, the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $5,000 or the amount shown in the Additional Property Schedule.

The Hanover Insurance Group™

OB3 D815660        1001087

If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $5,000, or the amount shown in the Additional Property Coverage Schedule.

**(6)** Under this coverage, we will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the building was undamaged; and

**(b)** You failed to comply with.

**(7)** Example of Proportionate Loss Payment for Ordinance or Law Coverage losses (procedures as set forth in paragraph **(2)(c)** of this Additional Coverage).

Assume:

- Wind is a Covered Cause of Loss; "Flood" is an excluded Cause of Loss

- The building has value of $200,000

- The total direct physical damage to the building: $100,000;

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;

- Portion of direct physical damage that is covered (caused by wind): $30,000;

- Portion of direct physical damage that is not covered (caused by "flood"): $70,000; and

- Loss under Increased Cost of Construction: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

**Step 2:** Apply that portion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this Additional Coverage for the Increased Cost of Construction loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

Note: The same procedure applies to losses under Loss to the Undamaged Portion of the Building and Demolition Cost of this Additional Coverage.

**m. Business Income from Dependent Properties**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the premises of a "dependent property" caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a "dependent property" is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

**(2)** The most we will pay under this Additional Coverage is $5,000 per occurrence, regardless of the number of "dependent properties" affected.

**(3)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

**(b)** Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced (to the extent necessary to resume "operations") with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(6)** The Business Income coverage period, as stated in paragraph **(4)** above, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Form will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income from Dependent Properties Additional Coverage.

**n. Glass Expenses**

When glass is damaged from a Covered Cause of Loss we will pay for your expenses incurred to:

**(1)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(2)** Replace lettering, artwork, sensors or other items permanently affixed to, or a part of, the damaged glass; and

**(3)** Remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Protection Equipment Recharge**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems

(including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $25,000 in any one occurrence. The deductible does not apply to these expenses.

**p. Employee Theft including ERISA Compliance**

**(1)** We will pay for loss or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", clergy, or any non-compensated person whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Additional Coverage, "theft" shall also include "forgery".

**(2)** This Additional Coverage terminates as to any "employee" as soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

"Discovered" the "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(3)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(4)** We will pay only for loss you sustain through acts committed or events occurring anytime which is "discovered" by you:

**(a)** During the policy period; or

The Hanover Insurance Group.

OB3 D815660        1001087

**(b)** No later than 1 year from the date of termination or cancellation of this insurance. However this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this Additional Coverage, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(5)** You may extend this coverage to apply to loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

**(6)** The most we will pay for all loss resulting directly from an occurrence is $10,000 or the Limit of Insurance shown in the Additional Property Coverage Schedule. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**(7)** **Special Employee Theft Exclusions**

We will not pay for:

**(a)** Loss resulting from "theft" or any other dishonest act committed by:

   **(i)** You; or

   **(ii)** Any of your partners or "members";

   Whether acting alone or in collusion with other persons.

**(b)** Loss caused by an "employee" if the "employee" has also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the policy period shown in the Declarations.

**(c)** Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

   **(i)** Whether acting alone or in collusion with other persons; or

   **(ii)** While performing services for you or others;

   Except when covered under this Additional Coverage.

**(d)** Loss that is an indirect result of an occurrence covered by this Additional Coverage, including, but not limited to, loss resulting from:

   **(i)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

   **(ii)** Payment of damages of any type for which you are legally liable;

   **(iii)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Additional Coverage.

**(e)** Fees, costs and expenses incurred by you which are related to any legal action.

**(f)** Loss or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   **(i)** An inventory computation; or

   **(ii)** A profit and loss computation.

   However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(g)** Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**(h)** Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**(i)** Loss resulting from:

   **(i)** The unauthorized disclosure of your

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 19 of 81

129

confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(ii)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non public information.

**(8) Welfare and Pension Plan ERISA Compliance**

**(a)** The "employee benefit plan" (hereafter referred to as Plan) is included as an insured under this Additional Coverage.

**(b)** If any Plan is insured jointly with any other entity under this Additional Coverage, you or the Plan Administrator must select a Limit of Insurance for this Additional Coverage that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(c)** With respect to loss sustained or "discovered" by any such Plan, paragraph **(1)** above, of this Additional Coverage is replaced by the following:

**(1)** We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(d)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(e)** If two or more Plans are insured under this Additional Coverage, any payment we make for loss:

**(i)** Sustained by two or more Plans; or

**(ii)** Of commingled "funds" or "other property" of two or more Plans;

Resulting from an occurrence, will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(f)** The deductible does not apply to this Additional Coverage.

**q. Rewards - Arson, Theft and Vandalism**

**(1)** We will reimburse you for payment of any reward offered on your behalf and for information that leads to the arrest and conviction of the person or persons responsible for:

**(a)** Arson;

**(b)** "Theft" or

**(c)** Vandalism

to Covered Property.

**(2)** The arrest or conviction must involve a covered loss caused by arson, "theft" or vandalism.

**(3)** The most we will pay under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule**.** The amount we pay is not increased by the number of persons involved in providing the information.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The deductible does not apply to this Additional Coverage.

**r. Computer Equipment**

**(1)** We will pay for direct physical loss of or damage to the following Covered Property which is your property or property in your care, custody or control while at or away from the described premises when loss or damage is caused by or resulting from a Covered Cause of Loss:

**(a)** "Computer equipment"; and

**(b)** Programming documentation and instruction manuals.

**(2)** We will pay for the actual loss of Business Income you sustain as described in the Business Income Additional Coverage and we will pay for any necessary Extra Expense you incur during the "period of restoration"

The Hanover Insurance Group.

OB3 D815660        1001087

as described in the Extra Expense Additional Coverage.

**(3)** In the event of a loss of or damage to "Computer equipment" by a Covered Cause of Loss, we will pay your costs to modify or replace undamaged "hardware" or "software" when it:

**(a)** Was dependent on the damaged "hardware" or "software" prior to the covered loss; and

**(b)** Is not compatible with the "hardware" or "software" that is replacing the property that was involved in the covered loss.

We will only pay for your costs to modify or replace undamaged "hardware" or "software" at a premises described in the Declarations.

The most we will pay for your costs covered in any one occurrence is $10,000.

**(4)** We will not pay for any loss of or damage to the following property:

**(a)** Property you rent, loan or lease to others while it is away from the described premises;

**(b)** Property you hold for sale, distribute or manufacture except as provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**, paragraph **b.;** or

**(c)** "Software" that cannot be duplicated or replaced with similar property of equal quality and/or substantially similar functionality.

**(5)** If we provide Building coverage only, we will only pay for loss to "computer equipment" that service building operations at the described premises and are located at the described premises.

**(6)** The most we will pay for any loss or damage to property described in paragraphs **(1)** and **(2)** above, is $35,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Computer Equipment. The most we will pay for Extra Expense is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Extra Expense.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**.

**(8) Special Computer Equipment Exclusions**

We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit. Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**s.   Money and Securities**

**(1)** We will pay for loss of "money" and "securities":

**(a)** Inside a building at the described premises or "financial institution" resulting directly from "theft" committed by a person present inside a building at the described premises or "financial institution";

**(b)** Inside a building at the described premises or "financial institution" resulting directly from disappearance or destruction; or

**(c)** Outside of a building at or away from the described premises in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**(2)** For the purposes of this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** You must keep records of all "money" and "securities" so we can verify the amount of any one loss or damage.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The most we will pay for loss in any one occurrence is:

**(a)** $10,000 or the amount shown in the Additional Property Coverage Schedule while:

**(i)** Inside a building at the described premises; or

**(ii)** Within a "financial institution" in the Coverage Territory; and

**(b)** $5,000 or the amount shown in the Additional Property Coverage Schedule while outside of a building at the described premises or when away from the described premises in the Coverage Territory.

**(6)** **Special Money and Securities Exclusions**

We will not pay for loss:

**(a)** Resulting from accounting or arithmetic errors or omissions;

**(b)** Resulting from giving or surrendering of property in any exchange or purchase;

**(c)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

**(d)** Loss or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property.

**t.** **Tenant Signs (Tenants only)**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

We will pay for direct physical loss of or damage to all signs:

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody or control;

when loss or damage is caused by or resulting from a Covered Cause of Loss.

**(2)** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes of Loss** does not apply to this Additional Coverage and **SECTION I -**

**PROPERTY**, **B. Exclusions,** paragraph **1.** does not apply to this Additional Coverage except for the following:

**(a)** **c. Government Action**;

**(b)** **d. Nuclear Hazard**; and

**(c)** **f. War and Military Action**.

**(3)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust;

**(d)** Corrosion; or

**(e)** Mechanical Breakdown, except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**.

**(4)** The most we will pay for loss or damage in any one occurrence is $5,000 regardless of the number of locations or buildings involved.

**u.** **Equipment Breakdown**

**(1)** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**(2)** The following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However, with respect to coverage **A.5.u.(2)(h)** Utility Services - Equipment Breakdown (Accident) and **A.5.m.** Business Income from Dependent Properties provided in this coverage form, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**(a)** **Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data".

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and



OB3 D815660     1001087

necessary Extra Expense you incur is $50,000.

**(b) Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

**(i)** Make temporary repairs; and

**(ii)** Expedite permanent repairs or permanent replacement.

**(c) Fungi, Wet Rot, or Dry Rot**

**(i)** We will pay the additional cost to repair or replace Covered Property because of contamination by "fungi", wet rot or dry rot. This includes the additional costs to clean up or dispose of such property. This does not include spoilage of personal property that is "perishable goods" to the extent that such spoilage is covered under Spoilage coverage.

**(ii)** As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "fungi", wet rot or dry rot been involved.

**(iii)** We will also pay the cost of testing performed after repair or replacement of the damaged Covered Property is completed only to the extent that there is reason to believe there is the presence of "fungi", wet rot or dry rot.

**(iv)** This coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $15,000 even if the "fungi", wet rot or dry rot continues to be present or active or recurs in a later policy period.

**(d) Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of a contamination by a "hazardous substance".

This includes the additional costs to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **(g) Spoilage** below. Additional costs mean those beyond what would have been payable had no "hazardous substance" been involved. The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain, and necessary Extra Expense you incur is $50,000.

**(e) Personal Property Off Premises Equipment Breakdown**

**(i)** Any direct physical damage for personal property off premises provided under Coverage Extension **b.** Personal Property Off Premises, also applies to the direct result of an "accident" or "electronic circuitry impairment".

**(ii)** We will also pay for your reasonable and necessary cost to research, replace and restore lost "electronic data" contained within "covered equipment" when due to covered loss or damage as described in **(i)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

**(iii)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur and Data Restoration as described in **(ii)** above is $50,000.

**(f) Public Relations**

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 23 of 81

133

**(i)** This coverage only applies if you have sustained an actual loss of Business Income.

**(ii)** We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

**1)** The media;

**2)** The public; or

**3)** Your customers, clients or members.

**(iii)** Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

**(iv)** The most we will pay for loss or expense under this coverage is $5,000.

**(g) Spoilage**

**(i)** We will pay for:

**1)** Physical damage to your "perishable goods" due to spoilage.

**2)** Physical damage to your "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

**3)** Any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(ii)** If you are unable to replace "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the

"accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment Condition.

**(iii)** The most we will pay for loss or damage under this coverage is $50,000.

**(h) Utility Services - Equipment Breakdown (Accident)**

**(i)** Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(ii)** "Cloud computing services" must be provided by a professional provider with whom you have a contract.

**(iii)** With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "data" stored in the equipment of a provider of "cloud computing services".

**(iv)** Any insurance provided for Business Income or Data Restoration will not apply



OB3 D815660        1001087

under this Service Interruption coverage unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of the disruption, and the applicable deductible will apply.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense, Data Restoration or Spoilage.

**(3) Conditions**

**(a) Suspension**

When any "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". We can do this by mailing or delivering a written notice of suspension to:

**(i)** Your address as shown in the Declarations; or

**(ii)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment". But the suspension will be effective even if we have not yet made or offered a refund.

**(b) Jurisdictional Inspections**

If any property that is "covered equipment" under this Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(c) Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**(4) Special Equipment Breakdown Exclusions**

**(a)** We will not pay for loss, damage or expense caused by or resulting from a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

**(b)** With respect to Business Income, Extra Expense and Utility Services coverages, we will also not pay for:

**(i)** Loss caused by your failure to use due diligence and dispatch, and all reasonable means to resume business; or

**(ii)** Any increase in loss resulting from an agreement between you and your customer or supplier.

**(c)** Except as provided under **u.2.(c)** "Fungi," Wet Rot or Dry Rot coverage we will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any "fungi," wet rot or dry rot, including any presence, growth, proliferation, spread or any activity of "fungi," wet rot or dry rot. This includes, but is not

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 25 of 81

135

limited to, costs arising from clean up, removal, or abatement of such "fungi," wet rot or dry rot. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

**(d)** This Additional Coverage - Equipment Breakdown does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

**(i)** Fire (including fire resulting from an "accident" or "electronic circuitry impairment"), or water or other means used to extinguish a fire;

**(ii)** Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

**(iii)** Any other explosion, except as specifically covered under this Additional Coverage;

**(iv)** Vandalism;

**(v)** Lightning; smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

**(vi)** Windstorm or hail; However, this exclusion does not apply when:

**1)** "Covered equipment" located within a building or structure suffers an "accident" or "electronic circuitry impairment" that results from wind-blown rain, snow, sand or dust; and

**2)** The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

**(vii)** Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

**(viii)** "Flood", surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

**(ix)** Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

**(e)** Special Equipment Breakdown Exclusions **(5)(d)(v)**, **(5)(d)(vi)** and **(5)(d)(vii)** shall not apply if:

**(i)** The excluded cause of loss occurs away from any covered location and causes an electrical surge or other electrical disturbance;

**(ii)** Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

**(iii)** The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**(f)** We will not pay under this Additional Coverage for any loss or damage to animals.

The most we will pay for loss, damage or expense arising from any "one equipment breakdown" is the applicable Limit of Insurance shown in the Declarations. This Additional Coverage does not provide an additional amount of insurance.

391-1003 08 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 26 of 81

136



OB3 D815660        1001087

**v.   Commercial Tools and Small Equipment**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage caused by or resulting from a Covered Cause of Loss to commercial tools and small equipment, including their:

**(a)** Accessories, whether attached or not attached; and

**(b)** Spare parts that are specifically designed and intended for use in the maintenance and operation of property covered under this Additional Coverage;

That is:

**(c)** Your property;

**(d)** The property of others in your care, custody or control; or

**(e)** The property of your "employees".

Damage to the property of your "employees" is limited to while on the described premises.

Commercial Tools and Small Equipment does not include communication devices and diagnostic equipment unless otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment.**

**(3)** This coverage only applies to any one tool or piece of small equipment with a replacement cost value of $2,500 or less, unless listed on a schedule included with this policy.

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule, but not more than $2,500 for any one tool, tool box or piece of small equipment.

**(5)** In addition to items listed within **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**, we will not pay for any loss to the following property:

**(a)** Watercraft or watercraft parts and equipment;

**(b)** Commercial tools and small equipment that are permanently mounted to a vehicle, including trailers;

**(c)** Tires or tire tubes, attached or unattached, for use with commercial tools and small equipment, unless the loss or damage is caused by "theft", malicious mischief, or any of the "specified causes of loss"; or

**(d)** Any property while underground, airborne or waterborne.

**(6)** The following **SECTION I - PROPERTY, B. Exclusions,** in paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**;

**(b)** **g. Water**.

**(7)** **Special Commercial Tools and Small Equipment Exclusion**
We will not pay for any loss caused by or resulting from any repair, adjusting, servicing, testing or maintenance process unless fire or explosion ensues, then only for the loss caused by such ensuing fire or explosion.

**w.   Installation**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to property sold under an installation agreement where your insurable interest continues until the property is accepted by the purchaser for whom the project is to be performed. Coverage applies under this Additional Coverage when the loss or damage is caused by or resulting from any Covered Cause of Loss.

**(3)** The property under which this insurance applies includes:

**(a)** Materials, supplies, equipment, machinery, fixtures owned by you or in your care, custody or control, and which are to be installed by you or at your direction; and

**(b)** Temporary structures built or assembled on-site, including cribbing, scaffolding and construction forms.

**391-1003 08 16**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 27 of 81**

137

This property is covered while:

**(c)** At any jobsite you do not own, lease or operate;

**(d)** Awaiting and during installation, or awaiting acceptance by the purchaser;

**(e)** "In transit"; or

**(f)** At a temporary storage location.

**(4)** Coverage provided under this Additional Coverage will end when one of the following first occurs:

**(a)** This policy expires or is cancelled;

**(b)** The property covered under this Additional Coverage is accepted by the purchaser;

**(c)** Your interest in the property covered under this Additional Coverage ceases;

**(d)** You abandon the project to be performed by you for the purchaser, with no intention to complete it; or

**(e)** 90 days after the project to be performed by you for the purchaser is completed, unless we specify a different date in writing.

**(5)** In addition to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** the following property is not covered with respect to this Additional Coverage:

**(a)** An existing building or structure to which an addition, alteration, improvement or repair is being made;

**(b)** Property stored at a permanent premises that you own;

**(c)** A plan, blueprint, design or specification;

**(d)** Trees, grass, sod, shrubbery or plants; and

**(e)** Machinery, tools, equipment, supplies or similar property that does not become a permanent part of the project. This includes contractor's equipment and other tools belonging to a contractor or sub-contractor.

**(6)** **Special Installation Exclusions**

We will not pay for any loss caused by or resulting from:

**(a)** The cost to make good or replace faulty or defective materials or workmanship;

**(b)** Testing. However, if testing results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion;

**(c)** A fault, defect, deficiency, error or omission in a plan, blueprint, design or specification;

**(d)** The weight of a load when it exceeds the designed capacity of any property covered under this Additional Coverage to lift, move or support the load from any position; or

**(e)** Collision, upset or overturn of any property covered under this Additional Coverage to the extent of any loss of or damage to the tires or inner tubes of such property. But we will pay for the loss of or damage to the tires or inner tubes if the same accident causes other covered loss to the same property covered under this Additional Coverage.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(1)** The most we will pay for loss of or damage to property covered under this Additional Coverage in any one occurrence is $5,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

This Additional Coverage does not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**x.   Fine Arts**

**(1)** We will pay for direct physical loss to "fine arts" which are your property or the property of others in your care, custody or control while on the described premises. We also cover your "fine arts" while temporarily on display or exhibit away from the described premises or while "in transit" between the described premises and a location where the

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 28 of 81

138



OB3 D815660        1001087

"fine arts" will be temporarily on display or exhibit.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss under this Additional Coverage is $10,000 per occurrence regardless of the number of locations or buildings involved.

**(4) Special Fine Arts Exclusion**

We will not pay for any loss caused by or resulting from:

**(a)** Breakage of statuary, glassware, bric-a-brac, marble, porcelain and similar fragile property. But we will pay if the loss or damage is caused directly by a "specified cause of loss", earthquake or "flood"; and

**(b)** Any repairing, restoration or retouching of the "fine arts".

**y. Sales Representative Samples**

**(1)** We will pay for direct physical loss or damage by a Covered Cause of Loss to samples of your "stock" in trade (including containers) while:

**(a)** In the custody of your sales representative, agent or any "employee" who travels with sales samples;

**(b)** In your custody while acting as a sales representative; or

**(c)** "In transit" between the described premises and your sales representatives.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule.

**(4)** We will not pay for loss to the following property:

**(a)** Property which has been sold;

**(b)** Jewelry, precious or semiprecious stones, gold, silver, platinum or other precious metals or alloys;

**(c)** Fur, fur garments or garments trimmed with fur; or

**(d)** Any property while waterborne.

**z. Leasehold Interest (Tenants Only)**

**(1)** If your lease is cancelled due to direct physical damage to property at the described premises caused by or resulting from a Covered Cause of Loss, we will pay the net loss you sustain due to increased rent under a replacement lease.

**(2)** The most we will pay for loss because of the cancellation of any lease or leases due to the same covered cause of loss is the lesser of:

**(a)** If your lease is cancelled and either:

**(i)** Your landlord allows you to continue to use your premises under a new lease not to exceed the prevailing lease rate, or

**(ii)** You relocate to other permanent premises and enter into a new lease.

For the duration of the lease in effect at the time of the loss, we will pay the increase in rent between what you were paying at the time of loss and the rent you will be required to pay for equivalent premises under the replacement lease;

**(b)** $10,000; or

**(c)** Nothing if there is not a written or legally binding lease.

**(3)** The following applies to paragraph **(2)**, subparagraphs **(a)(i)** and **(a)(ii)** above:

**(a)** If the lease in effect at the time of the loss contains a renewal option, the expiration date of the renewal option period will replace the expiration of the current lease.

**(b)** If the lease has no end date (open-ended), we will pay the difference in rent for a period of no more than 24 months after the date of the direct physical damage to the property at the described premises.

**391-1003 08 16**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 29 of 81**

139

**(4)** The following applies to paragraph **(2)**, subparagraphs **(a)** and **(b)** above:

**(a)** $10,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**(b)** Existence of a renewal option will not increase, or have any other effect on this Limit of Insurance.

**(5) Special Leasehold Interest Exclusion**

We will not pay for any loss or damage:

**(a)** If the unit or suite rented or leased to you where direct damage occurs has been vacant more than 60 consecutive days before the loss or damage occurs, and you have not entered into an agreement to sublease the unit or suite.

**(b)** Caused by your cancelling the lease, or

**(c)** Caused by lessors' lease cancellation at the normal expiration date.

**aa. Unauthorized Business Credit Card Use**

**(1)** We will pay for loss resulting from the "theft" or unauthorized use of Business Credit Cards issued to you or registered in your name.

**(2)** We do not cover use of a Business Credit Card:

**(a)** By a person who has been entrusted with the card; or

**(b)** any of your "employees".

**(3)** All loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence regardless of the number of individual unauthorized transactions.

**(4)** If a suit is brought against you for liability, we will pay for reasonable legal expenses incurred in that defense under this Additional Coverage.

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $5,000 per occurrence.

**bb. Utility Services**

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss of or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $5,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(3)** Services:

**(a)** Water Supply Services, meaning the following types of property supplying water to the described premises:

**(i)** Pumping stations; and

**(ii)** Water mains.

**(b)** Communication Supply Services, meaning the following types of property supplying communication services, including but not limited to telephone, radio, microwave, television services, internet access or access to any electronic, cellular or satellite

**The Hanover Insurance Group™**

OB3 D815660        1001087

network to the described premises, such as:

**(i)** Communication transmission lines, including optic fiber transmission lines;

**(ii)** Coaxial cables; and

**(iii)** Microwave radio relays except satellites.

**(c)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(i)** Utility generating plants;

**(ii)** Switching stations;

**(iii)** Substations;

**(iv)** Transformers; and

**(v)** Transmission lines.

**(4)** Services under this Additional Coverage do not include overhead transmission lines that deliver utility services to you. Overhead transmission lines include, but are not limited to:

**(a)** Overhead transmission and distribution lines;

**(b)** Overhead transformers and similar equipment; and

**(c)** Supporting poles and towers.

**(5)** As used in this additional coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**(6)** This coverage is not an additional amount of insurance.

**(7)** Coverage under this Additional Coverage for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**(8)** The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Utility Services Additional Coverage.

**cc. Deferred Payments**

**(1)** We will pay for your interest in lost or damaged Business Personal Property sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after delivery to buyers. The loss or damage must be caused by a Covered Cause of Loss.

**(2)** When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer. When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

**(a)** If the realized value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

**(b)** If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**(3)** When loss occurs and the buyer continues to pay you, there will be no loss payment.

**(4)** The most we will pay for loss under this Additional Coverage is $5,000 per occurrence.

**dd. Electronic Vandalism**

**(1)** **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **o.** is deleted.

**(2)** We cover direct physical loss of or damage to covered "computer equipment" at the described premises caused by "electronic vandalism".

**(3)** The most we will pay in any one occurrence under this Additional Coverage is $10,000. The most we pay for all covered losses under this Additional Coverage during each separate 12-month period of this policy is $10,000.

**(4)** **Special Electronic Vandalism Exclusions**

We do not cover:

**(a)** Loss of proprietary use of any "electronic data" or "proprietary programs" that have been copied, scanned, or altered;

**(b)** Loss of or reduction in economic or market value of any "electronic

data" or "proprietary programs" that have been copied, scanned, or altered; and

**(c)** "Theft" from your "electronic data" or "proprietary programs" of confidential information through the observation of the "electronic data" or "proprietary programs" by accessing covered "computer equipment" without any alteration or other physical loss of or damage to the records or programs. Confidential information includes, but is not limited to, customer information, processing methods, or trade secrets.

**ee. Interruption of Computer Operations**

This Additional Coverage is only available if Business Income is covered under this Coverage Form.

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" at the described premises caused by an interruption in computer operations due to destruction or corruption of "electronic data" occurring at or away from the described premises resulting from any Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss include "electronic vandalism". But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in paragraph **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a "suspension"of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under paragraphs **(1)**, **(2)**, **(3)** and **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by "electronic vandalism", except as provided under paragraphs **(1)**, **(2)**, **(3)** and **(4)** of this Additional Coverage.

**(7)** This Additional Coverage - Interruption of Computer Operations does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.



OB3 D815660     1001087

**ff. Limited Coverage for Fungi, Wet Rot, or Dry Rot**

**(1)** The coverage described in paragraphs **(2)** and **(6)** below only applies when the "fungi", wet rot or dry rot is the result of any of the "specified causes of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss of or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $50,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences caused by or resulting from any of the "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $50,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided in **SECTION I - PROPERTY, A. Coverage, 5 Additional Coverages, d. Collapse;** and/or **e. Water Damage, Other Liquids, Powder or Molten Material Damage.**

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all the terms and conditions of the applicable **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense**:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense** is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet

391-1003 08 16     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 33 of 81

143

rot or dry rot, but remediation of "fungi", wet rot, dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**gg. Theft of Telephonic Services**

**(1)** We will pay amounts you are obligated to pay that result from the "theft" of your "telephonic services" when someone who is not an "employee" gains unauthorized access to your "telephonic services" used in your business operations.

**(2)** The most we will pay under this Additional Coverage for acts of "theft" of "telephonic services", regardless of the number of "thefts" of "telephonic services" that you sustain in one policy year is $25,000.

**hh. Computer and Funds Transfer Fraud**

**(1)** We will pay for:

**(a)** Loss resulting directly from a fraudulent:

**(i)** Entry of "electronic data" or "computer program" into; or

**(ii)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to **(1)(a)(i)** and **(1)(a)(ii)** in the above paragraph**:**

**(iii)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(iv)** Your account at a "financial institution" to be debited or deleted.

**(b)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**(2)** As used in **(1)(a)** above, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or

change made by an "employee" acting in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for "computer equipment" covered under this Insuring Agreement.

**(3)** The most we will pay per occurrence under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(4)** Under this Additional Coverage all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of acts;

is considered one occurrence.

**ii. Tenant Building Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to a building on the described premises owned by your landlord and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

**(3)** Regardless of the number of described buildings affected, the most we will pay per insured location under this Additional Coverage is $25,000 in any one occurrence.

**jj. Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** Subject to **SECTION I - PROPERTY, E. Property Loss Conditions**, **5. Loss Payment,** paragraph **d.,** subparagraph **(3)(b),** we will pay for

391-1003 08     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 34 of 81

144

The **Hanover**
Insurance Group™

OB3 D815660      1001087

direct physical loss of or damage to your landlord's personal property located inside of a building on the described premises and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

(3) Regardless of the number of buildings where the landlord's personal property is located, the most we will pay per insured location under this Additional Coverage in any one occurrence is $25,000.

**6. Coverage Extensions**

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises:

**a. Newly Acquired or Constructed Property**

**(1) Buildings**

If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Used as a warehouse.

**(c)** The most we will pay for loss or damage under this Extension for Newly Acquired or Constructed Buildings is $1,000,000 at each building.

**(2) Business Personal Property**

**(a)** If your policy covers Business Personal Property, you may extend the insurance provided under Business Personal Property to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(i)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(ii)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

**(iii)** Business Personal Property that you newly acquire, located at the described premises.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(c)** This insurance may not be used to increase your Business Personal Property Limit. It does not apply to personal property you acquire as part of your usual customary business dealings whether or not such acquisition was related to anticipated seasonal demands. Under the terms of this Coverage Form, such property is not considered newly acquired, but falls within the provisions for Business Personal Property.

**(d)** The most we will pay for loss or damage under this Extension is $500,000 at each premises .

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $250,000 at each premise.

**(4) Period of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired or Constructed

Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b.  Personal Property Off Premises**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss while:

**(a)** At a location you do not own, lease or operate; or

**(b)** At any fair, trade show or exhibition.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 or the amount shown in the Additional Property Coverage Schedule, whichever is greater.

**(3) Special Personal Property Off Premises Exclusions**

This extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your sales representative, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**c.  Outdoor Property**

**(1)** You may extend insurance provided by this Coverage Form to apply to direct physical loss or damage to your radio and television antennas (including satellite dishes), trees, shrubs, plants and lawns (other than trees, shrubs or plants which are "stock" or are a part of a vegetated roof) including debris removal

expense, caused by or resulting from any of the following causes of loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or civil commotion;

**(e)** Aircraft;

**(f)** Windstorm; or

**(g)** Ice, snow, sleet and hail.

**(2)** Coverage under this Extension does not apply to property held for sale by you.

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $10,000, but not more than $1,000 for any one tree, shrub or plant.

**d.  Personal Effects**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to personal effects owned by you, your officers, your partners or "members", your "managers" or your "employees" when such loss or damage is caused by a Covered Cause of Loss.

**(2)** This extension does not apply to:

**(a)** Tools or equipment used in your business; and

**(b)** "Employees" tools and small equipment;

**(3)** The most we will pay for loss or damage under this Extension is $10,000 at each described premises.

**e.  Valuable Papers and Records (Other Than Electronic Data)**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause

OB3 D815660      1001087

of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence not at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(4)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; or

**(b)** Property in storage away from the premises shown in the Declarations;

**(5)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**;

**(f)** Paragraph **2.k. Errors or Omissions**; and

**(g)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**f.    Accounts Receivable**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to accounts receivable when such loss or damage

is caused by or results from a Covered Cause of Loss. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** We will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises. The most we will pay is $25,000 for accounts receivable at the described premises, unless a higher Limit of Insurance for accounts receivable is shown in the Additional Property Coverage Schedule.

**(3)** We will pay under this Coverage Extension for loss or damage in any one occurrence not at the described premises. The most we will pay is $25,000 for accounts receivable not at the described premises.

**(4)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**; and

**(f)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**(5)** **Accounts Receivable Special Exclusion**

We will not pay for:

**(a)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or "other property".

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(b)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**(c)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**g. Key Replacement and Lock Repair**

**(1)** You may extend the insurance provided under this Coverage Form to cover the reasonable and necessary expense you incur due to a covered "theft" for:

**(a)** Replacement of keys if they are stolen;

**(b)** Lock repair; or

**(c)** Rekeying, replacing or reprogramming undamaged locks to accept new keys or entry codes when the building security has been compromised.

**(2)** The most we will pay under this Extension is $1,000. The deductible does not apply to this Extension.

**h. Appurtenant Structures**

**(1)** If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage to garages, carports, storage buildings and other appurtenant structures, including, but not limited to, swimming pools, spas and the associated equipment within 1,000 feet of the described premises when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises regardless of the number of buildings or structures affected.

**i. Personal Property in Transit**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to your property or property of others that is in your care, custody or control while "in transit" when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** You may extend the insurance that applies to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage, caused by a Covered Cause of Loss, to outgoing shipments that have been rejected, while in due course of transit back to you or while awaiting return shipment to you.

**(3)** This Extension applies to the property while in:

**(a)** A vehicle owned, leased or operated by you; or

**(b)** The custody of a common carrier or contract carrier.

**(4)** The following in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1.** do not apply to this Extension:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(5)** The most we will pay for loss or damage under this Coverage Extension is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(6)** **Special Personal Property In Transit Exclusions**

This Extension does not apply to:

**(a)** Shipments that belong to others that you are transporting for a fee;

**(b)** Property while waterborne;

**(c)** Salesperson's Samples; or

**(d)** Loss to "perishable goods" resulting from a breakdown of refrigeration equipment on any vehicle owned, leased or operated by you or while in the custody of a common or contract carrier.

391-1003 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 38 of 81

148



OB3 D815660      1001087

**j.   Inventory and Loss Appraisal**

**(1)** We will pay for all reasonable expenses you incur at our written request to assist us in:

**(a)** The investigation of a claim;

**(b)** The determination of the amount of loss, such as taking inventory;

**(c)** The cost of preparing specific loss documents and other supporting exhibits; or

**(d)** Expenses you incur include costs charged to you by others, including property managers, acting on your behalf to assist us with items listed in paragraph **(1)** above.

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $10,000.

**(3)** The deductible does not apply to these expenses.

**(4) Special Inventory and Loss Appraisal Exclusion**

We will not pay for expenses:

**(a)** Incurred to perform your duties in the event of a loss under **SECTION I - PROPERTY, E. Property Loss Conditions**;

**(b)** To prove that loss or damage is covered;

**(c)** Billed by and payable to independent or public adjusters; attorneys; claims advocates; or any of their affiliated or associated entities;

**(d)** To prepare claims not covered by this Coverage Form; or

**(e)** Incurred under any appraisal provisions within the Coverage Form.

**k.   Business Personal Property Temporarily in Portable Storage Units**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, b. Business Personal Property** to apply to direct physical loss or damage to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 1,000 feet of the buildings or structures described in the Declarations or within 1,000 feet of the described premises, whichever distance is greater when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** We will not pay for loss of or damage to Business Personal Property temporarily in portable storage units, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The portable storage unit first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $25,000 unless a higher limit is shown in the Additional Property Coverage Schedule for this Extension regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**l.   Paved Surfaces**

**(1)** If your policy covers Buildings, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to your paved surfaces, including but not limited to bridges, roadways, walks, patios, and parking lots when such loss or

damage is caused by or results from a Covered Cause of Loss.

**(2)** Regardless of the number of described premises involved, the most we will pay for loss or damage in any one occurrence is $25,000.

**(3)** Payment for loss or damage to this property is included in the applicable Limit of Insurance.

**(4) Special Paved Surfaces Exclusion**

We will not pay for loss or damage caused by tree roots, freezing or thawing.

**m. Underground Pipes**

**(1)** If your policy covers Buildings, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to underground pipes, flues and drains when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss under this Coverage Extension is the applicable Limit of Insurance.

**(3)** Payment under this Additional Coverage is included within the Limit of Insurance.

**(4) Special Underground Pipes Exclusion**

We will not pay for loss or damage caused by tree roots.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property;  or

**(b)** Requiring the tearing  down of any property, including  the cost of removing its debris.

**(2)** This exclusion, Ordinance or Law, applies whether the loss  results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a  physical loss to that property.

This exclusion does not apply to the Ordinance or Law Additional  Coverage.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth  sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the  ground surface.

But if Earth Movement, as described in paragraphs **(1), (2), (3)** and **(4)** above, results in fire or explosion,  we will pay for the loss or damage caused by  that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage  for   volcanic action as set forth in paragraph  **(5),** subparagraphs **(a), (b)** and  **(c)** above, all volcanic eruptions that occur  within

OB3 D815660      1001087

any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether or not any of the above, in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1., b Earth Movement**, subparagraphs **(1), (2), (3), (4)** and **(5)**, are caused by an act of nature or is otherwise caused.

**c.  Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

**d.  Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.  Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility services to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause

of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer equipment" and "electronic data" or to **SECTION I - PROPERTY, 5. Additional Coverages, bb. Utility Services**.

**f.  War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

**(1)** "Flood", surface water, waves (including tidal wave or tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump; or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in paragraphs **(1)**, **(3)** or **(4)** above, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of paragraphs **(1), (2), (3), (4)** and **(5)** above, are caused by an act of nature or is otherwise caused. An example

391-1003 08 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 41 of 81

151

of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if Water, as described in paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage. If electrical "covered equipment" requires drying out because of paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and Deductible for Building or Personal Property, whichever applies.

**h.  Fungi, Wet Rot or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, ff. Limited Coverage for Fungi, Wet Rot or Dry Rot**, with respect to loss or damage by a cause of loss other than fire or lightning.

**i.  Virus or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in paragraph **(1)** above, does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1., h. Fungi, Wet Rot or Dry Rot**.

**(3)** With respect to any loss or damage subject to the exclusion in paragraph **(1)** above, such exclusion supersedes any exclusion relating to "pollutants".

**SECTION I - PROPERTY, B. Exclusions**, paragraphs **1.a., 1.b., 1.c., 1.d., 1.e., 1.f., 1.g., 1.h. and 1.i.** apply whether or not the loss

event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.  Consequential Losses**

Delay, loss of use or loss of market, however caused.

**b.  Smoke, Vapor and Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**c.  Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**d.  Dishonesty**

Dishonest or criminal act by you, any of your partners, "members", officers, managers, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but "theft" by employees is not covered.

This exclusion does not apply to coverage that is provided under the Employee Theft Including ERISA Additional Coverage.

**e.  False Pretense**

Voluntary parting with any property by you or anyone else to whom you have sold, given or otherwise entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

This exclusion does not apply to the Unauthorized Business Card Use Additional Coverage.

**f.  Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**g.  Collapse**

**The Hanover**
Insurance Group™

OB3 D815660        1001087

**(1)** Collapse, including any of the following conditions of property or any part of the property:

  **(a)** An abrupt falling down or caving in;

  **(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to paragraphs **(a)** or **(b)** above.

  But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **g.** does not apply:

  **(a)** To the extent that coverage is provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, d. Collapse**; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** Any of the "specified causes of loss"

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property

**h.   Pollution**

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

**i.   Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**j.   Other Types of Loss**

  **(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

  This exclusion does not apply with respect to the breakdown of "computer equipment".

  This exclusion does not apply to the Equipment Breakdown Additional Coverage.

**(7)** The following causes of loss to personal property:

  **(a)** Dampness or dryness of the atmosphere;

  **(b)** Changes in or extremes of temperature; or

  **(c)** Marring or scratching.

  But if an excluded cause of loss that is listed in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** above, results in any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage, we will pay for the loss or damage caused by any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage.

**k.   Errors or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing "electronic data" or in any "computer equipment" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire, "accident", "electronic circuity impairment" or explosion if these causes of loss would be covered by this Coverage Form.

**l.   Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or

repair of your "computer equipment" system including "software".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**m. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**, and **6. Coverage Extensions**.

However, we will pay for direct loss or damage caused by lightning.

**n. Artificially Generated Electricity**

Artificially generated electric current including electric arcing, that disturbs electrical devices, appliances or wires except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. - Equipment Breakdown**. But, if artificially generated electric current results in fire, we will pay for the loss or damage caused by fire.

**o. Computer Processing Exclusion**

**(1)** Errors or omissions in programming or incorrect instructions to "hardware";

**(2)** Electrical or magnetic damage, disturbance of recordings or erasure of electronic recordings, except as provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**. We will also pay for direct loss caused by lightning;

**(3)** Mechanical breakdown or malfunction, component failure, faulty installation or blowouts; except as provided for under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**; or

**(4)** Faulty instruction or incorrect usage, including changes in arrangements or parts.

**p. Loss of Warranty**

Loss of warranty or similar future or potential benefit even when following a covered loss or covered damage.

**(1)** Loss of this type does not meet direct physical loss or damage.

**(2)** We agree that reasonable repair or reconditioning measures be pursued to ensure soundness of property after loss or damage:

**(a)** Where proper and adequate report or reconditioning method is debated, you and we agree to follow the usual and customary industry repair and reconditioning practices; or

**(b)** For situations not resolved by paragraph **(a)** above, either party may demand that the matter be resolved through Appraisal as provided for elsewhere in the Coverage Form.

**q. Continuous or Repeated Seepage or Leakage of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**r. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you by a person or organization with authorized access to that "computer equipment", except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraph **b.**.

**s. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account; which instruction proves to be fraudulent, except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraphs **a.(2)** and **b.**.

**3.** We will not pay for loss or damage caused by or resulting from paragraphs **a.**, **b.** and **c.** below. But if an excluded cause of loss that is listed in paragraphs **a.**, **b.** and **c.** below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**



OB3 D815660      1001087

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1.** to produce the loss or damage.

**b. Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss or Damage to Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense or increase of Business Income loss caused by or resulting from:

**(1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons;

**(2)** "Suspension", lapse or cancellation of any license, lease or contract. But if the "suspension", lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" in accordance with the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income.**

**(3)** Damage or destruction of "finished stock"; the time required to reproduce "finished stock"; or

**(4)** Any other consequential loss.

Paragraph **5.a.(3)** does not apply to Extra Expense.

**C. Limits of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of **SECTION I - PROPERTY** shown in the Declarations.

**2.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to **SECTION I - PROPERTY, C. Limits of Insurance**:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-Up and Removal;

**c.** Civil Authority;

**d.** Money Orders and Counterfeit Money;

**e.** Forgery or Alteration;

**f.** Ordinance or Law;

**g.** Business Income from Dependent Properties;

**h.** Glass Expenses;

**i.** Fire Protection Equipment Recharge

**j.** Employee Theft;

**k.** Rewards - Arson and Theft;

**l.** Computer Equipment;

**m.** Tenant Signs (Tenants Only);

**n.** Commercial Tools and Small Equipment;

**o.** Installation;

**p.** Fine Arts;

**q.** Sales Representative Samples;

**r.** Leasehold Interest (Tenants Only);

**s.** Unauthorized Business Credit Card Use;

**t.** Deferred Payments;

**391-1003 08 16**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 45 of 81**

155

**u.** Money and Securities;

**v.** Electronic Vandalism;

**w.** Interruption of Computer Operations;

**x.** Theft of Telephonic Services;

**y.** Computer and Funds Transfer Fraud;

**z.** Tenant Building Insurance - When Your Lease Requires You to Provide Insurance; or

**aa.** Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance.

**3. Building Limit - Increase**

If Covered Property is written on a Replacement Cost basis:

**a.** The Limit of Insurance for Buildings will be revised by changes that occurred in the cost of construction during the preceding policy year.

**b.** The amount of increase will be determined by reports of a recognized valuation method.

**c.** We will inform you of such adjusted values. Upon their acceptance, you agree to pay any additional premium for the adjusted limit. Payment of your renewal premium, which includes the revised Limit of Insurance, shall constitute acceptance.

**d.** We will pay the replacement cost value of the damaged portion of the building at the time of loss, but not more than 125% of the Limit of Insurance for Building if:

**(1)** The amount of any loss covered by this Coverage Form exceeds the Limit of Insurance for Building stated in the Declarations for the damaged Building; and

**(2)** The actual repair or replacement is completed within one year of the date of loss.

**e.** The **Building Limit - Increase** clause will not apply if:

**(1)** You do not accept the adjusted value; or

**(2)** You do not inform us of changes to covered Building:

**(a)** Within sixty (60) days of the date any additions, improvements or enlargements to the building are begun, and

**(b)** When the replacement value of the changes are more than 5%of

the Limit of Insurance for the building.

**4. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable limit in **SECTION I - PROPERTY, C. Limit of Insurance**.

**2.** No Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

**a.** Fire Department Service Charge;

**b.** Fire Protection Equipment Recharge;

**c.** Business Income;

**d.** Extra Expense;

**e.** Civil Authority;

**f.** Key Replacement and Lock Repair;

**g.** Deferred Payment;

**h.** Debris Removal;

**i.** Rewards - Arson, Theft and Vandalism;

**j.** ERISA Compliance;

**k.** Preservation of Property;

**l.** Pollutant Clean-Up and Removal;

**m.** Ordinance or Law;

**n.** Leasehold Interest (Tenants Only);

**o.** Unauthorized Business Credit Card Use;

**p.** Business Income from Dependent Properties; and

**q.** Inventory and Loss Appraisal.

**3.** A $250 Deductible applies to the following Coverages:

**a.** Glass - Interior and Exterior; and



OB3 D815660      1001087

**b.** Glass Expenses.

**4.** A $500 Deductible applies to all of the Additional Property Coverages and Extensions of Coverage scheduled on the Declarations, except Equipment Breakdown, unless otherwise indicated in paragraphs **2.**, **3.** or **5.** of this section.

**5.** A $1,000 Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

**a.** Employee Theft (except ERISA Compliance);

**b.** Sales Representative Samples;

**c.** Installation;

**d.** Personal Property Off Premises;

**e.** Personal Property In Transit.

**6.** The Deductible shown in the Declarations for the Equipment Breakdown Additional Coverage applies to the Additional Coverage for Equipment Breakdown.

**7.** Each Deductible shall be applied separately, but only to the coverage specified. The total Deductible for all losses in one occurrence will be the highest Deductible amount that applies to that occurrence.

**8.** The Business Income Waiting Period shown on the Declarations Page for the Business Income and Civil Authority Additional Coverages is applicable in addition to a Deductible.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If you and we disagree on the amount of a covered loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase **SECTION I - PROPERTY, C. Limits of Insurance.** However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter

relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred. The 2 year limitation also applies to indirect or consequential loss covered under this Coverage Form.

**5. Loss Payment**

In the event of loss or damage covered by this Coverage Form:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to paragraph **d.,** subparagraph **(1)(d)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation except as provided in paragraphs **(2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15)** and **(16)** below.

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the loss or damaged property is actually repaired or replaced;

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage; and

**(iii)** Unless the repairs or replacement are completed within 24 months for personal property or for buildings and other real property after the loss or damage, unless extended in writing by us.

However, if the cost to repair or replace a damaged building is $2,500 or less we will determine the value at replacement cost without deduction for depreciation.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of the following amounts:

**(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

**1)** Of comparable material and quality; and

**2)** Used for the same purpose; or

**(ii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new location, the recoverable amount is limited to the cost which would have been incurred had the building been built at the original premises.

**(d)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Declarations indicate the Actual Cash Value applies to Building or Personal Property, paragraph **(1)** above does not apply to that property. Instead, we will determine the value of that property at the actual cash value.

**The Hanover** Insurance Group.

OB3 D815660      1001087

**(3)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts;

**(e)** Works of art, "antiques" or rare articles, including but not limited to, etchings, pictures, statuary, marbles, bronzes, porcelains, glassware and bric-a-brac not otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, x. Fine Arts**; or

**(f)** Commercial Tools and Small Equipment and Contractors Tools and Equipment. This does not apply to your Commercial Tools and Small Equipment permanently installed or exclusively used at the described premises.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenant's Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you, as the tenant, do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in paragraph **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** "Valuable papers and records" at the cost of restoration or replacement, including the cost of data entry, re-programming, computer consultation services and the "media" on which the data or programs reside. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(7)** "Money" at its face value; and

**(8)** "Securities" at their value at the close of business on the day the loss is "discovered".

**(9)** Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, regardless of how that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**(10)** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**(11)** "Finished stock" you manufactured at selling price less discounts and expenses you otherwise would have had.

**(12)** Personal Property in Transit (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight charges and other charges which may have accrued or become legally due since the shipment. If you have no invoice, actual cash value will apply.

**(13)** Precious metals, such as gold, silver and platinum, at the average market cost of replacements on the date of loss, or the actual cost of the replacement, if less.

**(14)** "Fine Arts"

We will pay the lesser of:

**(a)** The market value at the time of loss or damage;

**(b)** The reasonable cost of repair or restoration to the condition immediately before the covered loss or damage; or

**(c)** The cost of replacement with substantially identical property.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive a properly completed sworn proof of loss, provided you have complied with all of the terms of this Coverage Form, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** In settling covered losses involving a party wall, we will pay a proportion of the loss, to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **SECTION III - COMMON POLICY CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to **SECTION I - PROPERTY, C the Limits of Insurance**.

**7. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such leased space is vacant when it does not contain



OB3 D815660    1001087

enough business personal property to conduct customary "operations".

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operation.

**(2)** Buildings under construction or renovation are not considered vacant when customary "operations" cannot be conducted as a direct result of the construction or renovation.

**b. Vacancy Provisions**

If the building or leased space where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage due to freezing, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** "Theft"; or

**(f)** Attempted "theft".

**(2)** With respect to Covered Causes of Loss other than those listed in paragraphs **(a), (b), (c), (d), (e) and (f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Pair, Sets or Parts**

For pairs or sets, we will either:

**(a)** Repair or replace any part to restore the value and condition of the pair or set to that immediately before the covered loss or damage; or

**(b)** Pay the difference between the value of the pair or set before and after the covered loss or damage.

**(c)** Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**F. Property General Conditions**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Form will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the

mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under **SECTION I - PROPERTY:**

**a.** We cover loss or damage commencing:

   **(1)** During the policy period shown in the Declarations; and

   **(2)** Within the coverage territory or, with respect to property "in transit", while it is between points in the coverage territory.

**b.** The coverage territory is:

   **(1)** The United States of America (including its territories and possessions);

   **(2)** Puerto Rico; and

   **(3)** Canada.

**5. Protective Devices**

**a.** If you received a discount to the property premium of this policy because of the existence of one of the following protective devices, you are required to maintain that protective device. Existence of an applicable protective devices credit can be found on the Declarations Page.

**b.** Protective devices include Automatic Sprinkler Systems including related supervisory services, Automatic Fire Alarms and Central Station Security Alarms.

**c.** We will not pay for loss or damage caused by a Covered Cause of Loss which a device is intended to protect against if you:

   **(1)** Knew of any suspension or impairment in any protective device and failed to notify us of that fact; or

   **(2)** Failed to maintain any protective device over which you had control in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**6. Increase in Hazard**

We will not pay for loss or damage when there has been a material increase in hazard that is within your knowledge or control. This condition applies to any and all portions of a claim.

**G. Property Definitions**

**1.** "Accident"

**a.** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

   **(1)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **(2)** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   **(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   **(4)** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **(5)** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**b.** None of the following is an "accident":

   **(1)** Defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within

**The Hanover Insurance Group™**

OB3 D815660      1001087

or involving data or "media" of any kind; or

**(2)** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

**2.** "Antique" or "antiques" means an object having value because of its:

**a.** Craftsmanship is in the style or fashion of former times; and

**b.** Age is 100 years old or older.

**3.** "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), Saas (software as a service) and NaaS (network as a service). This includes business models know as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

**4.** "Computer equipment" means:

**a.** "Hardware" and related component parts. Component parts include but are not limited to modems, routers, printers, keyboards, monitors, and scanners;

**b.** "Software"; and

**c.** "Protection and control equipment".

"Computer equipment" does not mean "Computer equipment" used to operate production-type machinery or equipment.

**5.** "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether employed by you or not, into "hardware" or "software", a Web site, or a computer network and that results in but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality or performance of "software";

**c.** Observation, scanning, or copying of "electronic data", "programs and applications", and "proprietary programs";

**d.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"'; or

**e.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**6.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

**7.** "Computer Virus" means the introduction into "hardware", "software", computer network, or Web site of any malicious, self-replicating electronic data processing code or other code and that is intended to result in, but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";

**c.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

**d.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**8.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**9.** "Covered equipment" means Covered Property which, during normal usage, operates under vacuum or pressure, other than the weight of its contents, or that generates, transmits or utilizes energy.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

"Covered equipment" does not include:

**a.** Structure, foundation, cabinet or compartment;

**b.** Insulating or refractory material;

**c.** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

**d.** Water piping other than boiler feedwater piping, boiler condensate return piping or

water piping forming a part of a refrigerating or air conditioning system;

**e.** Dragline, excavation equipment or construction equipment;

**f.** Vehicle, meaning any machine or apparatus that is used for transportation or moves under its own power or any equipment mounted on a vehicle. Vehicle includes but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle;

**g.** Equipment manufactured by you for sale or

**h.** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft.

**10.** "Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in "computer equipment".

**11.** "Data records" means files, documents and information in an electronic format and that are stored within "electronic data".

**12.** "Denial of service attack" means the malicious direction or a high volume of worthless inquiries to website or e-mail destinations, effectively denying or limiting legitimate access regardless of whether or not damage to "computer equipment" results.

**13.** "Dependent property" or "dependent properties" means the property owned by others whom you depend upon to:

**a.** Deliver materials or services to you or to others for your account. But services do not mean water supply services, wastewater removal services, communication supply services or power supply services;

**b.** Accept your products or services;

**c.** Manufacture products for delivery to your customers under contract of sale; or

**d.** Attract customers to your business.

The "dependent property" must be located in the coverage territory of this Coverage Form.

**14.** "Discover" or "Discovered" means:

**a.** The time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be

incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details may not be known.

**b.** "Discover" or "Discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

**15.** "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

**16.** "Electronic circuitry impairment"

**a.** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **b.**, **c.** and **d.** below.

**b.** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment."

**c.** The "covered equipment" must be owned or leased by you, or operated under your control.

**d.** None of the following is an "electronic circuitry impairment":

**(1)** Any condition that can be reasonably remedied by:

**(a)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

**(b)** Rebooting, reloading or updating software or firmware; or

**(c)** Providing necessary power or supply.

**(2)** Any condition caused by or related to:

**(a)** Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

**(b)** Insufficient size, capability or capacity of the "covered equipment."

OB3 D815660        1001087

**(3)** Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

**17.** "Electronic data" means files, documents, information and "programs and applications" in an electronic format and that are stored on "media".

**18.** "Electronic Vandalism" means "computer hacking", "computer virus" or a "denial of service attack". "Electronic vandalism" does not include the "theft" of any property or services.

**19.** "Employee" or "employees" means:

   **a.** Any natural person or persons:

   **(1)** While in your service and for 30 days after termination of service; and

   **(2)** Who you compensate directly by salary, wages or commissions; and

   **(3)** Who you have the right to direct and control while performing services for you;

   **b.** Any natural person who is furnished temporarily to you:

   **(1)** To substitute for a permanent employee, as defined in paragraph **a.** above, who is on leave; or

   **(2)** To meet seasonal or short-term workload conditions;

   **c.** Any natural person or persons who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in paragraph **b.** above;

   **d.** Any natural person who is a former "employee", partner, "manager", director or trustee retained as a consultant while performing services for you; or

   **e.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody or property outside the described premises;

   **f.** Any natural person who is:

   **(1)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

   **(2)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

   "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in paragraph **14.** of this section.

**20.** "Financial institution" means:

   **a.** With regard to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, s. Money and Securities**:

   **(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

   **(2)** An insurance company.

   **b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, hh. Computer and Funds Transfer Fraud**:

   **(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

   **(2)** An insurance company; or

   **(3)** A stock brokerage firm or investment company.

   **c.** Other than **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities** and **hh. Computer and Funds Transfer Fraud**, any financial institution.

**21.** "Fine arts" means paintings, etchings, pictures, tapestries, rare art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" jewelry, bric-a-brac, porcelains and similar property of rarity, historical value or artistic merit.

**22.** "Finished stock" means stock you have manufactured. "Finished stock" also includes whiskey and alcoholic products being aged.

   "Finished stock" does not include "stock" you have manufactured that is held for sale on the premises of any retail outlet.

**23.** "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

   **a.** Surface water or waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not (including storm surge);

391-1003 08 16        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 55 of 81

165

**b.** The unusual or rapid accumulation of runoff of surface waters from any source;

**c.** Mudslides or mudflows which are caused by "flood" water. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

**d.** The release of water impounded by a dam, levee, dike, seawall or "flood" control device, whether driven by wind or not (including storm surge).

When a "flood" is a continuous or protracted event it will constitute a single "flood" occurrence.

**24.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**25.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, tele facsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in **SECTION I - PROPERTY**, **A. Coverage**, **5. Additional Coverages**, **k. Forgery or Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent.

**26.** "Funds" means "money" and "securities".

**27.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

**28.** "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according the instructions, and producing desired results. "Hardware" includes but is not limited to:

**a.** Mainframe and mid-range computers and servers;

**b.** Personal computers and workstations;

**c.** Portable electronic devices. Portable electronic devices include laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data; and

**d.** Peripheral data processing equipment, including but not limited to printers, keyboards, monitors, and modems.

"Hardware" does not mean electronic items that are not similar to the items listed in **a.**, **b.**, **c.** and **.d.** above. "Hardware" does not include:

**e.** Diagnostic equipment;

**f.** Electronic items that contain a computer to perform functions other than "hardware"; and

**g.** Peripheral data processing equipment valued more than the "hardware" itself.

**29.** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**30.** "In transit" means in the course of shipment from or to the premises shown in the Declarations. It includes such shipments while temporarily stopped or delayed, incidental to the delivery.

**31.** "Manager" or "managers" means a person or persons serving in a directorial capacity for a limited liability company (LLC).

**32.** "Media" means an instrument that is used with "hardware" and on which "electronic data", "programs and applications", and "proprietary programs" can be recorded or stored. "Media" includes, but is not limited to, films, tapes, cards, discs, drums, cartridges, cells, DVDs, CD-ROMs and other portable data devices.

**33.** "Member" or "Members" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**34.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property away from the described premises.

**35.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value;

**b.** Traveler's checks and money orders held for sale to the public; and

**c.** In addition, includes:

**391-1003 08 16**   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   **Page 56 of 81**

166

**(1)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft including ERISA Compliance** and **k. Forgery or Alteration,** deposits in your account at any "financial institution"; and

**(2)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage hh. Computer and Funds Transfer Fraud,** deposits in your account at a "financial institution" as defined in **SECTION I - PROPERTY, G. Property Definitions**, paragraph **19.b..**

**36.** "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments," all will be considered "one equipment breakdown." All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown."

**37.** "Operations" means your business activities occurring at the described premises.

**38.** "Other property" means tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, "electronic data" or any property specifically excluded under this Coverage Form.

**39.** "Payment processing device" means any electronic device used to process credit, debit or charge card transactions, including but not limited to, digital pen pad devices, PIN pad devices, Automatic Teller Machines (ATMs), credit card processing machines.

**40.** "Payroll expense":

**a.** Means payroll expenses for all your "employees" except:

**(1)** Officers;

**(2)** Executive;

**(3)** Department Managers;

**(4)** "Employees" under contract; and

**(5)** Additional Exemptions shown in the Declarations as:

**(a)** Job classifications; or

**(b)** "Employees".

**b.** Includes:

**(1)** Payroll;

**(2)** Employee Benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers' Compensation premiums.

**41.** "Period of Restoration"

**a.** Means the period of time that:

**(1)** Begins:

**(a)** After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location; or

**(c)** Exhaustion of the number of consecutive months as shown on the Policy Declarations Page.

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**42.** "Perishable goods" means personal property:

**a.** Maintained under controlled temperature or humidity conditions for preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

43. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

44. "Programs and applications" means operating programs and applications that you purchase and that are:

   a. Stored on "media"; or

   b. Pre-installed and stored in "hardware".

   Applications include, but are not limited to, programs for word processing, spreadsheet calculations, and graphic design.

45. "Proprietary programs" means proprietary operating programs and applications that you developed or that you had developed specifically for use in your "operations" and that are:

   a. Stored on "media"; or

   b. Installed and stored in "hardware".

46. "Protection and control equipment" means:

   a. Air conditioning or other cooling equipment used exclusively in the operation of the "hardware";

   b. Fire protection equipment used for the protection of the "hardware", including automatic and manual fire suppression equipment and smoke and heat detectors; and

   c. Uninterruptible power supply system, line conditioner, and voltage regulator.

47. "Rental Value" means Business Income that consists of:

   a. New Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

48. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

49. "Software" means;

   a. "Media";

   b. "Electronic Data";

   c. "Programs and applications"; and

   d. "Proprietary programs".

50. "Specified Causes of Loss" means the following:

   Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into man-made underground cavities.

   b. Falling objects does not include loss of or damage to:

      (1) Personal property in the open; or

      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. Water damage means

      (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

      (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal

391-1003 08 16       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 58 of 81

168

The **Hanover** Insurance Group.

OB3 D815660      1001087

sanitary sewer system, if the breakage or cracking is caused by wear or tear.

But water damage does not include loss or damage otherwise excluded in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1. g. Water.**. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from breaking apart of cracking of a pipe which was caused by or related to weather-induced "flood" water, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced "flood" water which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in paragraphs **(1)** or **(2)** above of this definition of "specified causes of loss", such water is not subject to the provisions of **SECTION I - PROPERTY, B. Exclusions,** paragraph **1., g. Water**, which preclude coverage for surface water or water under the ground surface.

51. "Stock" means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

52. "Suspension" means:

    **a.** The partial slowdown or complete cessation of your business activities; or

    **b.** Part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

53. "Telephonic services" means use of your:

    **a.** Telephone services;

    **b.** Telephone credit cards; or

    **c.** Telephone access cards.

54. "Theft" means the unlawful taking of property to the deprivation of the Insured.

55. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities" by means of:

    **a.** Electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    **b.** Written instructions (other than those described in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

56. "Valuable papers and records" means:

    **a.** Inscribed, printed or written:

        **(1)** Documents;

        **(2)** Manuscripts; and

        **(3)** Records;

        including abstracts, books, deeds, drawings, films, maps or mortgages;

    **b.** If you are a Printer, Publisher or Graphic Artist by trade, "valuable papers and records" means negatives, positives, artwork, separations, plates, dies, molds, forms, stock manuscripts and other similar property usual to the graphic arts, printing or publishing industry, including those which exist on electronic or magnetic "media", other than prepackaged software programs.

    But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

**A. Coverages**

    **1. Business Liability**

        **a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

            **(1)** The amount we will pay for damages is limited as described in **SECTION II - LIABILITY, D - Liability and Medical Expenses Limits of Insurance;** and

            **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of

**391-1003 08 16**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 59 of 81**

169

judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **f. Coverage Extension - Supplementary Payments**.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under **C. Who Is An Insured**, paragraph **1.** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **C. Who Is An Insured,** paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under **C. Who Is An Insured,** Paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all or any part of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $2500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any

The Hanover Insurance Group.

OB3 D815660        1001087

prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**1)** Cooperate with us in the investigation, settlement or defense of the "suit";

**2)** Immediately send us copies of any demands, notices, summonses or

legal papers received in connection with the "suit";

**3)** Notify any other insurer whose coverage is available to the indemnitee; and

**4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**1)** Obtain records and other information related to the "suit"; and

**2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of **SECTION II - LIABILITY, B. Exclusions, 1. Applicable to Business Liability Coverage, b. Contractual Liability,** paragraph **(2),** such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(g)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(h)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limits of Insurance as described in **D. Liability and Medical Expenses Limits of Insurance.**

**c.** We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**(4)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(5)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in paragraphs **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

For the purpose of this exclusion, permitting a person to bring alcoholic beverages on your premises for consumption on your premises, whether or



OB3 D815660        1001087

not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar local, state, federal or foreign law or regulation.

**e. Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured;  or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(3)** Whether the insured may be liable as an employer or in any other capacity; and

**(4)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      **(ii)** "Bodily injury" or "property damage" for which you  may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      **(i)** Any insured; or

      **(ii)** Any person or organization for whom you may be legally responsible; or

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions

necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading and unloading".

This paragraph **g. (1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This paragraph **g. (1)** does not apply to:

**(a)** The use of another's advertising idea in your "advertisement"; or

**(b)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

**The Hanover**
Insurance Group.

OB3 D815660     1001087

This paragraph **g. (2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This paragraph **g. (2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

    **(i)** Less than 51 feet long; and

    **(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft (other than "unmanned-aircraft") or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

    **(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    **(ii)** The operation of any of the following machinery or equipment:

        **1)** Cherry pickers and similar devices mounted on automobile or truck

chassis and used to raise or lower workers; and

        **2)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(f)** An aircraft (other than "unmanned aircraft") that is:

    **(i)** Chartered by, loaned to, or hired by you with a paid crew; and

    **(ii)** Not owned by any insured.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage", "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction:

**(1)** By you; or

**(2)** On your behalf; or

**(3)** From whom any of you assumed liability by reason of a contract or agreement,

regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

**(4)** Legal, accounting or advertising services, notary, title abstract, tax preparation, real estate, stockbroker, publishing, architects or insurance services;

**(5)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(6)** Supervisory, inspection or engineering services;

**(7)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(8)** Any health or therapeutic service treatment, advice or instruction;

**(9)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including use or exposure to any sun lamp, tanning booth or other similar appliance;

**(10)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(11)** Body piercing services;

**(12)** Services in the practice of pharmacy;

**(13)** Management, Human Resource, Testing, Media or Public Relations consulting services.

This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**k.  Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to **Damage to Premises Rented to You** as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limit Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**l.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which



OB3 D815660       1001087

the damage arises was performed on your behalf by a subcontractor.

**n.   Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.   Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.   Aircraft Products, Grounding and Testing**

**(1)** "Aircraft products " or reliance upon any representation or warranty made with such product;

**(2)** The "grounding" of any aircraft; or

**(3)** The "testing" of any aircraft.

For purposes of this Exclusion, the following definitions apply:

**(4)** "Aircraft Products" means:

**(a)** Aircraft, including but not limited to missiles, spacecraft, or any other aircraft goods or products you manufacture, sell, handle or distribute;

**(b)** Aircraft and any ground support or control equipment used in connection therewith;

**(c)** Any product provided by the insured and installed or used in connection with any aircraft;

**(d)** Any tooling used in respect to any aircraft;

**(e)** Training and navigational aids, instructions, manuals, blueprints, engineering or other data in connection with any aircraft;

**(f)** Any advice, service or labor supplied with any aircraft; or

**(g)** Services you or others trading under your name provide or recommend for use in the manufacture, repair, operation, maintenance or use of any aircraft.

**(5)** "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, due to the existence of or alleged or suspected existence of any defect, fault or condition:

**(a)** In such aircraft or any part sold, handled or distributed by you or that is manufactured, assembled or processed by any other person or organization according to your specifications, plans, suggestions, orders or drawings; or

**(b)** With tools, machinery or other equipment furnished to such persons or organizations by you;

whether such withdrawn aircraft are owned or operated by the same or different persons or organizations.

"Grounding" shall be deemed to commence on the date of an "occurrence" which discloses the necessity of "grounding" or on the date an aircraft is first withdrawn from service because of such condition, whichever comes first.

**(6)** "Testing" means examination, observation, evaluation or measuring of the performance of "aircraft products", while either in the air or on the ground.

**q.   Distribution of Material in Violation of Statutes**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any other laws, statutes ordinances or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**r.   Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraphs **(1)** or **(2)** above.

However, unless paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

Exclusions **c., d., e., g., h.,** and **k., l.,   m., n.** and **o.** above do not apply to damage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Damage to Premises Rented to You Limit of Insurance applies to this coverage as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**2.   Additional Exclusions Applicable Only to "Personal and Advertising Injury"**

This insurance does not apply to:

**a.   Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.   Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.   Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d.   Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.   Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.



OB3 D815660        1001087

**f.  Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.  Quality or Performance of Goods-Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.  Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.  Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to **F. Liability and Medical Expenses Definitions, 15. "Personal and Advertising Injury"** , paragraphs **a.**, **b.** and **c.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

**j.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**k.  Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**l.  Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

**m.  Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another' s advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**n.  Unauthorized Use of Another's Name of Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**3.  Additional Exclusions Applicable to Medical Expenses Coverage Only**

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for

the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletic Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.  Products-Completed Operations Hazard**

Included within the "products - completed operations hazard".

**g.  Otherwise Excluded**

Otherwise Excluded under **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage.**

**4.  Additional Exclusions Applicable To Both Business Liability Coverage and Medical Expenses Coverage:**

**Nuclear Energy Liability Exclusion**

This insurance does not apply:

**(1)**  Under **Business Liability Coverage**, to "bodily injury" or "property damage":

**(a)**  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(b)**  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(i)**  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(ii)**  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(2)**  Under **Medical Expenses Coverage,** to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear

material" and arising out of the operation of a "nuclear facility" by any person or organization.

**(1)**  Under **Business Liability Coverage**, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(a)**  The "nuclear material":

**(i)**  Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(ii)**  Has been discharged or dispersed therefrom;

**(b)**  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(c)**  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**(2)**  As used in this exclusion:

**(a)**  "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(b)**  "Hazardous properties" include radioactive, toxic or explosive properties;

**(c)**  "Nuclear facility" means:

**(i)**  Any "nuclear reactor";

**(ii)**  Any equipment or device designed or used for:

**1)**  Separating the isotopes of uranium or plutonium;

**2)**  Processing or utilizing "spent fuel"; or

**3)**  Handling, processing or packaging "waste";

**(iii)**  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the

The Hanover Insurance Group™
OB3 D815660    1001087

custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(iv)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(d)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(e)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(f)** "Property damage" includes all forms of radioactive contamination of property.

**(g)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(h)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(i)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(j)** "Waste" means any waste material:

**(i)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(ii)** Resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs **(i)** and **(ii)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business ;

**(b)** To the spouse, child, parent, brother or sister of that co-

"employee" as a consequence of paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(1)(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** Any organization you newly acquire or form, acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Business Liability Coverage does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(2)** "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability and Medical Expenses Limits of Insurance**

**1.** The Limits of Insurance under **SECTION II - LIABILITY** shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** Subject to the Aggregate Limit identified in paragraph **5.** below, the most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability And Medical Expenses Limit shown in the Declarations.

**3.** Subject to the Liability And Medical Expenses Limit, the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4.** The Damage to Premises Rented to You Limit shown in the Declarations is the most we will pay for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner.

**5. Aggregate Limits**

**a.** The most we will pay for:

**(1)** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability And Medical Expenses Limit.

**(2)** All:

**(a)** "Bodily injury" and "property damage" except damages because of "bodily injury" and



OB3 D815660      1001087

"property damage" included in the "products-completed operations hazard";

**(a)** Plus medical expenses;

**(b)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability And Medical Expenses Limit.

**b.** The Aggregate Limits of Insurance apply separately to each of your "locations" owned by or rented to you. "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**6.** The Limits of Insurance of **SECTION II - LIABILITY** apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability and Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation of Insureds**

Except with respect to the Limits of Insurance under **SECTION II - LIABILITY,** and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability and Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

391-1003 08 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 74 of 81

184

The **Hanover** Insurance Group™

OB3 D815660        1001087

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph **(2)** above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in paragraphs **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in paragraphs **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility

law or other motor vehicle insurance law in the state where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products - completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.



OB3 D815660        1001087

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Unmanned aircraft" means an aircraft that is not:

   **a.** Designed;

   **b.** Manufactured; or

   **c.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **(2)** The providing of or failure to provide warnings or instructions.

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

     **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

       **(a)** Seasonal unoccupancy; or

       **(b)** Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

     **(2)** After damage by a covered cause of loss, permanent repairs to the building:

       **(a)** Have not started, and

       **(b)** Have not been contracted for,

      within 30 days of initial payment of loss.

(3) The building has:

  (a) An outstanding order to vacate;

  (b) An outstanding demolition order; or

  (c) Been declared unsafe by governmental authority.

(4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

(5) Failure to:

  (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

  (b) Pay property taxes that are owed and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward. We have the right to make copies of these books and records.

**E. Inspections and Surveys**

**1.** We have the right but not the duty to:

  **a.** Make inspections and surveys at any time;

  **b.** Give you reports on the conditions we find; and

  **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

  **a.** Are safe and healthful; or

  **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, you may choose only one of these coverages to apply to that loss.

OB3 D815660     1001087

1. **SECTION I - PROPERTY**, if two or more of this coverage part's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

2. **SECTION II - LIABILITY**, it is our stated intent that the various Coverage Parts, forms, endorsements or policies issued to the named insured by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim, "suit", "occurrence", offense, accident, "wrongful act" or loss. We will not pay more than the actual amount of the loss or damage.

   If this Coverage Part and any other Coverage Part, form, endorsement or policy issued to the named insured by us, or any company affiliated with us, apply to the same claim, "suit", occurrence, offense, accident, "wrongful act" or loss, the maximum Limit of Insurance under all such Coverage Parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one Coverage Part, form, endorsement or policy.

   This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. **SECTION I - PROPERTY**

   If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But, we will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY**.

2. **SECTION II - LIABILITY**

   If other valid and collectible insurance is available to the insured for a loss we cover under **SECTION II - LIABILITY**, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

However, if you agree in a written contract, written agreement, or written permit that the insurance provided to any person or organization included as an Additional Insured under this Coverage Part is primary and non-contributory, we will not seek contribution from any other insurance available to that Additional Insured which covers the Additional Insured as a Named Insured except:

(1) For the sole negligence of the Additional Insured; or

(2) When the Additional Insured is an Additional Insured under another liability policy.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Property Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION II - LIABILITY, Exclusion g. Aircraft, Auto or Watercraft**; and

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **SECTION II - LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the

391-1003 08 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 79 of 81

189

insured's rights against all those other insurers.

**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**d.** We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage.

**e. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable limits of insurance of all insurers.

**f.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the

premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that is not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer of Rights of Recovery Against Others to Us**

**1.** Applicable to **SECTION I - PROPERTY** Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:



OB3 D815660        1001087

a.  Prior to a loss to your Covered Property.

b.  After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   (1) Someone insured by this insurance;

   (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you; or

   (3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to **SECTION II - LIABILITY** Coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair such rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

We waive any right of recovery we may have against any person or organization with whom you have a written contract, permit or agreement to waive any rights of recovery against such person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

This condition does not apply to Medical Expenses Coverage.

**L.  Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while that legal representative is acting within the scope of their duties as your legal representative. Until your legal representative is appointed, anyone with proper temporary custody of your property will have your rights and duties but only with respect to that property.

**391-1003 08 16**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 81 of 81**

191

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - FUNGI OR BACTERIA (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to **SECTION II - LIABILITY**, **B. Exclusions, 1. Applicable to Business Liability Coverage:**

**"Fungi" or Bacteria**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** For the purpose of this endorsement, the following definition is added to **Section II - Liability** Paragraph **F., Liability and Medical Expenses Definitions**:

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

391-1102 08 16        Includes copyrighted materials of Insurance Services Offices, Inc., with its   permission.        Page 1 of 1



OB3 D815660          1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT - LIMITS OF INSURANCE PERSONAL AND ADVERTISING INJURY SEPARATE LIMIT

This endorsement modifies insurance provided under the  following:

BUSINESSOWNERS COVERAGE FORM

**A.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** Paragraph **2.** is replaced with the following:

    **2.** The most we will pay for the sum of all damages because of all "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence" are the Liability limit and the Medical Expenses limit, respectively, shown in the Declarations.

    But the most we will pay for all medical expenses because of "bodily injury" sustained by any  one person  is the Medical Expenses limit shown in the Declarations.

**B.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** the following is added:

    The most we will pay for the sum of all damages because of "personal and advertising injury" sustained by any one person or organization is the same as the Business Liability Limit shown in the Declarations.

**391-1375 01  10**    Includes copyrighted material of Insurance Services Office.,  Inc., with its permission    **Page 1 of 1**

193

175



OB3 D815660        1001087

THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Schedule**

| Disclosure of Premium: | |
|---|---|
| Total Terrorism Premium | $ 25.00 |
| Fire Following Premium | $ 15.00 |
| Other than Fire Following Premium | $ 10.00 |

**Disclosure of Terrorism Coverage Available**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

> Any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

The premium charged for this coverage is provided in the Schedule above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully** .

**Note for Commercial Property or Commercial Inland Marine Policyholders in Standard Fire States:**

In your state, a terrorism exclusion makes an exception for (and therefore provides coverage for) fire losses resulting from an act of terrorism. If you reject the offer of terrorism coverage, therefore, that rejection does not apply to fire losses resulting from an act of terrorism. Coverage for such fire losses will be provided in your policy. The additional premium just for such fire coverage is shown in the Schedule above.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government through the Department of the Treasury may pay a share of terrorism losses insured under the federal program under a formula set forth in the Act. Under this formula, the United States government generally reimburses the following percentage of covered terrorism loss which exceeds the statutorily established deductible paid by the insurance company providing the coverage: 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020.

**401-1374 01 15**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 1 of 2**

**Cap on Insurer Participation in Payment of Terrorism Losses**

The Act contains a $100 billion cap that limits the reimbursement by the United States government as well as insurers' liability for losses resulting from certified acts of terrorism. If the aggregate of insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Rejection of Terrorism Insurance Coverage**

☐    I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

_____

Applicant/Policyholder Signature

_____

**Print Name**

_____

**Date**

CITIZENS INSURANCE COMPANY OF   AMERICA

**Insurance Company**
OB3-D815660-00

_____

**Quote or Policy Number**

**401-1374 01 15**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 2 of 2**

195



OB3 D815660        1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT  CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not  covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F -  DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of  Insurance | $ | |
| Data Breach Expense Coverages Aggregate Sublimit of  Insurance | $ | |
| Additional Expense Coverages Aggregate Sublimit of  Insurance | $ | |
| Data Breach Coverage Deductible | $ | |
| Cyber Business Interruption Waiting Period  Deductible | | Hours |
| Premium: | $ | |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach  Expense Coverages, Additional Expense Coverages**

**a. Data Breach Services**

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursu- ant to "breach notice  laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data  breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the  main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her  name or on his or her  behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal  identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only  available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**b. Data Breach Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

391-1440 01 15        Includes copyrighted material of Insurance Services Office, with its permission.        Page 1 of 11

196

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1), b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c. Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the Limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1), c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom

391-1440 01 15          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 2 of 11

197

The Hanover Insurance Group.

OB3 D815660      1001087

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a **"regulatory investigation"** regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

## SECTION B - EXCLUSIONS

1. The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

   This insurance does not apply to :

   **a. Costs to Research or Correct Deficiencies**

   Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

   This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

   **b. Criminal Investigation or Proceedings**

   Any costs arising out of criminal investigations or proceedings.

   **c. Fines, Penalties or Assessments**

   Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

   **d. Defense or Legal Liability**

   Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided in **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

391-1440 01 15      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 3 of 11

198

**e.   Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f.   Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES,** Paragraph **1.b.(5)   Cyber Business Interruption and Extra Expense**.

**g.   Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h.   Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i.   Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j.   Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k.   Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l.   Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m.   Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n.   Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other

cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o.   Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p.   Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q   Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r   Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s.   War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a.   Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b.   Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c.   Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

391-1440 01 15        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 4 of 11

199



OB3 D815660     1001087

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

## SECTION C - LIMITS OF INSURANCE

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of the covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

a. You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

b. You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

c. A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

d. Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

e. Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

## SECTION D - DEDUCTIBLE

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

391-1440 01 15     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 5 of 11

200

# SECTION E - CONDITIONS

## 1. Duties in the Event of a Data Breach.

You must see that the following are done in the event of a "data breach":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

**c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

(1) The method of "data breach";

(2) The approximate date and time of the "data breach";

(3) The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

(4) A detailed description of the type and nature of the information that was compromised;

(5) Whether or not the information was encrypted, and, if so, the level of encryption;

(6) Whether or not law enforcement has been notified;

(7) If available, the states in which the "potentially-identified persons" are domiciled;

(8) If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

**d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.** Preserve all evidence of the "data breach".

**f.** Permit us to inspect the property and records proving the "data breach".

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

## 2. Concealment, Misrepresentation or Fraud

This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

## 3. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## 4. Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

## 5. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

## 6. Liberalization

If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

The **Hanover**
Insurance Group™

OB3 D815660       1001087

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

**a.** If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a  Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b.  Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss.

**b.** After a loss only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

**a.** Physical security for your premises, computer systems and hard copy files;

**b.** "Computer" and Internet security;

**c.** Periodic backups of computer data;

**d.** Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

**e.** Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

391-1440 01 15       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 7 of 11

202

a. The exact list of "potentially-identified persons" to be notified, including contact information.

b. Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

a. We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

b. We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

(1) Such alternate service provider(s) must be approved by us; and

(2) Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

c. You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

a. The effectiveness of data breach services depends on your cooperation and assistance.

b. All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

c. We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

d. We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

e. Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".

391-1440 01 15          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 8 of 11

203



OB3 D815660        1001087

**3.  Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

**4.  Business Income**

"Business Income" means your:

**a.**  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.**  Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

**5.  Business Operations**

"Business Operations" means your usual and regular business activities.

**6.  Computer**

"Computer" means a device or   group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can  be operated and viewed.

**7.  Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation  of a "system".

**8.  Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed  or have been processed in a "computer".

**9.  Data Breach**

"Data breach" means:

**a.**  The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.**  Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee"  which

directly results in the unauthorized disclosure of "private personal data";

**c.**  The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.**  The failure or violation of the security of your "system" including the impairment or denial of access to your "system",  including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.**  The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.**  Disposal or abandonment of   "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)**  Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

**(2)**  Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.**  The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach"   that   are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

**10.  Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us  or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

391-1440 01 15        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 9 of 11

204

## 11. Electronic Data

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

## 12. Expense

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

## 13. Extra Expense

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

## 14. Fines, Penalties or Assessments

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

## 15. Identified Person

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

## 16. Identity Theft

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

## 17. Media

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

## 18. Network

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

## 19. Period of Restoration

"Period of Restoration" means:

**a.** The period of time that begins:

**(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

**(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

**(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

**(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

## 20. Policy Period

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.

391-1440 01 15            Includes copyrighted material of Insurance Services Office, Inc., with its permission.            Page 10 of 11

205



OB3 D815660      1001087

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".

391-1440 01 15          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 11 of 11

206

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

    Includes copyrighted material of Insurance Services Office, Inc., with its permission

**The Hanover**
**Insurance Group.**

OB3 D815660          1001087

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft?  Do you  need expert  assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity  Theft  911 give you one-on-one assistance in the following  situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the  risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will  guide  you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive  one year of  credit  monitoring, as well as free fraud monitoring of over 1,000 public  databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much  more.

Keep this access information handy in case you ever need help with an identity-related   problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes  only.

**391-1585 12 11**          Copyright 2009, The Hanover Insurance  Group          **Page 1 of 1**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A.** **SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2.** **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**a.** This Coverage Form; or

**b.** A claim under this Coverage Form.

**B.** **SECTION E - CONDITIONS**, paragraph **18.** is replaced by the following:

**18.** **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written request for an appraisal of the loss. If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OB3 D815660        1001087

# CYBER LIABILITY COVERAGE PART

| CLAIMS-MADE WARNING |
|---|
| THIS COVERAGE PART INCLUDES COVERAGES WRITTEN ON A CLAIMS-MADE BASIS UNDER INSURING AGREEMENTS A. AND B. SUBJECT TO ITS TERMS, CLAIMS-MADE COVERAGE APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS |

| "DEFENSE EXPENSES" WITHIN LIMITS AND DEDUCTIBLE |
|---|
| THE LIMITS OF LIABILITY WILL BE REDUCED AND CAN BE COMPLETELY EXHAUSTED BY THE PAYMENT OF COVERED "DEFENSE EXPENSES". IN THE EVENT THAT THE LIMIT OF LIABILITY IS EXHAUSTED, THE "INSURER" SHALL NOT BE LIABLE FOR "DEFENSE EXPENSES", JUDGMENTS OR SETTLEMENTS IN EXCESS OF THE APPLICABLE LIMIT. INSURING AGREEMENTS A. AND B. ARE SUBJECT TO DEDUCTIBLE AMOUNTS STATED IN THE DECLARATIONS. AMOUNTS INCURRED FOR "DEFENSE EXPENSES" ARE SUBJECT TO THE APPLICABLE DEDUCTIBLE |

Words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IX - DEFINITIONS**.

## SECTION I - INSURING AGREEMENTS

### A. Privacy and Security Liability

The "insurer" will pay on behalf of the "insured", "loss" which the "insured" is legally obligated to pay due to a "claim" first made against the "insured" during the "policy period", or Extended Reporting Period if applicable, and which arises out of a "Privacy Breach" or a "Security Breach" to which this insurance applies.

### B. Cyber Media Liability

The "insurer" will pay on behalf of the "insured", "loss" which the "insured" is legally obligated to pay due to a "claim" first made against the "insured" during the "policy period", or Extended Reporting Period if applicable, and which arises out of a "Cyber Media Breach" to which this insurance applies.

With respect to **Insuring Agreements A.** and **B.** above, this insurance applies to "Privacy Breach", "Security Breach" or "Cyber Media Breach" only if the "Privacy Breach", "Security Breach" or "Cyber Media Breach" did not occur before the Retroactive Date shown in the Cyber Declarations or after the end of the "policy period". The Retroactive Date is the specific date shown in **Item 4.** of the Cyber Declarations. If 'none' or no date is entered, the Retroactive Date will be the same as the policy inception date shown in **Item 2.** of the Cyber Declarations.

## SECTION II - EXCLUSIONS

This insurance does not apply to any "loss" or "claim":

### A Prior Notice

Based upon, arising out of or in any way related to any "Security Breach", "Privacy Breach",

"Cyber Media Breach", investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice given to any other insurer, under any similar prior Policy or Coverage Part of which this Policy or Coverage Part is a direct or indirect renewal or replacement.

### B Past Events

Based upon, arising out of or in any way related to any "Security Breach", "Privacy Breach", "Cyber Media Breach", investigation, proceeding, act, event, result, damage, transaction, decision, fact, circumstance or situation which occurred, in whole or in part, prior:

**1.** To the applicable Retroactive Date set forth in **Item 4.** of the Cyber Declarations; or

**2.** To the date an entity became a "subsidiary".

### C Bodily Injury or Property Damage

For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of property that is not physically damaged; or for bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual, however this Exclusion shall not apply to "loss" due to a "claim" for any mental anguish, humiliation or emotional distress resulting from a "Privacy Breach" or "Cyber Media Breach".

### D Conduct

Based upon, arising out of or in any way related to any dishonest or fraudulent act or omission, or a willful violation of any statute or regulation. However, this Exclusion shall not apply to "defense expenses" unless and until a final or non-appealable judgment or adjudication in any underlying proceeding or action establishes such an act or omission or violation.

391-1801 01 15          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 10

210

177

No conduct pertaining to any "insured individual" shall be imputed to any other "insured individual" for the purpose of determining the applicability of this exclusion. Any conduct pertaining to any past, present or future "executive" of an "insured entity" shall be imputed to such "insured entity" and its "subsidiaries".

**E  Contract**

Based upon, arising out of or in any way related to liability assumed through any oral or written contract or agreement to which an "insured" is a party; however, this Exclusion shall not apply to a "Security Breach" or "Privacy Breach".

**F  Pollution**

Based upon, arising out of or in any way related to:

The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. "Loss", cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

2. Any regulation, direction, request or order by or on behalf of a governmental authority to test for, monitor, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**G.  Nuclear**

Based upon, arising out of or in any way related to the radioactive, toxic, or explosive properties of nuclear material which includes, but is not limited to, Source Material, Special Nuclear Material and Byproduct Material as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto, and any similar provisions of any federal, state or local statutory or common law.

**H.  Intentional or Willful Complicity**

Based upon, arising out of or in any way related to the "insured's" intentional or willful complicity in a covered "loss" event.

**I  Prior & Pending Proceedings**

Based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against an "insured", or any order, decree or judgment entered prior to or on the Prior & Pending Proceedings Date set forth in the Cyber Declarations.

**J  Patent Infringement & Trade Secrets**

Based upon, arising out of or in any way related to any infringement of a patent or trade secret.

**K.  Intellectual Property**

For a "Cyber Media Breach" that is based upon, arising out of or in any way related to any:

**a.** Distribution or sale of, or offer to distribute or sell, any good, product or service; or

**b.** Other use of any good, product or service

that infringes or violates an intellectual property law or right.

**L  Websites**

Based upon, arising out of or in any way related to:

**a.** Controlling, creating, designing, or developing any third party's Website;

**b.** Controlling, creating, designing, developing, determining, or providing the content or material of any third party's Website; or

**c.** Controlling, facilitating, or providing, or failing to control, facilitate, or provide, access to the internet.

**M  Antitrust**

Based upon, arising out of or in any way related to actual or alleged price fixing, price discrimination, restraint of trade, unfair business practices, monopolistic practices or any actual or alleged violations of the Sherman Antitrust Act of 1890 or the Clayton Act of 1914, and any amendments thereto, the Robinson-Patman Act of 1938, the Federal Trade Commission Act of 1914 or any rules or regulations promulgated in connection with such statutes, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world. However, this Exclusion shall not apply to "loss" for a "claim" arising out of a "Privacy Breach".

**N  ERISA**

For any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the English Pension Scheme Act 1993 or the English Pensions Act 1995, all as amended, or any similar statutory or common law anywhere in the world including rules or regulations promulgated thereunder.

**O  "Insured" vs. "Insured"**

Brought by or on behalf of a natural person who is a director, chairperson, or "executive" of any "insured entity" or who holds a similar title or position within any "insured entity".

**P  Software & Computer Code**

Based upon, arising out of or in any way related to any infringement of, violation of, or assertion of, any right to or interest in any software or its



OB3 D815660      1001087

source content or material; "computer" code or its source content or material or expression method; or process designed to control or facilitate any operation or other use of a "computer" or automated "system".

**Q  Warranty**

Based upon, arising out of or in any way related to the failure of goods, products, or "services" to conform with any electronic, oral, written, or other representation or warranty with respect to durability, fitness, performance, quality or use.

**SECTION III -  DEFENSE AND SETTLEMENT OF "CLAIMS"**

**A.** The "insurer" shall have the right and duty to defend any "claim" covered by this Coverage Part even if the allegation of such "claim" is groundless, false or fraudulent. The "insurer" has no duty to defend any "claim" or pay "defense expenses" for "claims" to which this insurance does not apply. The right and duty to defend any "claim" covered under this Coverage Part shall cease when the applicable Limit of Liability for the Privacy and Security Liability or the Cyber Media Liability Insuring Agreements, or the Maximum Aggregate Limit of Liability on the Cyber Declarations has been exhausted by the payment of  "loss".

**B.** The "insured" shall provide all information in connection with any "claim" and cooperate with the "insurer" in the investigation, defense and settlement of any "claim".

**C.** No "insured" shall settle any "claim", voluntarily make any payment, assume any obligation, or incur any "defense expense" related to a "claim" without the "insurer's" consent.

**D.** The "insurer" may conduct any investigation it deems necessary and settle any "claim" subject to the "named insured's" written consent to settle which shall not be unreasonably withheld. If any "insured" refuses to consent to the settlement of any "claim" which the "insurer" recommends and which is acceptable to the claimant, subject to the applicable Limit of Liability or Deductible, the "insurer's" liability for all "loss" from such "claim" shall not exceed the amount the "insurer" would have contributed to the settlement including "defense expenses" incurred up to the date of such refusal.

**E.** The "insurer" shall not seek repayment from an "insured individual" of any "defense expenses" paid by the "insurer" that are deemed uninsured pursuant to **SECTION II - EXCLUSIONS** Paragraph **D. Conduct**, unless the applicable determination standard set forth in such Exclusion has been met.

**F.** If the "insurer" is prevented by law or otherwise unable to defend or investigate a  "claim" brought outside the United States, the "insured" under the "insurer's" supervision  may arrange for the investigation, appointment of counsel and defense of such "claim". Subject to the applicable Limit of Liability and Deductible, the "insurer" will reimburse the "insured" for any reasonable and necessary "defense expenses" for such "claim.

**SECTION IV - LIMIT OF LIABILITY**

Regardless of the number of "insureds", "claims", or claimants the "insurer's" liability under this Coverage Part is limited as  follows:

**A.** The Maximum Aggregate Limit of  Liability shown in **Item 3.** of the Cyber Declarations is the most the "insurer" will pay under this Coverage Part during the "policy period" for the total of all "loss" arising from "claims" or "related claims" to which the insurance applies.

**B.** Subject to the Maximum Aggregate Limit, the Limit of Liability shown in **Item 4.** of the Cyber Declarations for **Insuring Agreement A. Privacy and Security Liability** is the most the "insurer" will pay for "loss" due to "claims" or "related claims" arising out of a "Privacy Breach" or a "Security Breach" to which  the  insurance applies

**C.** Subject to the Maximum Aggregate Limit, the Limit of Liability shown in **Item 4.** of the Cyber Declarations for **Insuring Agreement B. Cyber Media Liability** is the most the "insurer" will pay for "loss" due to "claims" or "related claims" arising out of a "Cyber Media Breach" to which the insurance applies.

**D.** If a "claim" or "related claim"  is covered by more than one Insuring Agreement under this Policy or Coverage Part, then the maximum amount payable under all Insuring Agreements combined shall not exceed the  largest applicable Limit of Liability.

**E.** The Limit of Liability for any Extended Reporting Period, if applicable, shall be part of and not in addition to the Maximum Aggregate Limit of Liability shown in **Item 3.** of the Cyber Declarations.

**SECTION V - DEDUCTIBLE**

**A.** The "insurer's" liability under  this Coverage Part applies only to that part of covered "loss" which is in excess of the applicable Deductible stated in **Item 4.** of the Cyber Declarations.

**B.** In the event that different parts of a "claim" or "related claim" are covered under  more  than one Insuring Agreement, only the largest applicable Deductible amount will be applied.

**C.** "Claims" or "related claims" are subject to the Deductibles applicable to the "policy period" during which such "claims" or "related claims" are deemed to have been  made.

**D.** The "insurer" may, at its sole discretion, pay all or part of the Deductible amount on behalf of the "insured". In such an event, the "insured" agrees to repay the "insurer" any amount so paid.

## SECTION VI - REPORTING

**A.** An "insured" shall provide the "insurer" with written notice as soon as practicable after an "executive", chief information officer or any person with responsibility for the management of insurance "claims", or any equivalent position within the "insured entity" becomes aware of a "claim", but in no event later than:

   **1.** Ninety (90) days after the effective date of expiration or termination; or

   **2.** The expiration date of the Extended Reporting Period, if applicable.

However, if the "insurer" sends written notice to the "named insured" stating that this Policy is being terminated for nonpayment of premium, an "insured" shall give the "insurer" written notice of such "claim" prior to the effective date of such termination.

**B.** If during the "policy period", or during an applicable Extended Reporting Period, an "insured" becomes aware of an act or circumstances that may subsequently give rise to a "claim" and gives the "insurer" notice of such act or circumstances, then any "claim" subsequently arising from such act or circumstances shall be deemed made against the "insured" during the "policy period" in which the act or circumstances were first reported to the "insurer" provided that any such subsequent "claim" is reported to the "insurer" in accordance with paragraph **A.** above.

**C.** An "insured" must give to the "insurer" the assistance, information and cooperation as the "insurer" may require and shall include in any notice of a "claim", act or circumstances of a potential "claim", a description of the "claim", act or circumstances, the nature of the alleged "Security Breach", "Privacy Breach" or "Cyber Media Breach", the nature and amount of alleged or potential damage, the names of actual or potential claimants, and the manner in which the "insured" first became aware of the "claim", circumstances or alleged "Privacy Breach", "Security Breach" or "Cyber Media Breach".

## SECTION VII - CONDITIONS

### A. Representations and Severability

   **1.** No statement, fact pertaining to, or knowledge possessed by any "insured individual" shall be imputed to any other "insured individual".

   **2.** By accepting this policy, the "named insured" agrees that:

      **a.** The statements in the Application and Cyber Declarations are accurate and complete;

      **b.** Those statements are based on representations the "named insured" made to the "insurer"; and

      **c.** The "insurer" has issued this policy in reliance upon these representations.

The unintentional failure to disclose all hazards existing as of the inception date of the policy will not prejudice the "named insured's" rights under this policy. However, this provision does not affect the "insurer's" right to collect additional premium or exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws and regulations.

### B. Spouses, Domestic Partners, Estates and Legal Representatives

Solely with respect to the **Insuring Agreements A. Privacy and Security Liability** and **B. Cyber Media Liability**, coverage shall extend to:

   **1.** A lawful spouse or domestic partner, as defined under any applicable federal, state or local law, of an "insured individual" solely by reason of such person's status as spouse or domestic partner or such person's ownership interest in property which the claimant seeks as recovery from an "insured individual";

   **2.** The estate, heirs, legal representatives or assigns of an "insured individual" if such "insured individual" is deceased, legally incompetent, insolvent or bankrupt.

Coverage shall not apply to "loss" or "claims" for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by an "insured individual's" spouse, domestic partner, heir, estate, legal representative or assigns.

### C. Legal Proceedings Against Us

   **1.** No individual or entity has a right under this Coverage Part to join the "insurer" as a party or otherwise bring the "insurer" into a suit asking for damages from an "insured" or to sue the "insurer" on this Coverage Part unless all of its terms have been fully complied with.

   **2.** An individual or entity may sue the "insurer" to recover on an agreed settlement or on a final judgment against an "insured" but the "insurer" will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the "insurer", the "insured" and the claimant or the claimant's legal representative.



OB3 D815660     1001087

**D. Change In Control or Exposure**

**1  Acquisition of the "Named Insured"**

If during the "policy period":

**a.** Another individual, entity or group of individuals or entities acquires more than fifty percent (50%) of the assets of the "named insured"; or

**b.** Another individual, entity or group of individuals or entities acquires more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the "named insured"; or

**c.** The "named insured" consolidates or merges with another entity and the "named insured" is not the surviving entity; or

**d.** The "named insured" emerges from bankruptcy on an effective date stated in the plan of reorganization; then the coverage provided under this Coverage Part shall continue until the termination or expiration of the "policy period", but only for "claims" for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty which occurs prior to the transaction date of such event.

The "named insured" shall notify the "insurer" of any such event described in paragraphs **1.a.** thru **1.d.** above as soon as practicable but no later than sixty (60) days after the effective date of the transaction, and provide such additional information as the "insurer" requires.

**2  Cessation of "Subsidiaries"**

If before or during the "policy period" an "insured entity" ceases to be a "subsidiary" then coverage for such "subsidiary" and its "insureds" shall continue under all Insuring Agreements until termination or expiration of this "policy period" but only for "claims" for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty that takes place prior to the date such entity ceased to be a "subsidiary".

**3  Acquisition of Another Organization**

If before or during the "policy period" the "insured entity" acquires the voting rights of another entity such that the acquired entity becomes a "subsidiary", then coverage for such "subsidiary" and its "insureds" shall be provided but only for "claims" for any "Privacy Breach", "Security Breach" or "Cyber Media Breach" that takes place after the date such entity became a "subsidiary".

If during the "policy period" the "insured entity" acquires another entity and at the time of such acquisition the entity becomes a "subsidiary" (or would have but for its absorption into the "insured") and the total revenue of the acquired entity exceeded twenty five percent (25%) of the "insured entity" as of the beginning of the "policy period", then the "named insured" shall agree to any amendments to the terms of this Coverage Part, including, but not limited to, any additional premium the "insurer" may require.

**E.  Subrogation**

If the "insured" has rights to recover all or part of any payment the "insurer" has made under this Coverage Part, those rights are transferred to the "insurer". The "insured" must do nothing after "loss" to impair them. At the request of the "insurer", the "insured" will bring suit or transfer those rights to the "insurer" and help the "insurer" enforce them.

**F.  Other Insurance**

If other valid and collectible insurance (other than a Policy or Coverage Part issued specifically as excess of this Coverage Part) is available to the "insured" for "loss" covered under this Coverage Part, then the insurance provided by this Coverage Part shall be excess of such other insurance regardless of whether or not such insurance is primary, contributory, excess, contingent or on any other basis.

When this insurance is excess, the "insurer" will have no duty to investigate or defend any "claim" if any other insurer has a duty to defend the "insured" against that "claim". If no other insurer defends, the "insurer" will undertake to do so, but the "insurer" will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the "loss", if any, that exceeds the sum of:

**1.** The total amount that all such other insurance would pay for the "loss" in the absence of this insurance; and

**2.** The total of all deductible and self-insured amounts under all that other insurance.

### G. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "loss" remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### H  Territory

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the "loss". However, any "claim" made must be brought and held against the "insured" in the United States of America, its territories or possessions, Puerto Rico or Canada.

### I.  Cancellation And Non-Renewal

With regard to the cancellation and non-renewal of this policy, the provisions outlined in the Commercial General Liability Coverage Part and the Common Policy Conditions or the Businessowners Coverage Part, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

For the purposes of the Cancellation and Nonrenewal provisions, the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

### J  Bankruptcy

Bankruptcy of an "insured" shall not relieve the "insurer" of its obligations under this Coverage Part.

### K  Role of Named "Insured"

By accepting this Coverage Part, the "named insured" agrees that it is authorized to, and will act on behalf of all "insureds" with respect to any rights provided under this Coverage Part and each "insured" authorizes the "named insured" to act on its behalf with respect to all such matters.

### L  Titles and Headings

The titles and headings in this Coverage Part are solely for convenience and form no part of the terms and conditions of coverage.

### M  Conformance to Law and Trade Sanctions

Coverage under this Coverage Part does not apply to the extent trade, economic sanction, insurance or other laws or regulations prohibit the "insurer" from providing insurance. The terms of this Coverage Part which are in conflict with the statutes of the jurisdiction in which this Coverage Part is issued are amended to conform to those statutes.

### N.  Two or More Coverage Parts, Forms, Endorsements or Policies Issued By The "Insurer"

It is the "insurer's" stated intent that the various coverage parts, forms, endorsements or policies issued to the "named insured" by the "insurer" or any company affiliated with the "insurer"; do not provide any duplication or overlap of coverage for the same "claim" or "loss". If this coverage part and any other coverage part, form, endorsement or policy issued to the "named insured" by the "insurer", or any company affiliated with the "insurer", apply to the same "claim" or "loss"; the maximum Limit of Liability under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Liability under any one coverage part, form, endorsement or policy.

This condition does not apply to any Excess or Umbrella Policy issued by the "insurer" specifically to apply as excess insurance over this policy or Coverage Part.

### O.  Due Diligence

The "named insured" agrees to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

1. Physical security for the "named insured's" premises, "computer" "systems" and hard copy files;

2. "Computer" and Internet security;

3. Periodic backups of "computer" "data";

4. Protection, including but not limited to, encryption of "data", for transactions such as processing credit card, debit card and check payments; and

5. Disposal of files containing "private personal data", including but not limited to shredding hard copy files and destroying physical "media" used to store electronic "data".

---



OB3 D815660      1001087

## SECTION VIII - EXTENDED REPORTING PERIODS

**A.** The "insurer" will provide one or more Extended Reporting Periods, as described below, if:

**1.** This Coverage Part is canceled or not renewed; or

**2.** The "insurer" renews or replaces this Coverage Part with insurance that:

**a.** Has a Retroactive Date later than the date shown in **Item 4.** of the Cyber Declarations; or

**b.** Does not apply to "loss" arising out of a "Privacy Breach", "Security Breach" or "Cyber Media Breach" on a claims-made basis.

The "named insured" agrees that in the event of a "claim" made during an Extended Reporting Period, they will do nothing that could prejudice the position of the "insurer" or any potential or actual rights of recovery, subrogation, or contribution.

**B.** Extended Reporting Periods do not extend the "policy period" or change the scope of the coverage provided. They apply only to "claims" because of "loss" arising out of a "Privacy Breach", "Security Breach" or "Cyber Media Breach" occurring prior to the end of the "policy period" but not before the retroactive date.

Once in effect, Extended Reporting Periods may not be canceled.

**C.** If the "insurer" cancels or does not renew this Coverage Part for any reason other than nonpayment of premium, an Automatic Extended Reporting Period will be provided without an additional premium. This period starts with the end of the "policy period" and lasts for 60 days with respect to "claims" because of "loss" arising out of a "Privacy Breach", "Security Breach" or "Cyber Media Breach" occurring prior to the end of the "policy period" but not before the retroactive date, and not previously reported to the "insurer".

**1.** This Automatic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance the "named insured" purchases, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

**2.** The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**D.** If this Coverage Part is cancelled or not renewed, the "named insured" shall have the right, upon payment of an additional premium, to an Optional Extended Reporting Period. This period starts with the end of the "policy period" with respect to "claims" because of "loss" arising out of a "Privacy Breach", "Security Breach" or "Cyber Media Breach" occurring prior to the end of the "policy period" but not

before the retroactive date, and not previously reported to the "insurer".

**1.** This Optional Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance the "named insured" purchases, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

**2.** The Optional Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**3.** The "named insured" must give the "insurer" a written request for the Optional Extended Reporting Period endorsement within 60 days following the date of cancellation or nonrenewal. The Optional Extended Reporting Period will not go into effect unless the "named insured" pays the additional premium promptly when due. If the cancellation or nonrenewal is for nonpayment of premium, this Optional Extended Reporting Period will not be provided unless any earned premium due is paid within 60 days after the effective date of such cancellation or expiration.

**4.** The available Optional Extended Reporting Periods and associated additional premiums are displayed in the table below.

| Optional Reporting Period | Percent of Annual Premium |
| --- | --- |
| One Year | 100% |
| Two Years | 150% |
| Three Years | 200% |

**E.** In the event similar insurance is in force covering "claims" first made during Extended Reporting Period, coverage provided by this Coverage Part shall be excess over any part of any other valid and collectible insurance available to the "insured", whether primary, excess, contingent or on any other basis, whose "policy period" begins or continues after this "policy period" ends.

## SECTION IX - DEFINITIONS

**A** **"Breach Notice Law"** means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons of any actual or potential unauthorized access to their "private personal data"

**B.** **"Claim"** means:

**1.** A written demand received by an "insured" for monetary damages or non-monetary relief including injunctive relief;

**2.** Any complaint or similar pleading initiating a judicial, civil, or administrative proceeding;

**3.** An alternative dispute or arbitration proceeding to which an "insured" is provided notice and which subjects an "insured" to a binding adjudication for monetary or non-monetary relief; against an "insured" for a "Security Breach", "Privacy Breach" or "Cyber Media Breach", including any appeal therefrom.

**4.** A written request first received by an "insured" to toll or waive a statute of limitations relating to a potential "claim" described in paragraphs **1.** through **3.** above.

**C.** **"Computer"** means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

**D.** **"Cyber Attack"** means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

**E.** **"Cyber Content"** means the electronic display, electronic transmission, or electronic dissemination of information through a "network" or through an insured's "system", including through email and an "insured entity's" internet website(s).

**F.** **"Cyber Media Breach"** means the alleged or actual unintentional and unauthorized:

**1.** Infringement of a collective mark, service mark, service name, trademark, trade dress, domain name, commercial logo, commercial slogan, commercial symbol, commercial title, copyright, name of a product, service or entity, or title of an artistic or literary work;

**2.** Plagiarism or unauthorized use of protected literary or artistic work, format, character or performance;

**3.** Invasion or interference with the right of publicity including name, persona, voice or likeness;

**4.** Defamation, libel, slander, trade libel, false light or other tort directly arising from the disparagement of or harm to the reputation or character of any person or entity;

resulting directly from "cyber content" of the "insured entity".

**G.** **"Data"** means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer".

**H.** **"Defense Expenses"** means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the "insurer" or the "insured" (other than regular or overtime wages, salaries, fees or benefits of "insured individuals") in the investigation, defense, settlement and appeal of a "claim", including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such "claim".

**I.** **"Executive"** means an "insured entity's" Chief Executive Officer, Chief Financial Officer, President and In-House General Counsel.

**J.** **"Insured"** means the "named insured", any "subsidiary" and any "insured individual".

**K.** **"Insured Individual"** means any natural person who is:

**1.** A duly elected past, present or future director, officer, trustee, manager, in-house general counsel, committee member of a duly constituted committee; or

**2.** A past, present or future employee (other than an independent contractor) including any part-time, seasonal, leased and temporary employees, and volunteers;

including equivalent positions anywhere in the world, but only while such person is acting within the scope of his or her duties as such.

**L.** **"Insured Entity"** means the "named insured" and any "subsidiary".

**M.** **"Insurer"** means the company providing this insurance as designated in the Cyber Declarations.

**N.** **"Liquidated Damages"** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

**O.** **"Loss"** means "defense expenses" and the amount the "insured" is legally obligated to pay as a result of a "claim" including:

**1.** Monetary judgments, awards or settlements, pre-judgment interest and post-judgment interest and compensatory damages;

**2.** Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the "insured", the "insurer", or to the "claim" giving rise to such damages; or

**3.** Civil fines or penalties assessed against an "insured individual" if, and to the extent, such fines or penalties are insurable under

the law of the jurisdiction in which such fines and penalties are assessed.

However, "loss" does not include:

4. The cost or expense incurred to replace, upgrade, update, improve, remediate or maintain a "system";

5. Any amount deemed uninsurable by law;

6. Taxes;

7. Any amount incurred by an "insured" in the defense or investigation of any action, proceeding or demand that was not a "claim" even if such amount also benefits the defense of a covered "claim" or such action, proceeding or demand that subsequently gives rise to a "claim";

8. Return of fees, charges, commissions or other compensation paid to an "insured";

9. The cost or expense incurred to perform any obligation assumed by, on behalf of, or with the consent of any "insured";

10. The cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief; or

11. "Liquidated Damages".

P. **"Media"** means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts.

Q. **"Named Insured"** means the entity designated in **Item 1.** of the Cyber Declarations.

R. **"Network"** means any "services" provided by or through the facilities of any electronic or "computer" communication "system", allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to an "insured entity's" "computer". "Network" includes any shared "networks", Internet access facilities, or other similar facilities for such "systems", in which an "insured" participates

S. **"Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

T. **"Policy Period"** means the period of time from the inception date shown in **Item 2.** of the Cyber Declarations to the earlier of the expiration date shown in **Item 2.** of the Cyber Declarations or the effective date of termination of this Policy or Coverage Part.

U. **"Potentially-Identified Person"** means any person who is the "named insured's" current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "privacy breach", "security breach", "cyber media breach" covered under this Coverage Part.

This definition is subject to the following provisions:

1. "Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

2. A "potentially-identified person" must have a direct relationship with the "named insured". The following are examples of individuals who do not meet this requirement:

   a. If the "named insured" aggregates or sells information about individuals as part of the "named insured's" business, "potentially-identified persons" do not include the individuals about whom the "named insured" keeps such information.

   b. If the "named insured" stores, processes, transmits or transports records, "potentially-identified persons" do not include the individuals whose "private personal data" the "named insured" is storing, processing, transmitting or transporting for another entity.

   The above examples are not meant to be all inclusive but are provided as a way to identify those not meeting the requirements of this definition.

V **"Privacy Breach"** means:

1. The "insured entity's" failure to protect "private personal data" including a "Cyber Attack" on the "insured's entity's" "system" or the actions of a "rogue employee" which directly results in the unauthorized disclosure of "private personal data";

2. The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by, or on behalf of, an "insured entity" on which "private personal data" is stored or recorded;

3. The "insured's" negligent failure to disclose an event referenced in **1.** or **2.** above in violation of any "breach notice law"; or

4. The "insured's" negligent violation of any applicable federal, state, foreign or local privacy legislation or regulation in connection with any "claim".

**W. "Private Personal Data"** means a natural person's first name or first initial and last name in combination with:

   **a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

   **b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

   **c.** Credit, debit or payment card numbers;

   **d.** Information related to employment by an "insured";

   **e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

   **f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities an "insured" has specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**X. "Related Claims"** means all "claims" based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same series of facts, circumstances, situations, transactions, results, damage or events.

**Y. "Rogue Employee"** means a permanent employee of an "insured entity", other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by an "insured entity" or an entity that is authorized by an "insured" to hold, process or store "private personal data" for the exclusive benefit of the "insured entity".

**Z. "Security Breach"** means:

   **1.** The failure or violation of the security of the "insured entity's" "system" including the impairment or denial of access to the "insured entity's" "system", a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms the "insured entity's" "system" or the "system" of a third party for whom the "insured entity" provides "services" for a fee;

   **2.** The theft or loss of hardware or "media" controlled by, or on behalf of, an "insured entity" on which "data" is stored; or

   **3.** The failure to disclose an event in **1.** or **2.** above which violates any "breach notice law".

**AA. "Services"** means "computer" time, "data" processing, storage functions or other uses of an "insured's" "system".

**BB. "Subsidiary"** means:

   **1.** Any entity in which an "insured entity" owns more than fifty percent (50%) of the outstanding securities representing the right to vote for election of or to appoint directors, trustees, managers, member of the Board of Managers or equivalent positions of such entity are owned or controlled by the "named insured", directly or through one or more "subsidiaries"; or

   **2.** Any entity while:

      **a.** Exactly fifty percent (50%) of the securities representing the right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers, or equivalent positions of such entity are owned, or controlled by the "named insured", directly or through one or more "subsidiaries"; and

      **b.** The "named insured", pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

   **3.** Any foundation or charitable trust while such entity is controlled by the "named insured".

Coverage shall apply to a "subsidiary" only during the time it qualifies as a "subsidiary".

**CC. "System"** means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by the operation software that is proprietary to, or licensed to, the owner of the "computer".

**DD. "System Output"** means a tangible substance on which "private personal data" is printed from a "System".



OB3 D815660          1001087

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the   company.

John C. Roche
President

Charles Frederick Cronin
Secretary

SIG-1100 11 17                                                                                        Page 1 of 1



OB3 D815660      1001087

# Thirteen steps to a more secure property.

When a guest, a resident or an employee becomes a victim of crime at one of your properties, who is liable?

Based on recent civil court decisions, it appears commercial property owners can be just as much to blame for violent crimes and robberies as the people who commit them can. And the price of that responsibility is steep: Six-figure verdicts are commonplace.

Owners and operators of apartment and condominium complexes, office buildings, motels, hotels, parking lots and garages, and shopping malls must be diligent in providing security for those who visit their properties.

Some of the reasons for these blockbuster damage awards and the ever-growing number of premises-security lawsuits and insurance claims are:

> The growing and well-publicized tendency of the courts to shift responsibility from the criminals themselves to "negligent" property owners.

> The reluctance or inability of business owners to keep up with advances in security technology. If your systems fall short of what a jury would consider state-of-the-art, you have a potential problem on your hands.

> The failure of commercial property owners to adequately screen employees assigned to high-risk positions. It's easy for juries to second-guess the character of that employee to whom you handed the keys over.

## A safe-premises checklist.

Fortunately, it need not take a lot of time or money to shore up the security of the premises and limit your liability. There are some simple steps you can take, right now.

1. Limit access to your property. How easy is it for unwanted guests to walk or drive in? Consider posting guards at entrances.

2. Consider closed circuit TV. When monitored by people, who can react quickly and decisively to emergencies, the payoffs of CCTV can be immediate and substantial. Be prepared to maintain your equipment, however. Inoperable cameras can actually increase your problems by luring your customers into a false sense of security.

3. Brighten things up. Hallways and parking lots should be well lighted. Potential trouble areas should be bright enough to eliminate shadows and provide for clear CCTV pictures.

4. Build a fence. Good perimeter fencing will keep people from wandering onto your property and mark the boundaries of your area of control.

5. Be careful with your keys. Well-written and enforced key-control plans are crucial and expected in such public-use areas as hotels and office buildings. Yet many managers are surprisingly lax when it comes to keeping track of keys.

6.  Check your doors and windows. Locks should look solid and be in good repair. Sliding doors should have track-blocking devices in supplement handle locks. Doublecylinder deadbolt locks should be on tenant and guest room doors.

7.  Eliminate elevator stops at vacant floors. Program your elevators to by-pass floors that are unoccupied. These are prime locations for criminal assaults.

8.  Screen new hires. Conduct background checks on people responsible for safety and security, as well as those with access to master keys (such as housekeeping and security personnel). Depending on the potential employee's level of responsibility, employment history, motor vehicles records and police records are worth checking.

9.  Educate your staff. It's crucial that employees know security procedures - and be kept informed of changes. Security is everybody's responsibility.

10.  Manage for safety. Management should monitor security controls. When violations are noted, the appropriate employees should be promptly notified, and the situation corrected.

11.  Make friends with the police. Do you have a good working relationship with your local police department? Ask them about criminal activity in your neighborhood - or for an appraisal of your security systems and procedures. For information on current security technologies, try a reputable security company.

12.  Document your security efforts. Keep careful records of training programs conducted, procedures you put in place and physical enhancements you make to improve security. You'll want this information handy should a problem ever arise. If you ever have to cut back on security measures, be sure to document the reason.

13.  Don't overstate the safety of your facility. Avoid inflated claims about the safety of your site and its surroundings - and if warnings are appropriate, make them. Ask an attorney familiar with this area of the law what's safe to say and not to say.

## Concerned about your security.

Proud members of the The Hanover Insurance Group, the Citizens Insurance Company of America and The Hanover Insurance Company have provided innovative property-casualty insurance solutions to commercial and individual clients for a combined total of more than 200 years

Along with independent insurance agents nationwide, Citizens and Hanover can help make your business a safer place for your customers and employees. For more information, call your agent or your nearest Citizens or Hanover branch office.

111-2054 (7-04)



OB3 D815660          1001087

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or  regulations prohibit us from providing insurance, including, but not limited to, the payment of   claims.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**401-1337 02 16**          Includes copyrighted materials of Insurance Services Offices, Inc., with its permission.          **Page 1 of 1**



OB3 D815660      1001087

# IMPORTANT INFORMATION ABOUT YOUR INSURANCE COMPANY

The Home Office address for the Insurance Company shown on the policy Declarations page   is:

**Allmerica Financial Alliance Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Allmerica Financial Benefit Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Campmed Casualty & Indemnity Company, Inc.**
(A Stock  Company)
12100 Sunset Hills Road, Suite 300
Reston, VA 20190-3295

**Citizens Insurance Company of America**
(A Stock  Company)
808 North Highlander  Way
Howell, MI 48843-1070

**Citizens Insurance Company of Illinois**
(A Stock  Company)
333 West Pierce Road, Suite 300
Itasca, IL 60143-3114

**Citizens Insurance Company of the Midwest**
(A Stock  Company)
9229 Delegates Row, Suite 100
Indianapolis, IN 46240-3824

**Citizens Insurance Company of Ohio**
(A Stock  Company)
1300 East 9th Street, Suite 1010
Cleveland, OH 44114-1506

**The Hanover American Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Hanover Lloyds Insurance Company**
(A Texas Lloyd s Plan  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Massachusetts Bay Insurance Company**
(A Stock  Company)
440 Lincoln  Street
Worcester, MA 01653-0002

**The Hanover New Jersey Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Verlan Fire Insurance Company**
(A Stock  Company)
440 Lincoln Street
Worcester, MA 01653-0002

**401-1377 12 14**                                                              **Page 1 of 1**



OB3 D815660        1001087

Dear Policyholder:

Pursuant to the California Code of Regulations -CCR2646.6, the State of California requires us to   ask all our new policyholders to voluntarily provide the information shown on the attached "Race, National Origin, and Gender Form".

We ask that you complete and return the form to:

Hanover Insurance Group
Attention: Statistical Reporting  N-234
440 Lincoln Street
Worcester, MA 01653-0002

You can be assured that no information provided within this form will be used for the purposes of underwriting or rating any applicant or  policyholder.

We thank you for your cooperation in this matter.

Hanover Insurance Group

# CALIFORNIA INSURANCE SUPPLEMENT

## RACE, NATIONAL ORIGIN & GENDER FORM

### COMMUNITY SERVICE STATEMENT

_____

Company Name

\# _____ Policyholder Number (For New Business Only)

This information is requested by the State of California in order to monitor the insurer's compliance with the law. All new policyholders are requested to voluntarily provide the following information.

No such information shall be used for the purposes of underwriting or rating any policyholder.

Policyholder's Name and Address (to be provided in order to refer back to the policy)
Note: Use additional forms if needed.

_____

_____

_____

**Policy Type**

☐ Fire - Personal                    ☐ Fire - Commercial

☐ Homeowners                      ☐ Commercial Multi Peril

☐ Private Passenger Auto Liability

☐ If the policyholder does not wish to provide the Department of Insurance with this information, please check here.

Check the Race or National Origin as it applies to the policyholder(s). For the purpose of completing this form, the policyholder is defined as: an individual, spouse, domestic partner, or business partner(s) named on the policy.

| Race/National Origin | Policyholder | | | Co-Policyholder | | |
|---|---|---|---|---|---|---|
| | Male | Female | Business | Male | Female | Business |
| **African- American** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **American Indian or Alaskan Native** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Asian/Pacific Islander** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Latino** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **White** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Other** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**401-1285 05 13**

**Page 2 of 2**

GEOGEO, 666614, 0014, 11-22-19

CITIZENS INSURANCE COMPANY OF AMERICA
440 LINCOLN STREET
PO BOX 15063
WORCESTER MA 01615-0063

## NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD CA 92009

Producer: 1001087

INS OFFICE OF AMERICA INC
DBA IOA INS SERV./ STE 600
4370 LA JOLLA VILLAGE DR
SAN DIEGO CA 92122

| | |
|---|---|
| Policy No.: | OB3D815660 |
| Type of Policy: | BUSINESSOWNERS |
| Date of Expiration: | 01/28/2020; 12:01 A.M. Local Time at the mailing address of the Named Insured. |

We will not renew this policy when it expires.  Your insurance will cease on the Expiration Date shown above.

The reason for nonrenewal is  DUE TO ADVERSE LOSS EXPERIENCE.

This policy provides fire and extended coverage insurance on your property.  You should contact your agent concerning coverage through another insurer, or your eligibility for coverage through the California Fair Plan, P.O. Box 76924, Los Angeles, CA 90076, Phone: (800) 339-4099 or www.cfpnet.com.

# Home Office Copy

Named Insured

OB3D815660
CHIEF DIGITAL ADVISORS
2852 CAMINO SERBAL
CARLSBAD CA 92009

Date Mailed:
22nd day of November, 2019

*Gayle Falvey*

GAYLE FALVEY

FORM# CN969701CA112017
ODEN 3.0.19.10a

Copy for Named Insured

CACN19NONE APP
11222019MYNN
Page 1 of 1