# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHIEF DIGITAL ADVISORS, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 20-cv-1075-MMA (AGS)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY**<br><br>[Doc. No. 29] |
| CATHY PARKES, et al.,<br><br>　　　　　　　　　　Counter Claimants,<br><br>v.<br><br>CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>　　　　　　　　　　Counter Defendant. | |

On October 26, 2020, Cathy Parkes ("Parkes") and Chief Digital Advisors ("CDA", and collectively "Defendants") filed a motion to stay this action pending resolution of related underlying litigation.[1] Plaintiff Citizens Insurance Company of

---

[1] Defendant Assessment Technologies Institute, LLC ("ATI") did not join in or oppose the motion to stay. Because ATI is—at this juncture and for this purpose—a passive party, the Court's references to "Defendants" are only to Parkes and CDA.

America ("CICA") filed an opposition, to which Defendants replied. *See* Doc. Nos. 30, 31. The Court found the matter suitable for disposition on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 32. For the reasons set forth below, the Court **GRANTS** Defendants' motion to stay.

## I. BACKGROUND

The facts are set forth more fully in the Court's order denying CICA's motion to dismiss, which the Court incorporates by reference here. *See* Doc. No. 33. The Court will nonetheless provide the following relevant summary. On August 27, 2019, ATI filed a complaint against Parkes in the United States District Court for the District of Kansas (the "Kansas Action"). *See* Case No. 19-CV-2514-JAR-KGG. ATI alleges copyright infringement, trade secret misappropriation, breach of contract, and unfair competition. *See* Doc. No. 13 ("CC") ¶ 7.

CICA insures CDA under a Businessowners Liability Insurance Coverage Policy (the "Policy"). *See* Doc. No. 1 ("Compl.") ¶ 10; CC ¶ 19. Although Parkes is not specifically named on the Policy, ATI alleges that Parkes does business as Level Up RN—one of CDA's lines of business. *See* Doc. No. 29-1 at 6. Pursuant to the Policy, Parkes tendered her defense in the Kansas Action to CICA. *See id.* CICA agreed to provide a full defense while reserving its rights.[2] *See id.* at 7.

On June 12, 2020, CICA initiated this action against CDA, Parkes d/b/a Level Up RN, and ATI. *See* Compl. CICA seeks declaratory relief establishing its coverage obligations in connection with the Kansas Action. *See id.* In response, Defendants filed a Countercomplaint against CICA and The Hanover Insurance Group, Inc.[3] *See* CC.

---

[2] It is undetermined whether Parkes, and thus her defense against the Kansas Action, are covered by the Policy. *See* Doc. No. 30 at 7.

[3] As the Court explained in its order denying CICA's motion to dismiss, it considers CICA and The Hanover Insurance Group one party and refers to them collectively as "CICA". *See* Doc. No. 33 at 2.

They request, among other things, a declaratory judgment that CICA must in fact defend and indemnify Parkes. *See id.*

On November 24, 2020, the Court denied CICA's motion to dismiss, or in the alternative to strike the fifth and sixth counterclaims. *See* Doc. No. 33. Now Defendants ask the Court to stay this case pending resolution of the Kansas Action.

## II. LEGAL STANDARD

"A district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citations omitted).

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (identifying the *Landis* factors)). "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*, 299 U.S. at

255). The burden is on the movant to show that a stay is appropriate. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

### III. DISCUSSION

Defendants seek to stay this case pending conclusion of the Kansas Action. Accordingly, the Court analyzes each *Landis* factor in turn.

**1.   Possible Damage from Granting a Stay**

CICA urges the Court to deny the motion because it is actively defending Parkes in the Kansas Action and seeks a timely determination that it owes no coverage and thus need not continue providing a defense. Specifically, it says that it is incurring a "continuing harm in the form of ongoing payments to defend." Doc. No. 30 at 4. As an initial matter, Defendants acknowledge that CICA will be entitled to reimbursement of all costs should they ultimately succeed in this coverage action. *See* Doc. No. 29-1 at 10. Moreover, "courts in this circuit have concluded that delaying a determination of an insurer's coverage obligations does not constitute damage under the factors set forth in *Landis*." *Hudson Specialty Ins. Co. v. Hofer*, No. 3:20-cv-00852-BEN-RBB, 2020 U.S. Dist. LEXIS 152228, at *4 (S.D. Cal. Aug. 21, 2020) (first citing *Safeco Ins. Co of Am. v. Nelson*, 20-cv-0211-MMA-DEB, 2020 U.S. Dist. LEXIS 118919 (S.D. Cal. Jul. 7, 2020); and then citing *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 U.S. Dist. LEXIS 22907 (N.D. Cal. Feb. 12, 2019)). "These courts reasoned that because the duty to defend is both an obligation of insurers and a 'cost of doing business,' a stay in these circumstances does not equate to damage." *Id.* The Court of course agrees with this line of reasoning. *See Safeco Ins. Co. of Am.*, 2020 U.S. Dist. LEXIS 118919, at *14. CICA's continued defense is not damage under *Landis*. And CICA does not allege, nor does the Court find, that any other damage will result from a stay. Accordingly, this factor weighs in favor of granting a stay.

**2.   Hardship or Inequity**

Defendants cite two particularly compelling reasons why proceeding forward with this litigation will constitute hardship upon them. First, they contend they will be forced

to litigate on two fronts. *See* Doc. No. 29-1 p. 15 ("[S]imultaneously defend[ing] two lawsuits [] will have a crippling effect on Chief Digital Advisors."). Second, Defendants assert that "because of the significant overlap of issues in the two suits, [they] will be subjected to the possibility of inconsistent rulings in the two actions as well as the possibility that adverse findings in the present coverage action will be binding in the [Kansas] Action but beneficial rulings will not." *Id.*

CICA is correct that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. But here there is more. This insurance coverage case is fairly complex. It involves several claims and counterclaims, and numerous exclusions that implicate issues in the Kansas Action. For example, CICA's first and seventh causes of action seek to deny coverage on the basis that there was no "accident" or "occurrence" within the meaning of the Policy. *See* Compl. ¶¶ 25, 67. But the Court must examine Parkes's conduct—which is directly before the court in the Kansas Action—in order to determine whether it was "accidental" or qualifies as an "occurrence." Similarly, in its third and ninth causes of action, CICA asks the Court to decide whether Parkes's conduct occurred within the Policy period. *See id.* at ¶¶ 31, 77. The timing, however, will also be decided in the Kansas Action as ATI must show that Parkes caused its injury. Moreover, CICA's sixth and twelfth causes of action seek to deny coverage on the basis that exclusions are applicable. *See* Compl. ¶¶ 61, 111. CICA makes no attempt to narrow the scope by alleging specific exclusions. Instead, CICA generally refers to all exclusions contained in the Policy. *See id.*

Elsewhere in the Complaint, however, CICA specifically highlights the following exclusions, which demonstrate how these two cases are intertwined:

> a. Knowing violation of rights of another: "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

> . . . .
>
> d. Infringement of Copyright, Patent, Trademark, or Trade Secret: "personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement". However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress, or slogan.

Compl. ¶¶ 22(a), (d). The Court previously determined that the former exclusion involves an examination of Parkes's conduct, which is directly at issue in the Kansas Action. *See* Doc. No. 33 at 7–8. Also, the Kansas Action includes a claim for violation of the Kansas Uniform Trade Secret Act. *See* Doc. No. 29-1 at 12. This overlaps with the latter exclusion identified above. These are just two examples. Nonetheless, it seems inevitable that the Kansas Action and this coverage action will require similar fact discovery, such as into the nature of Parkes's conduct and the level of propriety of ATI's materials. Not only would this be duplicative, but should the cases proceed simultaneously, there is a risk of inconsistent results on these disputed questions.

      In opposition, CICA explains that coverage can be decided absent determination of the issues identified above. *See* Doc. No. 30 at 8. It is true that at least one theory for coverage denial may be independent of the Kansas Action issues—*i.e.*, whether Parkes is an insured under the Policy. *See* Doc. No. 30 at 7. But as explained above, this action as a whole is largely duplicative of issues in the Kansas Action. The Court therefore concludes that the overlapping factual and legal issues, coupled with the risk of inconsistent results, weigh in favor of a stay. *See Landis*, 299 U.S. at 255; *see also Safeco Ins.*, 2020 U.S. Dist. LEXIS 118919, at *14–15 (finding that the second *Landis* factor weighs in favor of a stay because there were several policies and exclusions at issue); *James River Ins. Co. v. RV Tomlinson Constr., Inc.*, 2013 U.S. Dist. LEXIS 66582, at *10–11 (E.D. Cal. May 8, 2013) (finding that the second *Landis* factor weighs

in favor of a stay where "at least one factual issue identified [] is not merely a matter of interpretation of the Policies"); *cf. Hofer*, 2020 U.S. Dist. LEXIS 152228, at *5 (explaining that the lack of complexity of the coverage action—only involving only one insurance policy and only one exclusion—undermines the second *Landis* factor).

### 3. Orderly Course of Justice

Finally, the third *Landis* factor requires the Court to assess the orderly administration of justice that will be served by a stay. The Court has already explained that there are factual issues that overlap with the Kansas Action. Avoiding inconsistent rulings promotes judicial efficiency and supports a stay. Further, developing the facts in the Kansas Action will assist the Court in ultimately determining the coverage issues. Finally, "[t]here is a real risk that, were both actions to proceed, by the time this Court resolved the issues of insurance coverage the underlying action could have reached a critical juncture as well." *Safeco Ins.*, 2020 U.S. Dist. LEXIS 118919, at *18. "At which point, a finding that either eliminated or limited [Parkes's] coverage could derail the efficient administration of the underlying action." *Id.* As this Court has previously explained:

> Were the issue of insurance coverage before the same judge presiding over the underlying action, that judge would be able to appropriately exercise discretion to resolve the scope of coverage before proceeding to the merits and could do so in a manner that would promote the efficient resolution of the dispute. However, that is not the case here. Instead, Plaintiff asks this Court to resolve issues that may materially affect the progress of another case that is pending in another courtroom. The Court finds doing so would not promote the orderly course of justice.

*Id.* (internal citations and quotation marks omitted). Similarly, CICA chose to bring this matter before this Court rather than the District Court in Kansas. It would be inefficient to allow both cases to proceed simultaneously. *See Leyva*, 593 F.2d at 863–64 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent

proceedings which bear upon the case . . . . In such cases, the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it."). Accordingly, the Court finds that the orderly course of justice weighs in favor of a stay.

## IV. C<small>ONCLUSION</small>

For the foregoing reasons, the Court **GRANTS** Defendants' motion to stay. The Court further **DIRECTS** the parties to file status reports within five (5) business days of the conclusion of the Kansas Action.

**IT IS SO ORDERED.**

Dated:  December 22, 2020

HON. MICHAEL M. ANELLO
United States District Judge